UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY FELIX, an individual; on behalf
of himself and all others similarly situated,

                              Plaintiffs,

v.

NORTHSTAR LOCATION SERVICES, LLC,          **DECISION AND ORDER/**
a New York Limited Liability Company; and   **ORDER TO SHOW CAUSE**
JOHN AND JANE DOES NUMBERS 1
THROUGH 25,                                 11-CV-00166(JJM)

                              Defendants.


_____

DONNIE JO HARB, an individual; on behalf
of herself and all others similarly situated,

                              Plaintiffs,

v.

NORTHSTAR LOCATION SERVICES, LLC,
a New York Limited Liability Company; and
JOHN AND JANE DOES NUMBERS 1
THROUGH 25,

                              Defendants.
_____

        Before me is plaintiffs' "Consent Motion for an Order Conditionally Certifying

Class and Granting Preliminary Approval of Class Action Settlement and Injunctive Relief" [42,

42-1].[1] The parties have consented to jurisdiction by a United States Magistrate Judge ([32] in

this action, [25] in 11-CV-253).

_____

        [1]      Bracketed citations refer to the CM/ECF docket entries.  Unless otherwise indicated, all
docket references will be to the consolidated docket in 11-CV-0166.

"[T]he 'settlement only' class has become a stock device in modern class action litigation." In re American International Group, Inc. Securities Litigation, 689 F.3d 229, 238 (2d Cir. 2012). "[A] district court confronted with a request for settlement-only class certification need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial . . . . At the same time, however . . . other specifications of Rule 23 - those designed to protect absentees by blocking unwarranted or overbroad class definitions - demand undiluted, even heightened, attention." Id. at 239.

This Consent Motion presents a perfect example of why that is so. While I conclude that the Motion should be denied for several independent reasons, I will examine each of them separately, for the benefit of the reviewing court in the event of an appeal.

## BACKGROUND

By Text Order dated June 15, 2011 [24], I granted the parties' motions to consolidate these two actions under Case Number 11-CV-166. Plaintiff Anthony Felix, a citizen of California, seeks relief under the Fair Debt Collection Practices Act, 15 U.S.C. §§1692, et seq. ("FDCPA") and the California Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§1788, et seq. ("RFDCPA") on his own behalf and on behalf of a proposed class of similarly situated individuals, against defendant Northstar Location Services, LLC ("Northstar") and a number of Joe Doe defendants. First Amended Complaint [5]. He alleges that he received several telephonic voice messages from Northstar which failed to disclose that the communication was from a debt collector, the purpose or nature of the communication, or the identification of Northstar as the caller. Id., ¶¶40-42. In addition to class certification, he seeks

"maximum statutory damages" for class actions under the FDCPA and RFDCPA, "declaratory

relief adjudicating that Northstar's telephone messages violate the FDCPA . . . [and] RFDCPA",

"[a]ttorney's fees, litigations expenses, and costs", and "such other and further relief as may be

just and proper". Id., ¶81.

       Plaintiff  Donnie Jo Harb, a citizen of North Carolina and represented by the same

attorneys as plaintiff Felix (William F. Horn and Robert L. Arleo) filed  a separate Complaint

(11-cv-253 [1]) against Northstar and John Doe defendants, alleging that she likewise received

telephonic voice messages from Northstar which failed to disclose that the communications were

from a debt collector, the purpose or nature of the communications, or the identification of

Northstar as the caller (id, ¶¶27-36).  Additionally she alleges that when she returned a call

placed by Northstar that the individual she spoke to did not identify himself as a debt collector or

inform her that the conversation might be surreptitiously monitored or recorded at the outset of

the call (id., ¶¶63-69), and that Northstar placed a call to her employer, in which it failed to

inform plaintiff's employer that the conversation might be surreptitiously monitored or recorded.

Id. ¶¶77-83.

       She seeks to certify a class of "all persons in the State of North Carolina . . . with

whom [Northstar] engaged in a conversation via telephone, . . . wherein [Northstar] failed to

disclose at the outset of the conversation that the call may be monitored or recorded by an

unannounced third person(s), . . . made in connection with Defendant's attempt to collect a

debt, . . . which conduct violated the FDCPA . . . during a period beginning one year prior to

the filing of this initial action and ending 21 days after service of this complaint."  Id., ¶98.  She

further seeks FDCPA remedies identical to those sought by plaintiff Felix, except she does not request declaratory relief (id., ¶111).

