**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
ANTHONY FELIX, an individual; on behalf of : CASE NO.: 1:11-cv-00166-WMS-JJM
himself and all others similarly situated, :
　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Plaintiffs, :
　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　vs. :
　　　　　　　　　　　　　　　　　　　　　　　　　　　:
NORTHSTAR LOCATION SERVICES, LLC, :
a New York Limited Liability Company; and :
JOHN AND JANE DOES NUMBERS 1 :
THROUGH 25, :
　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Defendants. :
------------------------------------------------------------x
DONNIE JO HARB, an individual; on behalf of :
herself and all others similarly situated, :
　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Plaintiffs, :
　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　vs. :
　　　　　　　　　　　　　　　　　　　　　　　　　　　:
NORTHSTAR LOCATION SERVICES, LLC, :
a New York Limited Liability Company; and :
JOHN AND JANE DOES NUMBERS 1 :
THROUGH 25, :
　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Defendants. :
------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' COUNSELS' RESPONSE**
**TO THIS COURT'S ORDER TO SHOW CAUSE DATED MAY 28, 2013**

**Table of Contents**

Page

I. STATEMENTS OF FACTS……………………………………………....... 1

II. STATEMENT OF QUESTIONS PRESENTED…………….…………..... 4

III. ARGUMENT………………………………………………………….….. 4

CONCLUSION……………………………………………………. 16

**Table of Citations**

Page

Cases

*Anderson v. Nationwide Credit, Inc.*,
08-cv-1016 (E.D.N.Y.)……………………………………………………… 9

*Anderson v. Nationwide Credit, Inc.*,
10-cv-3825 (E.D.N.Y.)……………………………………………………… 9

*Baker v. GC Services*,
677 F.2d 775, 777 (9th Cir. 1982)…………………………………………. 9

*Boggs v. Alto Trailer Sales, Inc.*,
511 F.2d 114, 118 (5th Cir. 1975)…………………………………………. 11

*Cedeno v. Bureau of Collection Recovery, Inc.*,
case no. SACV 10-01960 (C.D. Cal.)…………………………………….... 14

*Fieldturf, Inc. v. Southwest Recreational*,
212 F.R.D. 341, 344 n.3 (E.D. Ky. 2003)…………………………………. 15

*Gomez v. Illinois State Board of Education*,
117 F.R.D. 394, 397 n.2d (N.D. Ill. 1987)…………………………………………………...   13

*Griffith v. Hess Oil Virgin Islands Corp.*,
5 F. Supp. 2d 336, 340 (D. V.I. 1998)…………………………………………………..   15

*Harris v. Gen Dev. Corp.*,
127 F.R.D. 655, 6759 (N.D. Ill. 1989)………………………………………………….   13

*Hecht v. United Collection Bureau, Inc.*,
691 F.3d 218 (2d Cir. 2012)……………………………………………..   1,2,3,4,5,6,7,8,9,10

*Lewis v. Tully*,
96 F.R.D. 370, 376 (N.D. Ill.)…………………………………………………………   13

*Pierce v. Commercial Warehouse*,
142 F.R.D. 687, 690 (M.D. Fla. 1992)……………………………………………………   15

*Sanders v. Jackson*,
209 F.3d 998, 1002 (7th Cir. 2000)……………………………………………………   11

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011)……………………………………………………………..   3,4,12,14


**Other authorities**

15 U.S.C. § 1692k(a)(2)(B)(ii)……………………………………………………..   10

Fed. R. Civ. P. 23(b)(2)……………………………………………………   2,4,8,9,10,12,14

## I. STATEMENT OF FACTS

The above-entitled consolidated actions were each commenced pursuant to the Fair Debt Collection Practices Act (FDCPA). The Plaintiffs' allegations of FDCPA violations are all based upon telephone calls and messages placed by the Defendant to the Plaintiffs and other consumers who were allegedly indebted to entities who retained the Defendant to collect alleged debts. These FDCPA violations are limited to; a) the failure to advise that a telephone call could be monitored and/or recorded; b) the failure to fully identify the Defendant; c) the failure to state the purpose of the call; and, d) the failure to advise that the Defendant is a debt collector.