Accompanying the pending motion is an executed Stipulation of Settlement [42-2]. Although Northstar denies "each and every claim and allegation of wrongdoing or conduct that violates the FDCPA or the RFDCPA", it deems it "desirable and prudent that the Consolidated Action . . . be fully and finally resolved and settled in the manner and upon the terms set forth in this Stipulation". Stipulation of Settlement [42-2], pp. 3, 4.

The Consent Motion asks me to certify the Settlement Class (defined in the Stipulation of Settlement) pursuant to Rule 23(b)(1)(B) and 23(b)(2), preliminarily approve the Stipulation of Settlement, direct notice to the class, set dates for objections to the proposed settlement, and schedule a final fairness hearing ([42], pp. 1-2).

## ANALYSIS

### A.     General Considerations

"Rule 23 does not set forth a mere pleading standard." Wal–Mart Stores, Inc. v. Dukes, ___ U.S. ___, 131 S.Ct. 2541, 2551 (2011).  "The party seeking class certification must affirmatively demonstrate compliance with the Rule, and a district court may only certify a class if it is satisfied, after a rigorous analysis, that the requirements of Rule 23 are met." American International Group, 689 F.3d at 237-38.

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied . . . . Thus, the court must assess whether the proposed class satisfies Rule 23(a)'s four

-4-

threshold requirements: (1) numerosity ('the class is so numerous that joinder of all members is impracticable'), (2) commonality ('there are questions of law or fact common to the class'), (3) typicality ('the claims or defenses of the representative parties are typical of the claims or defenses of the class'), and (4) adequacy of representation ('the representative parties will fairly and adequately protect the interests of the class')." Id. at 238.

        "To be certified, a putative class must first meet all four prerequisites set forth in Rule 23(a) . . . . Not only must each of the requirements set forth in Rule 23(a) be met, but certification of the class must also be deemed appropriate under one of the three subdivisions of Rule 23(b)." Brown v. Kelly, 609 F.3d 467, 475-76 (2d Cir. 2010).

**B.**     **Is There an Ascertainable Class?**

        "Although not explicit in Rule 23(a) or (b), courts have universally recognized that the first essential ingredient to class treatment is the ascertainability of the class . . . . Thus, the named plaintiff must define the proposed class in a manner that adequately identifies its members." Grimes v. Rave Motion Pictures Birmingham, L.L.C., 264 F.R.D. 659, 663-64 (N.D.Ala. 2010).  *See also* In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, 209 F.R.D. 323, 336 (S.D.N.Y. 2002) ("while Rule 23(a) does not expressly require that a class be definite in order to be certified, a requirement that there be an identifiable class has been implied by the courts"); In re Initial Public Offerings Securities Litigation, 471 F.3d 24, 30 (2d Cir. 2006) (discussing "[t]he implied requirement of ascertainability"of the class); 1 Newberg on Class Actions, §§3.1 *et seq*. (5th ed.)

"The implied requirement of ascertainability obligates plaintiffs to demonstrate that the class they seek to certify is readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling . . . .When a proposed class definition links class membership with the merits of the class members' claims, the class is not ascertainable." Eng-Hatcher v. Sprint Nextel Corp., 2009 WL 7311383, *7 (S.D.N.Y. 2009); Barrus v. Dick's Sporting Goods, Inc., 732 F. Supp.2d 243, 250 (W.D.N.Y. 2010) (Siragusa, J.) ("Plaintiffs' proposed class definition is defective because it is not based upon objective criteria and, instead, would require the Court to make a merits determination for each potential class member just to determine class membership"); 5 Moore's Federal Practice, §23.21[3][c] (Matthew Bender 3d ed.) ("A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a particular person is a member of the class").

The Stipulation of Settlement defines the "Settlement Class" as "the  FDCPA and RFDCPA Class collectively". [42-2], ¶1.17.  The "FDCPA Settlement Class" is defined as:

> "all persons with addresses in the United States of America who received a voice message left by Defendant on a telephone answering device, *or* who engaged in a telephone communication with Defendant, wherein the Defendant did not identify itself by its company name as the caller, state the purpose or nature of the communication or disclose that the communication was from a debt collector, *or* where the Defendant did not disclose at the outset of a communication that the call may be monitored or recorded, *or* where the Defendant made a false representation or used a deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, and where such communication occurred between February 28, 2010, through and including the date of order granting preliminary certification of the Settlement Class." Id., ¶1.6 (emphasis added).