The parties entered into a class settlement agreement ("CSA") pursuant to Fed. R. Civ. P. 23(b)(2) wherein the Defendant stipulated to an injunction whereby it would use its best efforts, during telephone calls to consumers, to; a) identify itself by its legal name; b) disclose that the communication is from a debt collector; c) disclose that the purpose of the communication is for the purpose of collecting a debt; and d) advise consumers that the telephone conversation with the consumer could be monitored and/or recorded.

The CSA called for notice to the class to be published via newspaper. On September 28, 2011 the parties jointly moved for certification of the class settlement agreement (Dkt. No. 30). On September 30, 2011 the parties filed an amended consent motion to certify the class. (Dkt. No. 31). On October 3, 2011 Chief District Judge William Skretny ordered the parties consent to proceed before Magistrate Judge Jeremiah J. McCarthy. (Dkt. No. 32)

While the CSA was still pending before Magistrate Judge McCarthy, the United States Court of Appeals for the Second Circuit issued an opinion on August 12, 2012 in the matter of *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012). In that matter, the Second Circuit vacated and remanded a District Court ruling that a class member was barred from

bringing an individual FDCPA claim based upon a Fed. R. Civ. P. 23(b)(2) class settlement agreement which was previously approved in the matter of *Gravina v. United Collection Bureau, Inc.* In *Hecht*, the Second Circuit held that newspaper notice to the class in *Gravina* failed to satisfy the due process rights of the class members. The CSA in the combined actions before Judge McCarthy also included a similar proposed form of newspaper notice to the class. Based upon the Second Circuit ruling in *Hecht* the undersigned counsels, and counsel for the Defendant, decided it was highly unlikely that the CSA would be legally enforceable ue to the inadequacy of the proposed method of notice of the CSA via newspaper.

Upon reviewing the *Hecht* ruling, and fully aware that prompt action was needed to notify the Court that the CSA was likely unenforceable, Robert L. Arleo, co-counsel for the Plaintiff, sent an email dated August 27, 2012 to Paul Sanders, counsel for the Defendant. In his email, Mr. Arleo advised Mr. Sanders of the *Hecht* decision and of the need to speak in regard to the impact *Hecht* would have on the CSA the Parties had filed with Judge McCarthy. Thereafter Mr. Arleo emailed the LEXIS citation of the *Hecht* decision to Mr. Sanders.

On August 28, 2013, after Mr. Sanders reviewed the *Hecht* decision, he and Mr. Arleo spoke via telephone. During this conversation it was agreed that Mr. Sanders would call Magistrate Judge McCarthy to promptly advise the Court that the parties would be withdrawing the CSA based upon the *Hecht* decision and otherwise intended to modify the CSA so as to be in compliance with the *Hecht* ruling. Mr. Sanders did, in fact, telephone chambers speaking with Mr. Matthew Yusick, Law Clerk to Magistrate Judge McCarthy, and advising him that, in light of the *Hecht* decision, the parties would be withdrawing the amended consent motion and that a second amended motion would possibly be filed in the future. The Court confirmed same via text

order [Dkt. No. 36]. The Court further confirmed receipt of being advised of the *Hecht* decision via email dated August 28, 2012 from Matthew Yusick to Mr. Sanders, Mr. Arleo and Mr. Horn.

Thereafter, the parties engaged in extensive discussions aimed at modifying the CSA to comply with the mandate issued in *Hecht*. The parties executed a revised CSA which sought to preserve the individual claims of the class members in order to satisfy the dictates of *Hecht* concerning the issue of providing notice to the class that would protect the class members' due process rights. On November 20, 2012 the parties filed a second amended consent motion to certify the class pursuant to the new CSA [Dkt. No. 42]. This Court issued its Decision and Order on May 28, 2013 [Dkt. No. 43] ("the May 28th D&O"). Therein the Court denied the motion to certify the class and directed the undersigned counsel to show cause why they should not be sanctioned for failing to advise the Court of the *Hecht* ruling and another ruling which the Court believes to be adverse to the Plaintiff, *Wal-Mart v. Dukes*.