The "RFDCPA Settlement Class" is defined as:

> "all persons with addresses in the State of California who received
> a voice message left by Defendant on a telephone answering
> device, *or* who engaged in a telephone communication with
> Defendant, wherein the Defendant did not identify itself by its
> company name as the caller, state the purpose or nature of the
> communication or disclose that the communication was from a
> debt collector, *or* did not disclose at the outset of a communication
> that the call may be monitored or recorded, *or* where the
> Defendant made a false representation *or* used a deceptive means
> to collect or attempt to collect any debt or to obtain information
> concerning a consumer, and where such communication
> occurred between February 28, 2010, through and including the
> date of order granting preliminary certification of the Settlement
> Class." Id., ¶1.15 (emphasis added).

The repeated use of the word "or" in the class definition requires me to interpret
Northstar's alleged "false representations" or "deceptive means" as meaning something other
than its failure to identify itself, or to indicate that the call was from a debt collector and could be
monitored.  *See* Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979) ("Canons of construction
ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the
context dictates otherwise").

However, the class definition sheds no further light on what types of false
representations or deceptive means may have been involved, choosing instead to merely parrot
the language of the FDCPA.[2]  Such a broad definition cannot create an ascertainable class,
because it would require inquiry into the merits of each potential class member's claim to
determine whether that person had been the victim of a "false representation" or "deceptive
means".  *See* Drinkman v. Encore Receivable Management, Inc., 2007 WL 4458307, *2

---

[2]	"A debt collector may not use any false, deceptive or misleading representation or means
in connection with the collection of any debt." 15 U.S.C. §1692e.

(W.D.Wis. 2007) ("Several district courts have determined that a class definition was not definite when the plaintiff had simply incorporated the language of the statutory prohibition into its class definition because the court would be required to conduct individual inquires into the merits of each potential plaintiff's case in order to determine their qualifications as class members . . . . [T]he Court considers such reasoning persuasive").

In Drinkman, an FDCPA case, the court held that a class definition referring to violations of 15 U.S.C. §1692d(6) was too indefinite to describe the class.  "Plaintiff's class definition merely incorporates the statutory prohibition that a debt collector not place telephone calls without 'meaningful disclosure' of its identity. 15 U.S.C. §1692d(6).  If plaintiff's class definition stands as is, the Court would be required to conduct individual inquires into whether each potential class member received a message containing 'meaningful disclosure' of defendant's identity in an effort to determine if each potential class member was qualified to be an actual class member . . . . Accordingly, the fact that the Court would be forced to make individual decisions on the merits of each potential class member's claim, including Drinkman's claim, before it could even certify the class demonstrates that plaintiff's class definition is not definite."  Id., *3.

Although the court in Drinkman solved the problem by re-defining the proposed class more narrowly,[3] that court was not asked to certify a settlement class.  Here, by contrast, the

---

[3] "[T]he definiteness problem can be easily remedied without denying certification. Accordingly, the Court amends the class definition in the following manner: All Wisconsin 'consumers' (as that term is defined by 15 U.S.C. §1692a(3)) that received pre-recorded messages from Defendant, within one year prior to July 3, 2007, in which Defendant included nothing more than the caller's name, a phone number and a reference to some important matter." Id.

class definition has been agreed to by the parties in the Stipulation of Settlement, and I "cannot rewrite the terms of the parties' agreement". Shiotani v. Walters, 2012 WL 6621279, *5, n. 4 (S.D.N.Y. 2012). "The requirement that a district court review and approve a class action settlement before it binds all class members does not affect the binding nature of the parties' underlying agreement . . . . A district court is not a party to the settlement, nor may it modify the terms of a voluntary settlement agreement between the parties." Ehrheart v. Verizon Wireless, 609 F.3d 590, 593 (3rd Cir. 2010).

"Thus, because mini-hearings on the merits are required here to determine class membership, this class definition is untenable and cannot be certified ." Kondratick v. Beneficial Consumer Discount Co., 2006 WL 305399, *10 (E.D.Pa. 2006). Nevertheless, I will next consider the requirements of Rule 23(a) and (b), which furnish independent reasons for denying the Consent Motion.