Upon review of the May 28th D&O counsels for the parties were confused in regard to that portion of the D&O which stated that the undersigned counsels failed to advise the Court of the *Hecht* decision. In an effort to clarify their duties in responding to the show cause directive the undersigned counsels sent a letter on May 29, 2013 to Magistrate Judge McCarthy. Therein, the undersigned counsels advised Magistrate Judge McCarthy that they believe that they had properly advised the Court of the *Hecht* decision. In response to said correspondence Magistrate Judge McCarthy sent an email on May 29, 2013 to all counsel of record. Judge McCarthy asserted that he did not state that *Hecht* was not brought to the attention of the Court at all but, rather, his concern was that *Hecht* was not cited in the consent motion. He further stated (in part) "….nor was there any attempt made to address its holding which—in my view at least—casts

Gravina in a very different light. Your response to the Order to Show Cause should address how the Rule23(b)(2) arguments are reasonable in light of *Hecht* and *Dukes.*"

This Memorandum of Law is submitted in compliance with the order to show cause issued by Magistrate Judge McCarthy and his subsequent e-mail correspondence to the undersigned counsel regarding their request for clarification of the issues to be addressed.

## II. STATEMENT OF QUESTION PRESENTED

A. *Did the undersigned counsels fail to comply with their ethical duty to advise a Court of controlling decisions which are adverse to the position of the Plaintiffs?*

Answer- No.

## III. ARGUMENT

A. THE PARTIES FULLY ADVISED THE COURT OF THE *HECHT* DECISION ALBEIT NOT IN THE CONSENT MOTION FOR CLASS CERTIFICATION

In directing the undersigned counsels to show cause why they should not be sanctioned for failing to advise a court of controlling legal authority which is adverse to the Plaintiffs' position, the Court relies exclusively on the matters of *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012) and *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011). The Court asserts that each of these cases bode against certification of the class settlement agreement ("CSA") entered into between the parties. For the reasons set forth below these cases are not only not adverse to the CSA but they provide further *support* for preliminary approval of the CSA.

The above-referenced emails sent by attorney Robert Arleo to defense counsel Paul Sanders regarding the *Hecht* decision, the telephone call to the Court from defense counsel Sanders wherein he advised Law Clerk Matthew Yusick of the *Hecht* decision and the parities intent to withdraw the amended consent motion for class certification, and the email from Law Clerk Yusick which expressly confirms that Mr. Sanders advised the Court of the *Hecht* ruling, all provide evidence that the undersigned counsels fully complied with their duty to advise this tribunal of a case which was adverse to the first CSA as it was written.

Although the Second Circuit in *Hecht* discussed the issue of whether or not an injunction is proper in regard to an FDCPA class settlement agreement, the main thrust of the Second Circuit's holding in *Hecht* concerned the issue of notice to class members that satisfies due process when a class settlement agreement extinguishes individual claims of class members. Upon learning of the *Hecht* decision the undersigned counsels were fairly confident that a continued attempt to obtain an order of class certification in regard to the initial class settlement agreement would have been, at a minimum, futile and, at a maximum, possibly sanctionable. Thus, the very act of undertaking quick action to alert the Court of the *Hecht* decision demonstrates that the undersigned counsels do not possess the type of deceit which is necessary to knowingly fail to advise a tribunal of a controlling adverse authority.

In its May 28th D&O, the Court referenced the ethical rules which require that an attorney advise a "tribunal" of cases adverse to a client's position. Clearly, the email exchange between counsels for the parties and the Court indicates that the undersigned counsels properly and ethically undertook swift action to ensure that, at the time the *Hecht* decision was published, this Court was advised of the decision that *was adverse to the initial CSA presented to the Court for approval*.