**C.      Have Rule 23(a)'s Criteria Been Satisfied?**

**1.      Rule 23(a)(1): Numerosity**

Northstar believes that there are approximately 400,000 potential members of the Settlement Class, and the parties agree that this will be "subject to confirmatory discovery by the Settling Parties." Stipulation of Settlement [42-2], p. 5, ¶E. Since "numerosity is presumed at a level of 40 members", Consolidated Rail Corp. v. Town of Hyde Park, 47 F. 3d 473, 483 (2d Cir.), cert. denied, 515 U.S. 1122 (1995), I conclude that, irrespective of the precise parameters of the class, the numerosity requirement is satisfied.

2. **Rule 23(a)(2): Commonality**

"The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997).  Plaintiffs argue that "commonality is established by the Defendant's business practice of leaving the same type of uniform telephone messages for Plaintiffs and the Settlement Class Members, and by its uniform failure to provide other disclosures at the outset of telephone conversations". Consent Motion [42-1], §2.04.

I disagree. As stated previously, the conduct alleged in the definition of the Settlement Class is not limited to the "same type of uniform messages" - instead, it extends to "false representations" and "deceptive means", which, by the use of the disjunctive,[4]  must be interpreted to mean something different from the type of messages the named plaintiffs received.[5] 15 U.S.C. §1692e prohibits "*any* false, deceptive or misleading representation" (emphasis added), and "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind'".  United States v. Gonzales, 520 U.S. 1, 5 (1997) (*quoting* Webster's Third New International Dictionary  (1976)).

For example, the settlement class as currently defined could include someone to whom Northstar stated that it would foreclose upon their property the following day if they did

---

[4]  " . . . *or* where the Defendant made a false representation or used a deceptive means to collect or attempt to collect any debt . . .". Stipulation of Settlement [42-2] §§1.6, 1.15 (emphasis added).

[5]  "The Felix Action seeks to certify a class consisting of all residents who received telephonic communications from Defendant, including voice messages on a voicemail system or answering machine, that did not disclose that the call was for collection purposes *or that otherwise* used *any* false representation or deceptive means to collect or attempt to collect any debt . . . which messages violate the FDCPA and RFDCPA". Consent Motion [42-1], p. 2 (emphasis added).

not pay the debt immediately - without any intention to do so.  Such conduct would readily constitute a "false statement" or a "deceptive means" within the meaning of §1692e, yet would have little in common with the type of messages the named plaintiffs claim to have received. While I have no way of knowing whether Northstar engaged in such conduct, absent a "mini-hearing" into the merits of each class member's claims I have no way of knowing that it did not. Therefore, "[c]ommonality cannot be shown because the resolution of common issues about the collection efforts depend on individualized factual determinations that could be different for each proposed class member." Kondratick, *10.

### 3.    Rule 23(a)(3): Typicality

"Typicality . . .  requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Marisol A., 126 F. 3d at 376.

Plaintiffs argue that their claims are typical of the claims of the Settlement Class because Northstar left them and all Settlement Class members the same type of messages, which "failed to provide meaningful disclosure of the caller's identity", "did not contain the disclosures required by 15 U.S.C. §1692e(11)", and "did not advise them at the outset of the call that their conversation might be recorded". Consent Motion [42-1], §2.06.

However, as previously discussed, the parties did not limit the Settlement Class in that manner. Rather, by use of the disjunctive "or", the class might include persons as to whom completely different types of false statements or deceptive practices were directed.  Therefore,

"mini-hearings on the merits would be the only way to determine if the [named plaintiffs'] claims are typical and whether they can adequately represent the class' interests because the mini-hearings would be the only way to determine if the proposed class members had experienced a similar set of circumstances as the [named plaintiffs]." Kondratick, *10.

### 4.    Rule 23(a)(4): Fair and Adequate Protection of Class Interests

"The adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 626 n. 20 (1997). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Id. at 625-26. I conclude that plaintiffs have failed to satisfy this criterion for the same reasons that they have failed to demonstrate typicality.

Certification is appropriate only where "all four prerequisites set forth in Rule 23(a)" are satisfied. Brown, 609 F.3d at 475. However, the Consent Motion satisfies only one those prerequisites - numerosity. Therefore, Rule 23(a) would likewise preclude certification.