Also in its May 28th D&O, the Court referenced the letter sent by the undersigned counsels to District Court Judge Arthur Spatt advising him that the *Hecht* decision rendered a class settlement in another FDCPA action unenforceable. The undersigned believe, and this Court, via its reference to the letter communication to a Judge Spatt regarding *Hecht*, appears to confirm, that such letter communication (which is separate and distinct from a formal motion) was an act sufficient to properly advise a "tribunal" of adverse case authority by the undersigned counsels. Here, Plaintiffs' counsel believe that their notification of the Court via telephone call to chambers also served to properly advise a "tribunal" of adverse case authority. Otherwise, it is simply unsupportable to believe that Plaintiffs' counsels would ethically advise one federal tribunal of adverse authority and not advise another federal tribunal of the same adverse authority.

Notwithstanding the foregoing, the undersigned counsels, based upon the May 29, 2013 email from Magistrate Judge McCarthy, understand that the Court is concerned with the fact that *Hecht* was not formally cited or otherwise referenced in the consent motion. In deference to the concern of the Court the undersigned counsels did not believe it was necessary to cite the *Hecht* decision based upon the fact that the revised class settlement agreement cured the main defect with that portion of the original CSA, i.e. the issue of providing adequate notice to members of a class of a class settlement agreement which could have the effect of extinguishing the *individual* claims of class members. Thus, as the revised CSA *preserves* individual claims, the undersigned counsels believed that they had effectively satisfied the mandate of *Hecht* by preserving individual claims of the class members. Importantly, the undersigned counsels believed that the revised CSA was filed in compliance with the mandates of all controlling case law.

The reason for citing *Hecht* in our papers to Judge Spatt was that due process was still an issue in that case - we only changed the method of notice to the class not the ability, or lack thereof, of class members to exclude themselves from the class, thereby retaining individual rights to sue. In our first class settlement agreement in the instant cases we retained individual rights to sue; had we retained individual rights to sue in our case in front of Judge Spatt, as we did here, we would not have cited *Hecht* as we did not believe it was implicated any more than we thought it was in the instant case.

Despite understanding that the *Hecht* decision rendered the certification order issued by the district court unenforceable, the undersigned counsels mistakenly failed to remove the citation to *Gravina v. United Collection Bureau, Inc.* from pages 11 and 12 of the amended consent motion for class certification and an order of preliminary approval [Dkt. No. 35]. The undersigned counsels are not attempting to convince this Court that they are perfect buy only seek to convince the Court that each are not the type of counsels who intentionally seek to deceive a court by failing to cite adverse controlling authority.

Nothing stated in the foregoing paragraph could be interpreted to establish that the undersigned counsels were attempting to deceive the Court by including a reference to a case which had been invalidated by the ruling of the Second Circuit in *Hecht*. Indeed, if the undersigned counsels were attempting to evade the holding of the Second Circuit in *Hecht* then they would have; a) never promptly brought the *Hecht* decision to the court's attention and; b) never revised the CSA to satisfy the notice mandate of *Hecht*. It is indeed unsupportable for anyone to conclude that the failure to remove the reference to *Gravina* was in any way, shape or form, an intentional attempt to deceive a Court.

In regard to the Court's directive to the undersigned to explain how the Fed. R. Civ. P. 23(b)(2) settlement is reasonable herein in light of the ruling of the Second Circuit in *Hecht,* nothing in the *Hecht* decision could be read to render injunctive relief in an FDCPA action unattainable in this Circuit. In fact, the Second Circuit rendered its analysis regarding the *Gravina* injunction only after stating "Assuming the FDCPA permits injunctive relief……". 691 F.3d 218 at p. 223 (although noting in footnote 1 that two federal appeals courts have stated that injunctive relief is not available to private litigants in FDCPA cases). Furthermore, the Second Circuit did not formally invalidate the class settlement agreement in the *Gravina* matter. Instead, as reiterated on page 15 of the May 28th D&O, the Second Circuit found that "the claim for damages in *Gravina* predominated over the claims for injunctive relief.". *Hecht v. United Collection Bureau, Inc.*, *supra* at p.  .