### D.    Have Rule 23(b)'s Criteria Been Satisfied?

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." Amchem, 521 U.S. at 614. Having decided that the requirements of Rule 23(a) have not been

satisfied, it is unnecessary for me to consider Rule 23(b).  Nevertheless, I will do so.  *See* <u>Karvaly</u>
<u>v. eBay, Inc.</u>, 245 F.R.D. 71, 83 (E.D.N.Y. 2007) ("Although the Court need not comment on the
Rule 23(b) . . . factors because it has determined that the Rule 23(a) factors are not satisfied by
the class as presently defined, it nevertheless does so for the purpose of pointing out the problems
with the proposed class definition that further support its conclusion that the class as defined
cannot be certified pursuant to Rule 23").

   The Consent Motion seeks certification of the Settlement Class under Rule
23(b)(1)(B) and/or 23(b)(2). [42-1], pp. 10-13. Each criterion will be addressed:[6]


   1.  **Rule 23(b)(1)(B)**

   Rule 23(b)(1)(B) provides that "[a] class action may be maintained if Rule 23(a) is
satisfied and if: (1) prosecuting separate actions by or against individual class members would
create a risk of . . . (B) adjudications with respect to individual class members that, as a practical
matter, would be dispositive of the interests of the other members not parties to the individual
adjudications or would substantially impair or impede their ability to protect their interests".
"The classic example of a (b)(1)(B) class action is a limited fund case: a situation in which many
litigants have claims against a single asset and the asset's total value is unlikely to satisfy all of

---

   [6]  I will also address plaintiffs' oblique reference to Rule 23(b)(1)(A). Although the
Consent Motion does not request certification under that Rule, plaintiffs quote its language ("prosecuting
separate actions by or against individual class members would create a risk of inconsistent or varying
adjudications with respect to individual class members that would establish incompatible standards of
conduct for the party opposing the class") while referring to it as Rule 23(b)(1)(b), a Rule which does not
exist. Consent Motion [42-1], p. 13. Since the Stipulation of Settlement specifically *allows* individual
actions by class members ([42-2], §3.2, p. 16), the risk of "inconsistent or varying adjudications" is one
which Northstar is willing to bear.

the claims. If the claims are adjudicated individually, the fund will run out before the claimants do." 2 <u>Newberg</u>, §4:18.

Plaintiffs argue that "because the amount of statutory damages recoverable on a class-wide basis for the claims asserted here is statutorily limited to '1 per centum of the net worth of the Defendant', 15 U.S.C. §1692k(a)(2)(b) . . . the Settlement Class is uniquely appropriate for certification under . . . Rule 23(b)(1)(b)." Consent Motion [42-1], p. 13 [*sic*].[7] However, the limitation under 15 U.S.C. §1692k(a)(2)(B) applies only to *class* claims for statutory damages, not to *individual* claims for such damages (which are capped at $1,000 per action by an individual.  *See* 15 U.S.C. §1692k(a)(2)(A)).

Since plaintiffs do not argue that Northstar would be incapable of satisfying individual claims for statutory damages, Rule 23(b)(1)(B) is inapplicable.  *See* <u>Petrolito v. Arrow Financial Services, LLC</u>, 221 F.R.D. 303, 313 (D. Conn. 2004) ("Rule 23(b)(1)(B) is typically applied in limited fund cases; there is no such allegation of limited defendant resources here").

## 2.    Rule 23(b)(2)

Certification is appropriate under Rule 23(b)(2) if Rule 23(a) is satisfied and "the party opposing the class has acted . . . on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole".

---

[7]    Plaintiffs' references to 15 U.S.C. §1692k(a)(2)(b) rather than 15 U.S.C. §1692k(a)(2)(B), and to Rule 23(b)(1)(b) rather than Rule 23(b)(1)(B), are presumably typographical errors.

Plaintiffs acknowledge that certification under Rule 23(b)(2) "is *not* appropriate if the damage claims 'predominate' the plaintiff's request for injunctive relief" (Consent Motion [42-1], p. 10) (emphasis added).  However, they argue that "courts may certify classes under Rule 23(b)(2) when a plaintiff seeks both injunctive relief and monetary damages if the monetary damages are secondary or 'incidental' to the injunctive relief".  Id.  They note that numerous courts "have certified FDCPA class action lawsuits pursuant to [Rule] 23(b)(2), even though injunctive and/or declaratory relief is not available as a matter of right to private litigants under the FDCPA . . . . in part because '[t]he monetary damages would be so *de minimis* that the value of the injunction to the plaintiffs clearly outweighs any potential financial recompense'".  Id.