The Second Circuit in *Hecht* merely criticized the failure of the parties in *Gravina* to support their agreement for injunctive relief by not setting forth and describing the ongoing and potential future risks of harm. As reiterated by the Court on page 16 of the May 28th D&O, the Second Circuit summed up the lack of ongoing or future injury as follows:

> "Absent from the retrospective class definition is any forward looking requirement- that, for example the class members debt remained outstanding, they were at risk of incurring future debt, UCB might again be engaged to collect from them, or even feared that UCB would attempt to collect from them- even though the injunctive order was solely addressed to UCB's future conduct."

The foregoing portion of the *Hecht* decision supports the 23(b)(2) settlement negotiated by the Parties. Specifically, each example of present and potential future harm cited by the Second Circuit is absolutely applicable to the class members in this action. None of the alleged debts owed by the class have been liquidated or have been otherwise forgiven. Indeed, an

8

FDCPA claim is independent of whether or not a debt is owed. *Baker v. GC Services*, 677 F.2d 775, 777 (9th Cir. 1982). Therefore, each and every class member in this action is at risk of present and future continued telephone contacts from the Defendant debt collector based upon present accounts being worked by the Defendant *and* based upon the fact that other accounts, either presently incurred by class members or which may be additionally incurred by class members, could be referred in the future to the Defendant.

The undersigned counsels do not intend to imply that the Second Circuit has given a ringing endorsement to the availability of injunctive relief to private litigants via its ruling in *Hecht*. However, the Second Circuit in *Hecht* did set forth those factors which may support injunctive relief in an FDCPA class action. Notwithstanding, two of the Court of Appeals cases referenced in footnote 1 of the *Hecht* decision did not consider whether parties could stipulate to injunctive relief and otherwise stated that injunctive relief is not expressly set forth in the FDCPA. Otherwise, many district courts in this Circuit have approved FDCPA class settlements under Fed. R. Civ. P. 23(b)(2) with stipulated injunctions and the undersigned counsels have served as class counsels in many of those cases.

Proof of the present and future risk of continued violative contact by a collection agency is demonstrated by the class actions which were filed in the matters of *Anderson v. Nationwide Credit, Inc.* 08-cv-1016 (E.D.N.Y.) and *Anderson v. Nationwide Credit, Inc.* 10-cv-3825 (E.D.N.Y.). The claims for violation of the FDCPA alleged therein were identical to the claims for FDCPA violation alleged in this case. After agreeing to a stipulated injunction in the initial class action, and after final approval was granted to the class settlement agreement, the defendant debt collector proceeded to violate the express terms of the injunction by committing the exact same FDCPA violations which they agreed to use reasonable procedures to prevent. The

undersigned counsels then filed a motion for contempt and filed a second class action lawsuit, alleging the same FDCPA violations and seeking another injunction. A new class settlement agreement was negotiated in the second class action which included another stipulated injunction. The second class action lawsuit recently received final approval from Senior District Judge Leonard Wexler of the Eastern District of New York.

Further evidence of the continued risk of present or future harm may be found at this Court's doorstep in the matter of of *Krug, et al. v. Mercantile Adjustment Bureau, LLC, et al.*, W.D.N.Y. Case No. 1:10-cv-00689-WMS-LGF ("First Felix Lawsuit"), which involved Debbie Felix as a Plaintiff. Debbie Felix is the wife of the named Plaintiff in this lawsuit, Anthony Felix. The First Felix Lawsuit involved identical factual and legal claims to those in this lawsuit -- namely, that the defendant debt collector was leaving scripted telephone messages for consumers that violated the FDCPA and RFDCPA. The First Felix Lawsuit was settled on an individual basis.

Even before the parties to the First Felix Lawsuit had filed their stipulation of dismissal, the defendant debt collector continued its efforts to collect the same debt from Mrs. Felix and, in doing so, continued its practice of leaving her telephone messages that clearly violated the FDCPA and RFDCPA. Accordingly, Mrs. Felix filed a second lawsuit captioned as *Felix, et al. v. Mercantile Adjustment Bureau, LLC*, W.D.N.Y. Case No. 1:11-cv-00008-WMS-JJM ("Second Felix Lawsuit").