Among the cases which they cite in support of that proposition is Gravina v. United Collection Bureau, (E.D.N.Y. Case No. 2:09-cv-0846) (id., p. 11). They note that Gravina was one of the cases in which "[c]ourts have . . . approved class settlements including statutory damages awards as incidental to stipulated injunctions under [Rule] 23(b)(2)".  Id. What they *fail* to mention, however, is that in Hecht v. United Collection Bureau, Inc., 691 F.3d 218, 224 (2d Cir. 2012), the Second Circuit concluded "that the claim for damages in *Gravina* predominated over the claim for injunctive relief". If the pertinent facts in Gravina are similar to those of this case, then plaintiffs' argument for certification under Rule 23(b)(2) does not have a leg to stand on, given their admission that, under such circumstances, certification under Rule 23(b)(2) "is not appropriate". Consent Motion [42-1], p. 10.

Since Messrs. Horn and Arleo were also class counsel in Gravina, they well know that the relevant facts of that case, as summarized in Hecht, are not merely similar, but virtually identical to those of this case:

"The *Gravina* complaint requested 'the maximum statutory damages' under the FDCPA but failed even to mention injunctive relief. The Settlement Order defines the *Gravina* class members as victims of a completed harm with no reference to ongoing injury or risk of future injury: 'the 'Settlement Class' is defined as all persons who received a message left by UCB which did not identify UCB itself by name as the caller, state the purpose or nature of the communication, or disclose that the communication was from a debt collector . . . . The *Gravina* complaint and Stipulation of Settlement included the same class definition. Absent from this retrospective class definition is any forward-looking requirement - that, for example, the class members' debt remained outstanding, they were at risk of incurring future debt, UCB might again be engaged to collect from them, or even that they feared UCB would again attempt to collect from them - even though the injunctive order was solely addressed to UCB's future conduct. Assuming that the FDCPA permits injunctive relief, an injunction is generally unavailable where there is no showing of any real or immediate threat that the plaintiff will be wronged again . . . . The *Gravina* complaint, Stipulation of Settlement, and Settlement Order thus defined the *Gravina* class to ensure that every member would be entitled to damages, but not that every member would have standing to seek injunctive relief." Hecht, 691 F.3d at 223-24.

By letter dated August 18, 2012 (the day after Hecht was decided), Mr. Horn told

another court: "Mr. Arleo and I believe it is our ethical duty to promptly advise Your Honor of

the ruling issued yesterday by the Second Circuit Court of Appeals in the matter of Hecht v.

United Collection Bureau, Inc."  Corpac v. Rubin & Rothman, LLC, 2013 WL 342704, *3

(E.D.N.Y. 2013). I fail to see why they did not have the same ethical duty to advise me of Hecht,

which completely undercuts their argument for certification under Rule 23(b)(2).[8]

---

[8]    "A lawyer shall not knowingly . . . fail to disclose to the tribunal controlling legal authority known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." Rules of Professional Conduct, Rule 3.3(a)(2) (22 N.Y.C.R.R. §1200.00); United States v. Gaines, 295 F.3d 293, 302 (2d Cir. 2002).

-16-

Not only does the Consent Motion fail to cite <u>Hecht</u>, it also fails to cite <u>Dukes</u>, which furnishes yet *another* reason for denying certification under Rule 23(b)(2).  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted - the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." <u>Dukes</u>, 131 S.Ct. at 2557.  "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." <u>Id.</u> (emphasis in original).

The Stipulation of Settlement provides that Northstar "shall consent to entry of a stipulated injunction mandating that [Northstar] use its best efforts to ensure that, in telephone communications it has with debtors subject to the FDCPA or RFDCPA, including the leaving of voice messages, [Northstar]:(a) identifies itself by its legal name; (b) discloses that the communication is from a debt collector; (c) discloses that the communication concerns the collection of a debt; and (d) advises callers at the beginning of any telephone conversations that the call may be monitored or recorded". [42-2], §2.3(d). While such an injunction might benefit debtors who might otherwise receive that type of communication in the future, the Settlement Class is defined as those who *received* telephonic messages "between February 28, 2010, through and including the date of order granting preliminary certification of the Settlement Class" (<u>id.</u>, §§1.6, 1.15) - not as those who *will* receive such messages in the future.