Even after Mrs. Felix filed and served the Second Felix Lawsuit, and while that lawsuit was pending, the defendant debt collector continued leaving Mrs. Felix telephone messages (in an attempt to collect the same debt) that violated in (partially) the same violative manner as alleged in First Felix Lawsuit and Second Felix Lawsuit -- namely, 15 U.S.C. §§ 1692d(6) and

1692e(10) and Cal. Civ. Code §§ 1788.11(b) and 1788.17. Thus, Mrs. Felix was forced to file a third lawsuit against the defendant debt collector, which was captioned as *Felix, et al. v. Mercantile Adjustment Bureau, LLC*, W.D.N.Y. Case No. 1:11-cv-00296-WMS-JJM ("Third Felix Lawsuit"). Ultimately, the Second Felix Lawsuit and Third Felix Lawsuit were consolidated -- ironically, to the calendars of the same judges initially (and now) assigned to Mr. Felix's instant lawsuit -- upon motion by the Defendant and then eventually settled.

I wish I could say that Mrs. Felix's lawsuits were an isolated example of the ongoing threat of debt collectors continuing to violate the FDCPA with respect to consumers who have successfully sued the collector. Indeed I have several clients to whom this exact type of factual scenario has happened -- i.e, debt collectors leaving violative telephone messages for consumers who sue the collector and win, only to have the collector continue trying to collect the same debt and, when doing so, continue leaving violative telephone messages. By way of limited recent example this happened to two consumers in the matter of *Anderson, et al. v. Nationwide Credit, Inc.*, E.D.N.Y. Case No. 2:08-cv-01016-LDW-MLO ("Anderson I"), which resulted in a class settlement and imposition of an injunction; the consumers then had to file a second lawsuit (with other consumers) captioned as *Anderson, et al. v. Nationwide Credit, Inc.*, E.D.N.Y. Case No. 2:10-cv-03825-LDW-MLO ("Anderson II") and simultaneously moved to enforce the injunction entered in ("Anderson I"). Ultimately, Anderson I and Anderson II were consolidated and again resolved on a class basis with a superseding injunction that finally cured the defendant's violative conduct.

Thus, consumers are always at risk of additional present and future harm based upon communications from a debt collector when the underlying debts upon which FDCPA violations are based remain in full force and effect. This fact is directly applicable to the class in this matter

as the CSA does not include an agreement to liquidate and/or otherwise forgive the underlying debts which the Defendant sought to collect when it initiated the telephone contacts which serve as the basis of the FDCPA claims set forth in the Complaint. Thus, in fact, the *Hecht* ruling renders the Fed. R. Civ. P. 23(b)(2) CSA entered in the herein action reasonable.

That portion of the *Hecht* ruling which found that the monetary amount of recovery predominated over the injunctive relief is not an impediment to the CSA. As it has now been demonstrated that the elements of the risk of continued present and future harm to the class exists, this Court must now consider the magnitude of the injunctive relief which may be obtained and compare it to the monetary relief obtained. Any comparison thereto clearly demonstrates that the injunctive relief would greatly predominate over the monetary relief. There are over 400,000 class members. The monetary relief obtained for the class members is limited by the statutory damages cap set by the FDCPA. Pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii) statutory damages recoverable by a class in an FDCPA class action is limited to "……such amount as the Court may allow for all other class members, *without regard to a minimum individual recovery* (italics added), not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector. Thus, there can be no pro rata monetary payment to each class member as such payment would be *de minimis*.

The reason for the FDCPA class recovery cap is easily understood. The FDCPA's net worth mandate is meant to address the problem of penalizing smaller collection agencies too harshly and to sufficiently hold accountable larger collection agencies. Therefore, by making the extent of the class recovery directly proportional to a percentage of a debt collector's net worth, Congress intended that accountability be meted out in accord with the ability of a debt collector to absorb the penalty of class statutory damages. Thus, the class net worth provision is a

recognition by Congress that an award of statutory damages in a class action may exceed a company's ability to pay and thereby force it into bankruptcy. *Sanders v. Jackson*, 209 F.3d 998, 1002 (7th Cir. 2000). The primary purpose of a net worth provision is to protect a debt collector against having to liquidate in order to satisfy a class action judgment. *Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114, 118 (5th Cir. 1975)(stating that the identical net worth provision set forth in the Truth In Lending Act was designed to protect business from a catastrophic damages award.)