Therefore, the injunction would clearly not benefit all (if, indeed, any) members of the Settlement Class.  *See* <u>Hecht</u>, 691 F.3d at 223, 224 ("The Settlement Order defines the

*Gravina* class members as victims of a completed harm with no reference to ongoing injury or

risk of future injury . . . . not . . . every member would have standing to seek injunctive relief").

Moreover, the stipulated injunction would be of no benefit to class members who

were the victims of *other* types of false representations or deceptive means.  As stated previously,

the wrongful conduct mentioned in the definition of the Settlement Class is not limited to the

sending of standardized voicemail messages, but extends to *any* type of false or deceptive

telephonic communication by Northstar.

Since plaintiffs have not demonstrated that  "a single injunction or declaratory

judgment would provide relief to each member of the class" (Dukes, 131 S.Ct. at 2557), the

Settlement Class cannot be certified under Rule 23(b)(2).  *See* Shook v. Board of County

Commissioners, 543 F.3d 597, 604 (10th Cir. 2008) ("In short, under Rule 23(b)(2) the class

members' injuries must be sufficiently similar that they can be addressed in an single injunction

that need not differentiate between class members").

**E.      Is the Proposed Settlement "Fair, Reasonable, and Adequate"?**

"If the class satisfies the requirements of Rules 23(a) and (b), then the district

court must separately evaluate whether the settlement agreement is 'fair, reasonable, and

adequate' under Rule 23(e)." American International Group, 689 F.3d at 238.[9]  "The

---

[9]      "Although the Court has determined that the class, as defined in the Settlement
Agreement, cannot be certified under Rule 23(a) and (b), it nevertheless will address several obvious
deficiencies of the proposed Settlement Agreement that would preclude the Court from granting
preliminary approval to the settlement in its current form, even if the class were certifiable." Karvaly,
245 F.R.D. at 86.

District Court must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness . . . and that it was not a product of collusion." D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001). "When a settlement is negotiated prior to class certification, as is the case here, it is subject to a higher degree of scrutiny in assessing its fairness." Id.

At this stage the parties seek only preliminary, not final, approval of the settlement. "Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness . . . . A proposed settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." Davis v. J.P. Morgan Chase & Co., 775 F. Supp.2d 601, 607 (W.D.N.Y. 2011) (Larimer, J.).

In considering the fairness of the proposed settlement - even preliminarily - I am struck by the lengths to which the named plaintiffs have gone to exclude class members from any say in the certification decision or the settlement itself. For example, they contend that "no notice of the Settlement is [required] and Settlement Class Members are not permitted to opt out of the Settlement" (Stipulation of Settlement [42-2], p. 6, §J), ignoring Hecht's holding that in Gravina, involving virtually identical circumstances, "the claim for damages . . . predominated over the claim for injunctive relief", giving the absent class members "a *due process* right to notice . . . and the opportunity to opt out" of the settlement. 691 F.3d at 224 (emphasis added).

-19-

Rule 23(e)(1) provides that "the court must direct notice [of the settlement] in a reasonable manner to all class members who would be bound by the proposal". That notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings". Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 438 (2d Cir. 2007). While paying lip service to the absent class members' right to object to the settlement,[10] plaintiffs propose that "[n]otice of the Settlement to the Settlement Class Representative Plaintiffs [Felix and Harb] shall constitute due and sufficient notice to the Settlement Class Members". Stipulation of Settlement [42-2], p. 6, §J.

I cannot conceive of a method which would be *less* likely to convey notice of the proposed settlement to the absent class members. "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . . or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950); Hecht, 691 F.3d at 224.

If plaintiffs and their attorneys are acting like they have something to hide from the absent class members, perhaps it's because they do. The Stipulation of Settlement calls for

---

[10]    "Notwithstanding their inability to opt-out of the Settlement, all Settlement Class Members have the right to object to the Settlement." Consent Motion [42-1], p. 16 (emphasis in original).

Northstar to pay into a Settlement Fund the sum of $129,238.58 ([42-2], §2.3(a)).  From that

Fund, plaintiff Felix is to be paid $3,500 ($1,000 as FDCPA statutory damages, $1,000 as

RFDCPA statutory damages, and $1,500 for "services to the Settlement Class Members"), and

plaintiff Harb is to be paid $2,500 ($1,000 as FDCPA statutory damages and $1,500 for "services

to the Settlement Class Members").  Id.  The sum of $58,238.58 is to be paid to one or more

"charitable organizations without any religious or political affiliations". Id., §§2.3(b), (c).