Based upon the statutory damages cap any attempt to provide pro rata monetary relief to the class members would result in *de minimis* individual payments to each class member which could not be economically distributed. The class members individually cannot obtain monetary relief pursuant to the class settlement, thus there is no individual benefit. In contrast, the agreed upon injunction provides a massive demonstrable benefit to each of the class members in that the stipulated injunction mandates that the Defendants use their best effort to cure the FDCPA violations at issue. The class members now will be able to determine the full identity of the Defendant, the fact that the Defendant is a debt collector and the purpose of the telephone calls placed by the Defendant. The class members will also know at the outset of conversations that their telephone conversations with debt collectors could be monitored and/or recorded. Each and every one of these injunctive benefits assists class members in deciding whether they wish to speak to the Defendant in regard to alleged debt which they may owe *and* if they decide to speak to the Defendant's debt collectors then their FDCPA rights are ensured.

B. <u>THE HOLDING IN *WAL-MART V. DUKES* PROVIDES FURTHER SUPPORT FOR THE PREMISE THAT THE HEREIN 23(b)(2) CLASS SETTLEMENT IS REASONABLE</u>

In addressing the second case cited by the Court the undersigned counsels assert that the Fed. R. Civ. P. 23(b)(2) settlement is reasonable in light on the holding of the United States Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011). Therein the Supreme Court stated "The key to the (b)(2) class is the "individual nature of the injunctive or declaratory remedy warranted- the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." For the underlying reasons this mandate is satisfied in regard to the CSA.

Initially, the undersigned counsels understand that the problem which the Court has is that the definition of the "settlement class", as defined in the CSA, can, admittedly, be read to include any false, deceptive and misleading statement which could have been made to any consumer during any telephone conversation. Thus, the analogy by the Court to the possibility of a false threat by the Defendant to foreclose upon one of the class member's property as set forth on pages 10 and 11 of the May 28th D&O. However, the "class claims" provision of the CSA clarify that the claims being released are limited solely the claims set forth in the Complaint. As these claims are covered by 15 U.S.C. § 1692e the undersigned counsels included this provision in the "settlement class" definition. Upon further review and with 20-20 hindsight, the "settlement class" definition could, perhaps, have been more concise. However, the other portions of the CSA make it clear that the FDPCA class claims are limited to the specific allegations in the Complaint and do not encompass any possible false, deceptive or misleading statement which could have been made to any consumer during any telephone conversation between a debt collector employed by the Defendant and a member of the class.

Notwithstanding any of the foregoing this Court need not accept or reject a proposed class definition on a "take it or leave it" basis. If a court determines that a proposed class

description is not sufficiently definite, the court may elect to take action other than denial of class certification. In its discretion, a court may grant class certification but modify the definition of the proposed class to provide the necessary precession or to correct other deficiencies. *Harris v. Gen Dev. Corp.*, 127 F.R.D. 655, 6759 (N.D. Ill. 1989)(class definition limited to exclude class members who were deterred from applying for a position); *Gomez v. Illinois State Board of Education*, 117 F.R.D. 394, 397 n.2d (N.D. Ill. 1987); *Lewis v. Tully*, 96 F.R.D. 370, 376 (N.D. Ill.).

Clarifying that the definition of the class is limited to those members who received telephone conversations which failed to set forth the required FDCPA advisements as alleged in the Complaint now satisfies the key to the (b)(2) class settlement as set forth in *Dukes*. The FDCPA violations alleged in the Complaint occurred based upon uniform polices invoked by the Defendant which were effected on a uniform basis to all of the members of the class. Thus, these policies and practices can be enjoined or declared unlawful as to all of the class members.