Messrs. Horn and Arleo, as Settlement Class Counsel, are entitled to receive up to $65,000 for

fees and expenses (subject to court approval), and Northstar agrees not to oppose their fee

application as long as it does not exceed that amount.  Id., §2.3(e).

          And what do the absent class members receive?  If not nothing, then close to it.

They receive no money whatsoever, and while some of them *may* arguably benefit from

Northstar's promise to use its "best efforts" in future telephone calls to identify itself and to

indicate that the call relates to collection of a debt and may be recorded (id., §2(d),[11]  that

promise - even if confirmed in a stipulated injunction - would be of no benefit to those class

members who received calls in the past but would not receive them in the future, or to those class

members who were the victims of false statements or deceptive conduct *other* than that

encompassed by the injunction.

          In return for this ethereal benefit, the absent Settlement Class Members are

required to release Northstar and its affiliates from, *inter alia*, "all class claims for damages or

injunctive relief for its violations of 15. U.S.C. § . . . 1692e(10) ["The use of any false

---

[11]      Whether "best efforts" were used "will almost invariably involve a question of fact".
Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc., 2012 WL 4891584, *5 (W.D.N.Y. 2012)
(Telesca, J.).

representation or deceptive means to collect or attempt to collect any debt or to obtain

information concerning a consumer"] . . . and any and all <u>class</u> claims or causes of action

whatsoever, including Unknown Claims, arising out of or relating to the allegations and/or

claims asserted in the Consolidated Action arising out of state or federal law". <u>Id.</u>, §3.2

(emphasis in original).

      While plaintiffs emphasize that, unlike named plaintiffs Felix and Harb, the other

Settlement Class members are not releasing any *individual* claims against Northstar, the fact

remains that the *class* claims which they are releasing must have some value - for why else would

Northstar agree to the settlement?  Moreover, the class claims being released - for any false

representation or deceptive means, and for any violation of state of federal law - are potentially

far broader than the limited claims asserted by plaintiffs Felix and Harb, which relate merely to

Northstar's failure to identify itself, or to disclose that the calls related to a debt and might be

monitored.

      "[S]ettling class members generally cannot validly release other class members'

claims that they themselves do not possess, for no consideration . . . . A court, then, when

reviewing the fairness of a proposed class action settlement, must take special care to ensure that

the release of a claim not asserted within a class action or not shared alike by all class members

does not represent an advantage to the class bought by the uncompensated sacrifice of claims of

members, whether few or many." <u>Davis v. J.P. Morgan Chase & Co.</u>, 827 F. Supp.2d 172, 181

(W.D.N.Y. 2011) (Larimer, J.).  "Here, the class representatives seek to advance their own

interests by sacrificing the rights of the majority of Class Members, who stand to gain nothing of

substantial value from the proposed settlement." <u>Karvaly</u>, 245 F.R.D. at 89.

"The court's role in reviewing the proposed settlement is as a fiduciary serving as a guardian of the rights of absent class members."  In re Agent Orange Product Liability Litigation, 597 F.Supp. 740, 758 (E.D.N.Y. 1984), aff'd, 818 F.2d 145 (2d Cir. 1987), cert. denied, 484 U.S. 1004 (1988).  Therefore, had I concluded that the Settlement Class could be certified, I could not - even preliminarily - approve a settlement agreement such as this.

## CONCLUSION AND ORDER TO SHOW CAUSE

For these reasons, the Consent Motion [42] is denied.  Furthermore, given the holdings of Hecht and Dukes, neither of which were cited to me, I fail to see how the Consent Motion could have been filed in good faith - particularly by experienced class action counsel such as Messrs. Horn and Arleo.

Therefore, pursuant to Rule 11(c)(3), on or before June 11, 2013, plaintiffs' attorneys Horn and Arleo shall show cause why their arguments for class certification under Rule 23(b) have not violated Rule 11(b), and why they should not be sanctioned accordingly.

**SO ORDERED**

DATED   May 28, 2013

    /s/ Jeremiah J. McCarthy    
JEREMIAH J. MCCARTHY
United States Magistrate Judge

-23-