Evidence that counsel was aware of, and not trying to hide the *Dukes* case from this Court, but rather did not view the *Dukes* case as an impediment to class certification, is that the undersigned counsel, William F. Horn, cited to the *Dukes* case in support of a Fed. R. Civ. P. 23(b)(2) class settlement in the matter of *Cedeno v. Bureau of Collection Recovery, Inc.*, case no. SACV 10-01960 (C.D. Cal.) which was identical to the class settlement in both *Gravina* and the instant case prior to the CSA being amended. In granting certification to the class and approving the class settlement in *Cedeno* the Chief Justice of the Central District of California relied (in part) upon the holding in *Dukes*. See copy of Civil Minutes dated June 18, 2012, page 5 therein, attached as Exhibit "__" to the affirmation of William F. Horn. In *Cedeno*, it was especially important to cite to *Dukes* as both cases were Fed. R. Civ. P. 23(b)(2) settlements from the 9th

Circuit. The CSA, which completely revamped the prior CSA and thus differed from the class settlement in *Cedeno*, made it, in the opinion of counsel, unnecessary to cite *Dukes* in the CSA and consent motion..

### C. THE UNDERSIGNED COUNSELS' CONDUCT DOES NOT CONSTITUTE CONDUCT WHICH WARRANTS RULE 11 SANCTIONS

The actions of the undersigned counsel constitute, at worst, a simple error to address two cases which, in fact support certification of the CSA negotiated in this matter. There is no basis for this Court to render the undersigned counsels to be in violation of the mandates of Fed. R. Civ. P. 11 for failing to advise a court of legal authority which is adverse to the position the Plaintiffs in the above-entitled action.

The application of the duty to cite adverse legal authority assures that judges will not become victims of lawyers hiding the legal ball. *Transamerica Leasing, Inc. v. Compania Anonima Venezdana de Navegacion*, 93 F.3d 675, 676 (9th Cir. 1996). An attorney simply cannot fail to disclose binding legal precedent in the hopes that the opposing counsel and the court will overlook it. *Pierce v. Commercial Warehouse*, 142 F.R.D. 687, 690 (M.D. Fla. 1992). There was nothing done by the Plaintiffs' counsels to indicate that the Honorable Magistrate Judge Jeremiah McCarthy was the victim of lawyers hiding the legal ball. The undersigned attorneys did not fail to disclose binding legal precedent in the hopes that opposing counsel Paul Sanders and Magistrate Judge McCarthy would overlook it.

A conscious and deliberate effort by an attorney to withhold relevant case authority from the court is bad faith and constitutes the antithesis of an attorney's ethical duty as an officer of the court. *Griffith v. Hess Oil Virgin Islands Corp.*, 5 F. Supp. 2d 336, 340 (D. V.I. 1998). A deliberate attempt to blindside the court through the failure to advise a court of relevant, binding

16

and instructive authority are injuries to the administration of *stare decisis*. *Fieldturf, Inc. v. Southwest Recreational*, 212 F.R.D. 341, 344 n.3 (E.D. Ky. 2003). Clearly, there was no conscious and deliberate effort by the undersigned attorneys to withhold relevant case authority from Magistrate Judge McCarthy. Thus, there was no bad faith and the undersigned attorney's did not violate any of their ethical duties as officers of the court. There was no deliberate attempt to blindside this Court through the failure to advise this Court of relevant, binding and instructive authority. Thus, there has been no injury to the administration of *stare decisis*.

## IV. CONCLUSION

For the reasons set forth above, the undersigned counsels did not fail to advise the Court herein of controlling legal authority which was adverse to a position advanced by their clients.

DATED: New York, New York
         June 11, 2013

                                              Respectfully submitted,

                                              / s / _Robert L. Arleo_____
                                              ROBERT L. ARLEO, ESQ.
                                              Attorney for the Plaintiffs
                                              380 Lexington Avenue
                                              17th Floor
                                              New York, New York 10168
                                              Telephone: (212) 551-1115
                                              Facsimile: (518) 751-1801

                                              / s / _William F. Horn_
                                              WILLIAM F. HORN, ESQ.
                                              Law Office of William F. Horn
                                              Attorney for the Plaintiffs
                                              188-01B 71st Crescent
                                              Fresh Meadows, New York 11365
                                              Telephone: (718) 785-0543
                                              Facsimile: (866) 596 -9003