**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

ANTHONY FELIX, an individual; on behalf of
himself and all others similarly situated,

                           Plaintiffs,

               vs.

NORTHSTAR LOCATION SERVICES, LLC,
a New York Limited Liability Company; and
JOHN AND JANE DOES NUMBERS 1
THROUGH 25,

                         Defendants.

CASE NO.:  1:11-cv-00166-WMS-JJM

---------------------------------------------------------------x

DONNIE JO HARB, an individual; on behalf of
herself and all others similarly situated,

                           Plaintiffs,

               vs.

NORTHSTAR LOCATION SERVICES, LLC,
a New York Limited Liability Company; and
JOHN AND JANE DOES NUMBERS 1
THROUGH 25,

                         Defendants.

CASE NO.:  1:11-cv-00166-WMS-JJM

---------------------------------------------------------------x

**DECLARATION OF WILLIAM F. HORN IN SUPPORT OF COUNSELS' RESPONSE
TO THE COURT'S ORDER TO SHOW CAUSE DATED MAY 28, 2013**

     I, William F. Horn, of full age, hereby certify as follows:

     1.     I am an attorney at law of the State of New York and the Bar of this Court. I have

been retained to serve as counsel for Plaintiffs, Anthony Felix and Donnie Jo Harb, in this

consolidated action. As such, I am familiar with all of the facts set forth herein and state them to

be true. I submit this affidavit in support of Counsels' Response to the Court's Order to Show Cause dated May 28, 2013 [Doc. 43].

### *My Professional Background*

2.    I have been admitted to practice law in the State of New York since 1995 and have remained a member in good standing since that time. I am also admitted to practice law before the United States District Courts for the Eastern District of New York and for the Southern District of New York since 1997, and the United States District Courts for the Northern District of New York and Western District of New York since 2010. I am also admitted to practice before the bar of the Eastern District of Michigan and the Northern District of Illinois. I am also admitted to practice law before the United States Court of Appeals for the Second Circuit since 2012.

3.    My license to practice law has never been suspended or revoked by the State of New York or by any court. There are no disciplinary proceedings pending against me in any jurisdiction and no discipline has previously been imposed on me in any jurisdiction.

4.    I received my bachelor's degree from the University of Pennsylvania in 1983 and graduated from Brooklyn Law School in 1994. I also hold a Master of Science degree in Real Estate Development, which I earned from New York University in 1994.

5.    Prior to attending law school, I worked in the finance and real estate sectors. From 1989 to 1991, I worked for Baring Institutional Realty Advisors, Inc. where I performed lease analyses and prepared cash-flow projections for businesses. From 1984 to 1988, I worked for Bear Stearns and Company, Inc., as a credit analyst determining the financial creditworthiness for major financial institutions and I worked for Manufacturers Hanover Trust Company as an international banking officer.

6.      Just following and prior to my graduation from law school and admission to the New York bar, I worked as a legal consultant and contract attorney for several large multinational law firms and corporations. Furthermore, from 2004 to 2009, I practiced law at Skadden, Arps, Slate, Meagher & Flom, LLP in both its Real Estate and Litigation departments, where I performed all activities relating to large real estate transactions and trial preparation in multi-million dollar class-action lawsuits. From 2000 to 2004, I worked as a contract attorney for, among others, Citibank, Schulte, Roth & Zabel, LLP and Solomon Zauderer, Ellenhorn, Frischer & Sharp, where I advised their respective Securities, Corporate and Securities Litigation groups concerning a multitude of securities issues and trial strategy. From 1998 to 2000, I served as a corporate associate at Simpson, Thacher & Bartlett, LLP where I practiced securities law. From 1994 to 1998, I was engaged as a solo practitioner and consultant handling a variety of real estate and litigation matters as well as practicing before the U.S. Bankruptcy Court and the U.S. Immigration Court.

7.      In connection with my foregoing professional and legal work experience, I have worked on a variety of complex commercial and consumer matters. Since leaving Skadden Arps in 2009, I have been engaged as a solo practitioner and have a growing practice representing consumers on claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§1692, *et seq.* I am now, and have been, involved in actions brought solely as individual claims as well as class actions. My cases have been filed in the Eastern District of New York, Western District of New York, Northern District of New York, Southern District of New York, District of New Jersey, District of Pennsylvania, Northern District of Illinois, the Southern and Central Districts of California, the District of Kansas, the Southern District of Florida and the Eastern District of North Carolina.

8.     I have been certified to act as class counsel in the following consumer class action lawsuits:

- *Anderson, et al. v. Nationwide Credit, Inc.*,
  U.S. District Court, E.D.N.Y. Case No. 2:08-cv-01016-LDW-ETB;

- *Harrigan v. Receivables Performance Management, LLC*,
  U.S. District Court, N.D.N.Y. Case No. 8:09-cv-01351-RFT;

- *Gravina v. United Collection Bureau, Inc.*,
  U.S. District Court, E.D.N.Y. Case No. 2:09-cv-04816-LDW-AKT;

- *Gravina, et al. v. National Enterprise Systems, Inc.*,
  U.S. District Court, E.D.N.Y. Case No. 2:09-cv-02942-JFB-GRB;

- *Anderson, et al. v. Nationwide Credit, Inc.*,
  U.S. District Court, E.D.N.Y. Case No. 2:10-cv-03825-LDW-ETB;

- *Pawelczak v. Bureau of Collection Recovery, LLC*,
  U.S. District Court, N.D. Ill. Case No. 1:11-cv-01415;

- *Zirogiannis v. Professional Recovery Consultants, Inc.*,
  U.S. District Court, E.D.N.Y. Case No. 2:11-cv-00887-LDW-ETB;

- *Lagana v. Stephen Einstein & Associates, P.C. et al.*,
  U.S. District Court, S.D.N.Y. Case No. 1:10-cv-04456-KMW-GWG;

- *Corpac v. Rubin & Rothman, LLC*,
  U.S. District Court, E.D.N.Y. Case No. 2:10-cv-04165-ADS-ETB;

- *Castellano, et al. v. Global Credit & Collection Corporation*,
  U.S. District Court, E.D.N.Y. Case No. 2:10-cv-05898-JFB-WDW;

- *Cedeno v. Bureau of Collection Recovery, Inc.*,
  U.S. District Court, C.D. Cal. Case No. 8:10-cv-01960-JVS-FFM;

- *Pawelczak v. Financial Recovery Services, Inc.*,
  U.S. District Court, N.D. Ill. Case No. 1:11-cv-02214;

- *Gravina v. Weltman, Weinberg & Reis, Co., LPA.*,
  U.S. District Court, E.D.N.Y. Case No. 2:11-cv-01161-JFB;

- *Krug v. Davis Davis Attorneys, P.C., et al.*,
  U.S. District Court, D. NJ. Case No. 1:10-cv-04975-JS;

- *Zirogiannis v. Mel S. Harris & Associates, LLC, et al.*,
  U.S. District Court, E.D.N.Y.  Case No. 2:12-cv-000680-JFB-ARL; and

- *Sebrow v. Fulton, Friedman & Gullace, LLP, et al.*,
  U.S. District Court, E.D.N.Y. Case No. 1:10-cv-05897-DLI-RER.

9.      On June 28, 2013, I will have been licensed to practice law for 18 years. During the course of my entire legal career, and even before that when I was a banker, I have never been sanctioned by a court or other entity for any reason. I believe that my good track record as an attorney is owing to my own desire to adhere to the ethical guidelines of the legal profession including, but not limited to, especially the duty of candor to my colleagues and courts even if it means admitting I made a mistake which I, like anyone, am sometimes prone to do.

10.      In the interest of full disclosure to the Court I am a legally blind attorney. I have not always been blind; however, I suffer from a degenerative eye disease and I began losing my eyesight in 1989 and, although my vision remained good for a number of years, it has deteriorated significantly over the past 5 years. Although I was declared legally blind in 2012 I still retain some vision. The net effect of my disease on my work as an attorney is that it takes me longer than it does others to review and prepare documents and, sometimes, when I am in a hurry I am more likely to overlook an error than I used to be.

### Relevant Facts Related to the Hecht Decision

11.      On December 7, 2011, Plaintiffs' filed an amended motion for class certification [Doc. 35], which was still pending in August 2012. The Parties' class settlement, upon which that motion was based, provided the following pertinent terms:

   (a)      Certification of a national class under Fed. R. Civ. P. 23(b)(2);

   (b)      Class notice provided via one-time publication in *USA Today*;

   (c)      Class members were permitted to opt out of, or object to, the settlement;

(d) Defendant would pay the maximum amount of damages available under the FDCPA [See, 15 U.S.C. § 1692k(a)(2)(B)], and pay 60% of the maximum damages available under the California Rosenthal Fair Debt Collection Practices Act [See, Cal. Civ. Code §§ 1788.30; 1788.17];

(e) Defendant agreed to the imposition of a court-ordered injunction regarding the class claims being released; and

(f) All class members released their individual claims against Defendant unless they timely filed/served a written request to be excluded from the settlement.

12. On August 17, 2013, the Second Circuit Court of Appeals issued a ruling in the matter of *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012). The *Hecht* matter involved a class member challenge to a class settlement reached in the matter of *Gravina, et al. v. United Collection Bureau, Inc.*, E.D.N.Y. Case No. 2:09-cv-04816-LDW-AKT. Importantly, the terms of the class settlement in *Gravina* were underlined_identical to the class settlement which the Parties in this lawsuit (See, ¶11, *supra*) had negotiated and sought to certify [Doc. 35]. In short, *Hecht* held in pertinent part that a class settlement cannot strip a class member of their individual right to sue for damages unless the class member first receives due process notice and a one-time publication of the class notice in *USA Today* did not comport with due process.

13. At the time the *Hecht* decision was issued, I had a similar class settlement that was awaiting final approval by the court in the matter of *Corpac v. Rubin & Rothman, LLC*, E.D.N.Y. Case No. 2:10-cv-4165-ADS. In *Corpac*, the court had preliminarily approved a class settlement that was identical to the settlement in this case except that the Parties had sought certification of a New York state class under Rule 23(b)(3). At the fairness hearing in *Corpac*,

which preceded the *Hecht* decision, a last minute objector levied several objections including, *inter alia*, that a one-time publication in the *New York Post* did not comport with due process, which the court overruled at the hearing. The court in *Corpac* overruled all of the objector's objections except one based on an alleged conflict of interest between the Defendant's counsel (Robert Arleo) and me, which the parties subsequently briefed and which was under submission when the *Hecht* decision issued.

14.     Immediately upon reviewing the *Hecht* decision I contacted defendant's counsel in *Corpac*, Mr. Arleo, who ironically is my co-counsel in this lawsuit. We discussed the *Hecht* decision at length and both agreed it effectively rendered the class settlement in *Corpac* unconstitutional notwithstanding the fact that the court had previously rejected the objector's argument that the notice in *New York Post* was constitutionally insufficient. As such, Mr. Arleo and I agreed that we had an ethical obligation to inform the *Corpac* court of the *Hecht* decision and that I would be the one to write the court, which I did on August 18, 2012.

15.     The parties in *Corpac*, with the consent of the court, subsequently revised the terms of their class settlement to specifically comply with Second Circuit's guidance in *Hecht* regarding notice to the class in cases where individual class member rights are implicated. Thus, the only substantive revision to the *Corpac* class settlement (other than to exclude two other pending class actions from the release) was to provide for a different manner of providing notice to the class -- namely, by U.S. Mail used in conjunction with a toll-free telephone number and website; all other settlement terms remained the same, e.g., class member out-out and objection rights, and release of class members' individual rights if they fail to timely exclude themselves from the settlement. For this reason, the parties directly cited *Hecht* in their amended motion to certify the class in *Corpac*, which the court granted. Attached hereto as **Exhibit A** is a true and

correct copy of the parties amended motion for class certification filed in *Corpac*, which repeatedly references *Hecht,* and which also notes its application is "based on the circumstances of [the *Corpac* case]" that individual notice of the Settlement should be sent to each absent class member via U.S. Mail. [See, Exh. A at Doc. 73-1, ¶¶1.07, 1.08, 4.02.B]. I personally drafted the Parties' joint amended motion for class certification in *Corpac*.

16.     I must admit that, in mid-August 2012, I was a bit sidetracked with the *Corpac* matter and some other commitments I had pending. Thus, it was roughly August 24 or 25, 2012, that I realized we had a similar constitutionality issue in this lawsuit due to the *Hecht* decision. The Parties' amended motion for class certification [Doc. 35] had at this point been pending for over 8 months, which might have contributed in part to why it was not on my immediate radar. Accordingly, I conferred with my co-counsel, Mr. Arleo, to discuss *Hecht* and we both agreed that, as with *Corpac*, we needed to make Defendant's counsel and the Court aware of the decision and our strong belief that it invalidated the Parties' class settlement agreement and the then pending motion for class certification.

17.     On August 27, 2012, Mr. Arleo e-mailed Defendant's counsel, Paul Sanders, and advised him of the *Hecht* decision. A copy of the foregoing e-mail exchange is attached hereto as ***Exhibit B***. Following this e-mail exchange, counsel for the Parties telephonically discussed the *Hecht* decision and agreed that it rendered the Parties' settlement unconstitutional and that we need to notify the Court of the decision and the need to withdraw the pending motion for class certification [Doc. 35]. The Parties further agreed that Mr. Sanders would notify the Court of *Hecht* and the Parties' desire to withdraw their pending motion for class certification [Doc. 35]. Attached hereto as ***Exhibit C*** is a true and correct copy of an e-mail exchange dated August 28, 2012, between counsel for the Parties and the Court's law clerk confirming notification of the

*Hecht* decision and the Parties desire to "deem[] the pending motion [35] withdrawn, without prejudice to the filing of a second amended consent motion."

18.     The Parties' subsequently embarked on renewed, and protracted, efforts to revise the terms of their class settlement agreement to ensure it did not run afoul of *Hecht*. Ultimately, the Parties concluded that the most efficient and judicially economical manner of settlement would be to follow the model approved in *Foti v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 16511 (S.D.N.Y. Feb. 20, 2008), which was effectively "on all fours" with the factual and legal claims alleged in this lawsuit. In *Foti*, the court approved a class settlement which, like the amended one in this lawsuit [Doc. 42-2], provided for:

(a)     Certification of a national class under Fed. R. Civ. P. 23(b)(2);

(b)     No notice to the class;

(c)     Class members were *not* permitted to opt out of, or object to, the settlement;

(d)     Defendant paid the maximum amount of damages available under the FDCPA;

(e)     Defendant agreed to the imposition of a court-ordered injunction regarding the class claims being released;

(f)     Class members released only their class claims; **but**,

(g)     Class member retained and did not release any of their individual claims against the Defendant including the right to file their own lawsuit and seek the maximum amount of their individual damages and attorney's fees and costs.

19.     The Parties' quickly reached an impasse on how to resolve the notice issues presented by *Hecht* to either comply with its notice provisions or avoid its implication altogether and informed the Court of the possible need for a settlement conference. See, ***Exhibit B***.

20.    The Court subsequently scheduled status/settlement conferences. Ultimately, however, the Parties resolved their impasse on settlement by concluding that the most efficient and judicially economical manner of settlement would be to avoid the notice implications of *Hecht* altogether by following the exact model of settlement and certification that received final approval in *Foti v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 16511 (S.D.N.Y. Feb. 20, 2008) as that case did not release individual class member claims.

21.    Thereafter, the Parties finalized the terms of the settlement agreement and circulated it for signatures during the 2012 Thanksgiving holiday week. I personally drafted the Motion and Memorandum of Law for Plaintiff's Second Amended Consent Motion for Class Certification [Doc. 42], which was completed on Sunday, November 25, 2012, and circulated it to Defendant's counsel, Mr. Sanders, at his insistence so he could review and approve it before filing.

22.    Mr. Sanders reviewed the draft consent motion and responded on November 25, 2012, advising that he consented to our filing the motion. I filed the motion and supporting papers on Monday, December 2, 2012.  [Doc. 42].

23.    In my haste to complete the Consent Motion and Memorandum of Law over the Thanksgiving holiday weekend, I inadvertently overlooked the fact that the reference to the *Gravina v. United Collection Bureau* lawsuit was not removed prior to filing. I note, however, that Mr. Arleo and Mr. Sanders also overlooked this as well. I wish to impress upon the Court that Plaintiffs' inclusion of this reference in their moving papers was unintentional and certainly not meant to deceive or mislead the Court in any manner.

24.    With respect to the *Hecht* decision, when drafting the memorandum of law it was my view that there was no need to cite *Hecht* as: (i) the Parties' had previously notified the Court

of the decision and stated that they needed to withdraw their motion and revise their settlement to address and/or avoid the implications of that decision; and, (ii) the Parties agreed that *Hecht* had no implication on the Parties' new settlement as it did not release (like *Foti*) any class members' individual claims. By contrast, as noted above, I did include *Hecht* in the amended motion for class certification in *Corpac* because the parties' revised settlement terms still sought to release class members' individual claims if they failed to properly exclude themselves from the settlement. (See, ¶15, *supra*).

### Facts Related to the Dukes Decision

25.     With respect to the decision in *Wal–Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S.Ct. 2541, 2551 (2011), when drafting the memorandum of law it was my view that there was no need to cite *Dukes* as: (i) I did not believe the decision was directly on point with the Parties' revised class settlement and consent motion for class certification as this lawsuit only involved a release of <u>only</u> class <u>statutory</u> damages while simultaneously preserving all class members' individual claims for relief; and, (ii) to the extent the decision may have been directly on-point, I felt it was not adverse to the Parties' agreement and consent motion and simply would have been extraneous.

26.     Indeed, during the pendency of this lawsuit I was also involved as class counsel in a different class action lawsuit filed in the Central District of California captioned as *Cedeno v. Bureau of Collection Recovery, LLC*, C.D. Cal. Case. No. SACV 10-1960 JVS (FFMx). In April 2012, the Parties in *Cedeno* reached a class settlement which was identical to the settlement in *Gravina v. United Collection Bureau, Inc.* in all respects (e.g., Rule 23(b)(2) class, newspaper notice, injunction, release of class member claims if no exclusion request) except that it was a California only class instead of a national class. In *Cedeno*, I drafted the parties' joint motion for

class certification and, when doing so, I cited *Dukes* in support of the motion primarily because it was an on-point case with respect to Rule 23(b)(2) class actions, *which originated from the Ninth Circuit* where the *Cedeno* case was filed and was receiving a lot of attention there at the time. Attached hereto as **_Exhibit D_** is a true and correct copy of the parties' foregoing motion and memorandum of law filed in the *Cedeno* matter.

      27.    District Judge James V. Selna agreed with my analysis of *Dukes* in the *Cedeno* matter and cited the decision favorably in his decisions granting preliminary and final approval to the parties' class settlement agreement. Attached hereto respectively as **_Exhibits E and F_** are District Judge James V. Selna's foregoing decisions granting preliminary and final approval to the parties' class settlement agreement in *Cedeno* in which he cites the *Dukes* decision.

      28.    In short, my decision not to include a reference or citation to *Dukes* in Plaintiffs' consent motion [Doc. 42], was in no way meant to deceive or mislead the Court in this lawsuit and I respectfully and completely understand now, with the benefit of hindsight, that the Court here may not agree with Judge Selna's analysis of *Dukes* and its belief that the decision is on-point authority that should have been cited and distinguished in Plaintiffs' moving papers.

### *Other Relevant Facts for Consideration*

      29.    With respect to the Second Circuit's decision in *Hecht* regarding the propriety of injunctions in FDCPA class actions, I wish to point out that those same factors are applicable to the facts of this particular case. Indeed, the Court here need not look any further than its own doorstep and the *Felix* Plaintiff herein to see how real the threat is for a continuing harm to the class and why an injunction is the best tool to stop debt collectors from engaging in such violative conduct.

30.     The matter of *Krug, et al. v. Mercantile Adjustment Bureau, LLC, et al.*, W.D.N.Y. Case No. 1:10-cv-00689-WMS-LGF ("First Felix Lawsuit"), involved Debbie Felix as a Plaintiff. Debbie Felix is the wife of the named Plaintiff in this lawsuit, Anthony Felix. The First Felix Lawsuit involved identical factual and legal claims to those in this lawsuit -- namely, that the defendant debt collector was leaving scripted telephone messages for consumers that violated the FDCPA and RFDCPA. The First Felix Lawsuit was settled on an individual basis.

31.     Even before the parties to the First Felix Lawsuit had filed their stipulation of dismissal, the defendant debt collector continued its efforts to collect the same debt from Mrs. Felix and, in doing so, continued its practice of leaving her telephone messages that clearly violated the FDCPA and RFDCPA. Accordingly, Mrs. Felix filed a second lawsuit captioned as *Felix, et al. v. Mercantile Adjustment Bureau, LLC*, W.D.N.Y. Case No. 1:11-cv-00008-WMS-JJM ("Second Felix Lawsuit").

32.     Even after Mrs. Felix filed and served the Second Felix Lawsuit, and while that lawsuit was pending, the defendant debt collector continued leaving Mrs. Felix telephone messages (<u>in an attempt to collect the same debt</u>) that violated in (partially) the same violative manner as alleged in First Felix Lawsuit and Second Felix Lawsuit -- namely, 15 U.S.C. §§ 1692d(6) and 1692e(10) and Cal. Civ. Code §§ 1788.11(b) and 1788.17. Thus, Mrs. Felix was forced to file a third lawsuit against the defendant debt collector, which was captioned as *Felix, et al. v. Mercantile Adjustment Bureau, LLC*, W.D.N.Y. Case No. 1:11-cv-00296-WMS-JJM ("Third Felix Lawsuit"). Ultimately, the Second Felix Lawsuit and Third Felix Lawsuit were consolidated -- ironically, to the calendars of the same judges initially (and now) assigned to Mr. Felix's instant lawsuit -- upon motion by the Defendant and then eventually settled.

33.     I wish I could say that Mrs. Felix's lawsuits were an isolated example of the ongoing threat of debt collectors continuing to violate the FDCPA with respect to consumers who have successfully sued the collector. Indeed I have several clients to whom this exact type of factual scenario has happened -- i.e, debt collectors leaving violative telephone messages for consumers who sue the collector and win, only to have the collector continue trying to collect the same debt and, when doing so, continue leaving violative telephone messages. By way of limited recent example this happened to two consumers in the matter of *Anderson, et al. v. Nationwide Credit, Inc.*, E.D.N.Y. Case No. 2:08-cv-01016-LDW-MLO ("Anderson I"), which resulted in a class settlement and imposition of an injunction; the consumers then had to file a second lawsuit (with other consumers) captioned as *Anderson, et al. v. Nationwide Credit, Inc.*, E.D.N.Y. Case No. 2:10-cv-03825-LDW-MLO ("Anderson II") and simultaneously moved to enforce the injunction entered in ("Anderson I"). Ultimately, Anderson I and Anderson II were consolidated and again resolved on a class basis with a superseding injunction that finally cured the defendant's violative conduct.

34.     Finally, I would like to let the Court know that I contacted Defendant's counsel Paul Sanders to inquire about his willingness to submit an affidavit in connection with the Court's Order to Show Cause, unfortunately Mr. Sanders stated that he is unable to do so as he is flying overseas out of Toronto tomorrow and will be gone until September 2013. Mr. Sanders did state in his e-mail to me that I could inform the Court of the following: (i) he reviewed Plaintiffs' consent motion (as noted above) to confirm there was nothing objectionable, but not to confirm appropriate case citations; (ii) as a factual matter, he did not specifically notice the citation to *Gravina* and he agrees it was mistakenly included; (iii) Mr. Arleo and I have always acted ethically in our cases with him and that he believes we did not intentionally seek to deceive

the Court here; and (iv) it is his understanding that *Hecht* did not apply to the Parties' second settlement since individual claims were being preserved.

35.     In light of the Parties' above-referenced communication with the Court regarding the *Hecht* decision prior to filing the Amended Consent Motion for Class Certification [Doc. 42], there was some confusion between counsel as to whether they should address those communications in this response. Consequently, I wrote to the Court on May 29, 2013, in which I advised the Court of our foregoing concern to which the Court replied via e-mail the same day stating, in relevant part, that:

> "[the Court did] not suggest that <u>Hecht</u> was never mentioned at all - [the Court's] concern is that it was not mentioned in the Consent Motion [42], nor was any attempt made to address its holding which - in [the Court's] view at least - casts <u>Gravina</u> in a very different light. Your response to the Order to Show Cause should address how your Rule 23(b)(2) arguments are reasonable in light of <u>Hecht</u> and <u>Dukes</u>."

Attached hereto as ***<u>Exhibit G</u>*** is a true and correct copy of my foregoing letter to the Court dated May 29, 2013, and the Court's e-mail response the same day.

36.     In closing, I respectfully hope my herein declaration, Mr. Arleo's declaration, and our joint memorandum of law submitted in response to the Court's May 28th Order to Show Cause have directly and adequately addressed the Court's concerns and the topics set forth in the Court's May 29th e-mail providing clarification. I further want to impress upon the Court that I never intended to deceive or mislead the Court in any way and I respectfully apologize to the Court for the confusion I may have inadvertently caused the Court in concluding that was my intent by my failure to cite the *Hecht* and *Dukes* decisions in the Plaintiff's consent motion [Doc. 42].

**37.**     I further wish to inform the Court that its Order to Show Cause is already causing me professional grief in the form of the Objector's counsel in *Corpac* who, within three hours of

this Court's order, notified the Court in *Corpac* of the decision and is now attempting to use it as a means to have me declared incompetent to serve as class counsel. Attached hereto as ***Exhibit G*** is a true and correct copy of the foregoing letter filed by the Objector's counsel in the *Corpac* matter.

*In accordance with 28 U.S.C. §1746, I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 11th day of June 2013, at Fresh Meadows, New York.*

*s/ William F. Horn*
William F. Horn, Esq. (WH-1070)
LAW OFFICE OF WILLIAM F. HORN
188-01B 71st Crescent
Fresh Meadows, NY 11365
Telephone: (718) 785-0543
Facsimile:  (866) 596-9003
E-Mail: bill@wfhlegal.com

# EXHIBIT "A"

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------x

JOHN T. CORPAC, an individual; on behalf of :     CASE NO.: 2:10-cv-04165-ADS-ETB
himself and all others similarly situated,    :

               Plaintiffs,    :

vs.    :     **NOTICE OF JOINT MOTION AND**
                       :     **MOTION FOR PRELIMINARY**
RUBIN & ROTHMAN, LLC., a New York    :     **APPROVAL OF CLASS**
Limited Liability Company; and JOHN AND    :     **SETTLEMENT AGREEMENT**
JANE DOES NUMBERS 1 THROUGH 25,    :

               Defendants.    :

---------------------------------------------------x

       **PLEASE TAKE NOTICE THAT** upon this Amended Notice of Motion, JOHN T.

CORPAC, individually, and all others similarly situated, and Defendant, RUBIN & ROTHMAN,

LLC, by and through their undersigned counsel, will move this Honorable Court, at a date and

time to be determined by the Court, at the United States Court House, 100 Federal Plaza,

Courtroom 1020, Central Islip, New York 11722, for an Order certifying this case to proceed as

a class action. Specifically, the Parties will move this Court pursuant to Fed. R. Civ. P. 23, for an

Order certifying this case to proceed as a class action.

       Respectfully submitted this 5th Day of April 2013.

**Attorneys for Defendant:**               **Attorneys for Plaintiff:**
WILSON ELSER MOSKOWITZ EDELMAN       LAW OFFICE OF WILLIAM F. HORN
& DICKER LLP

*s/ Thomas A. Leghorn*                           *s/ William F. Horn*
Thomas A. Leghorn, Esq.                    William F. Horn, Esq.
150 East 42nd Street                           188-01B 71st Crescent
New York, NY 10017                       Fresh Meadows, NY 11365
Telephone: (212) 915-5234              Telephone: (718) 785-0543
Facsimile: (212) 490.3038               Facsimile: (866) 596-9003
E-Mail: Thomas.leghorn@wilsonelser.com    E-Mail: bill@wfhlegal.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

——————————————————————x
                           :

JOHN T. CORPAC, an individual; on behalf of  :
himself and all others similarly situated,      :

                           :

              Plaintiffs,    :

                           :

         vs.            :

                           :

RUBIN & ROTHMAN, LLC, a New York    :
Limited Liability Company; and JOHN AND  :
JANE DOES NUMBERS 1 THROUGH 25,    :

                           :

             Defendants.  :
——————————————————————x

CASE NO.:  2:10-cv-04165-ADS-ETB

**MEMORANDUM OF LAW IN SUPPORT
OF JOINT AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AGREEMENT**

Plaintiff, JOHN T. CORPAC, on behalf of himself and all others similarly situated, and

Defendant, RUBIN & ROTHMAN, LLC, hereby request pursuant to Fed. R. Civ. P. 23(b)(3)

that the Court enter an order: (1) certifying the Settlement Class; (2) preliminarily approving the

attached proposed Stipulation of Settlement; (3) directing notice to the class; and (4) setting dates

for objections and a Final Fairness Hearing.[1] In support of their amended motion, the Parties

respectfully show the following:

### A. MOTION TO CERTIFY

### 1. NATURE OF THE CASE

1.01.   Plaintiff filed this lawsuit on September 8, 2010. The Plaintiff is a consumer who

allegedly became delinquent on a consumer debt. Plaintiff contends that in attempting to collect

consumer debts from him, and the proposed settlement class he seeks to represent, Defendant

sent them written collection communications that violated the federal Fair Debt Collection

---

[1] As used in this Joint Motion, all capitalized terms shall have the meanings and definitions set
forth in Section 1 of the Amended Stipulation of Settlement, which is attached hereto as ***Exhibit
A.***

Practices Act, 15 U.S.C. §§1692, *et seq.* ("FDCPA"). On October 15, 2010, Plaintiff filed an amended complaint, which added additional written communications and FDCPA claims.

1.02.  In sum, Plaintiff alleges that Defendant's written collection communications, in the forms attached to the First Amended Complaint as ***Exhibits A through F***, falsely represent or imply to the "least sophisticated" consumer, the character, amount, or legal status of debts and whether there was meaningful attorney review or involvement to send the communication(s) in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(3), and 1692e(10).

1.03.  In its Answer to Plaintiff's Complaint [Doc. 14], Defendant denies the Plaintiff's allegations and asserts, *inter alia*, a number of affirmative defenses. Indeed, Defendant denies Plaintiff's allegations and asserts, *inter alia*, that any alleged violation, if it was in fact a violation, was unintentional and resulted from a *bona fide* error, notwithstanding the maintenance of procedures reasonably adapted to avoid the violation. Defendant also has denied, and continues to deny, *inter alia*, any and all allegations that members of the proposed settlement class have suffered any damage whatsoever, have been harmed in any way, or are entitled to any relief as a result of any conduct on the part of Defendant as alleged by the Plaintiff.

1.04.  Over the course of several months, counsel for Plaintiff and Defendant have respectively reviewed and analyzed the complex legal and factual issues present in this Action, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement from Defendant, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more appeals of procedural and substantive issues.

1.05.  Based upon these reviews and analyses, the Plaintiff and Defendant embarked upon and concluded comprehensive settlement discussions, which resulted in execution of a Stipulation of Settlement to resolve the Action on a class basis. [Doc. 15]. On January 16, 2012,

the Parties filed a Joint Motion to Certify the Class and Grant Preliminary Approval of Class Action Settlement [Doc. 22], which the Court subsequently granted on April 5, 2012 [Doc. 23]. Pursuant to the Court's Preliminary Approval Order, the Parties provided notice to the class in a one-time publication in the *New York Post*, which is a newspaper with statewide distribution. [Doc. 24]. One business day prior to the Court's Fairness Hearing, an Objection to the Parties' Stipulation of Settlement was filed by Objector, Patrick Sejour, who argued: (i) Class Counsel had conflicts of interest; (ii) the publication of class notice was insufficient; (iii) settlement was unfair because there was no individual notice to class members and no monetary "or other relief" given to each class member; (iv) the release was "extremely ambiguous;" (v) Defendant's net worth and class size are "ambiguous;" and (vi) the settlement deserves "especially close scrutiny". [Doc. 27].

1.06.   On June 25, 2012, the Court held a fairness hearing at which time the Parties and the Objector all appeared through counsel. At the hearing, the Court denied all of the Objector's objections on the record, but reserved its ruling concerning (i) the conflict issue and, (ii) the distribution of the money with respect to Defendant's net worth. The Court permitted the Parties to brief the foregoing two issues and, subsequently, ordered Class Counsel to provide the Court with all of the information and documents reviewed to determine the Defendant's net worth for the purposes of the settlement by August 3, 2012 [Doc. 36]. The Parties briefed the remaining two objections and, as ordered, Plaintiff submitted the Defendant's confidential net worth documentation to the Court *in camera*.

1.07.   On August 17, 2012, the Second Circuit Court of Appeals issued a decision in the matter of *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d 2012). On August 18, 2012, Class Counsel wrote a letter advising the Court of the *Hecht* decision and further advised that the Parties' jointly believed *Hecht* raised due process concerns with respect to the manner/frequency

of notice provided to the class in this case such that the Court may wish to re-examine its preliminary certification ruling. [Doc. 45].

1.08.  On January 24, 2013, the Court issued its ruling concerning the Objector's remaining two objections on which it reserved its ruling at the Fairness Hearing. Corpac v. Rubin & Rothman, LLC, 2013 U.S. Dist. LEXIS 9803 (E.D.N.Y. Jan. 24, 2013). In its decision, the Court ruled, *inter alia*, that in light of the Second Circuit's decision in *Hecht*, it withdrew its previous denial of the objector's application to vacate the notice to potential class members finding that the single notice in the single *New York Post* publication violated due process requirements and directed Plaintiff to determine a proper and constitutionally valid method of notice, by a renewed application to the Court. *Id.* at *12. The Court further ruled that no conflict of interest existed at the time the Parties' entered into the Stipulation of Settlement; however, in light of the intervening change in the posture of this case attributable to *Hecht*, that the potential for a conflict of interest might arise and the chance of a revised class action settlement or even a trial, the Court ordered that Defendant's counsel, Robert L. Arleo, should no longer be in this reactivated case. *Id.* at 13-22.

1.09.  On February 1, 2013, Defendant substituted new counsel [Docs. 57 & 58] and on February 18, Defendant's counsel, Robert L. Arleo, withdrew from the case [Doc. 62]. Thereafter, on March 22, 2013, the Parties finalized the terms of their Amended Stipulation of Settlement ("Amended Stipulation") to resolve the case on a class basis and filed the same with the Court, a copy of which is attached hereto as ***Exhibit A***. [Doc. 70]. Pursuant to the Parties' Amended Stipulation, each Settlement Class Member will receive individual notice of the class settlement via U.S. Mail that provides for forwarding addresses and each will have access to a toll-free telephone number and website where they can learn more information about the settlement, ask questions, and access court documents including the Amended Stipulation.

1.10.   As a compromise of their claims, the Settling Parties have agreed to seek class certification for those claims pursuant to the FDCPA as described, *supra* ("Settlement Class"). Plaintiff previously provided the Court with documentation establishing that Defendant's net worth was $940,000.00. Since that time, Plaintiff has sought, and Defendant has provided, updated financial information to confirm its net worth for 2012. Defendant's updated financial information shows that its undistributed earnings as of December 31, 2012, was approximately $940,000.00, which is consistent with the Parties' prior Stipulation of Settlement [Doc. 15 at ¶2.3(b)]. Thus, Defendant has agreed to pay $9,400.00 in class damages, which is the maximum amount of class damages available under the FDCPA (i.e., 1% of Defendant's net worth). [***Exhibit A***, ¶ F].

1.11.   Subject to the terms of the Amended Stipulation, Defendant has agreed to provide the following relief to Plaintiff and the Settlement Class:

(a)   ***Settlement Class Representative Plaintiff's Individual Relief***. Settlement Class Representative Plaintiff shall receive $1,000.00, to be paid from the Settlement Fund, as statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i). Settlement Class Representative Plaintiff shall also receive $2,500.00, to be paid from the Settlement Fund, in recognition for his services to the Settlement Class Members.

(b)   ***Class Relief***. $9,400.00, which represents the maximum class recovery available pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii) (i.e. 1% of Defendant's net worth), shall be paid from the Settlement Fund as a *cy pres* payment to one or more charitable organizations without any religious or political affiliations and whose primary focus is to assist consumers with respect to consumer debts in the State of New York. Subject to the Court's approval, the Settling Parties propose that Legal Aid Society of New York be the recipient of the *cy pres* payment.

(c) **Counsel Fees**. Settlement Class Counsel shall be entitled to receive up to $125,000.00 from the Settlement Fund, which is intended to cover all fees and expenses arising out of the Action. Class counsel will accept the amount of fees and expenses awarded by the Court in full satisfaction of reasonable attorney's fees and costs and will not request additional fees from Defendant, Settlement Class Representative Plaintiff, or any Settlement Class Member. Defendant will not oppose or cause to be opposed an attorney fee application, so long as such application does not exceed $125,000.00.

1.12.   In the event the class settlement is not approved or as may otherwise be provided in the Amended Stipulation, the Parties stipulate that the certification order will be set aside and neither this motion nor the Amended Stipulation will in any way prejudice Defendant's right to contest class certification on any legal or equitable grounds.

## 2. ELEMENTS FOR CLASS CERTIFICATION

2.01.   Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions. One or more members of a class may sue or be sued as representative on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the class representative will fairly and adequately protect the interests of the class. To obtain class certification, Plaintiff must demonstrate that the proposed Settlement Class satisfies the general class certification requirements of: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy of representation under Rule 23(a); and (5) some section pursuant to Fed. R. Civ. P. 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285,

290 (2d Cir. 1992); *Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. 451, 454 (E.D.N.Y. 1996).

2.02.    Accordingly, in support of their contention that proper and sufficient grounds for class certification exist under Fed. R. Civ. P. 23, the Parties show the following:

### *Numerosity*

2.03.    Based upon information received from Defendant, there are approximately 255,000 members of the Settlement Class. This is more than sufficient for numerosity. *Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972) (70 class members sufficient); see also, *Mathis v. Bess*, 138 F.R.D. 390, 393 (S.D.N.Y. 1991) (joinder impracticable based solely on fact that class had 120 members).

### *Commonality*

2.04.    A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2). *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166-167 (2d Cir. 1987) (common defenses applicable to whole class satisfied commonality requirement); see also, *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Plaintiff contends that there are common questions of law or fact affecting the Settlement Class, and that these questions include but are not limited to:

(a)    whether the Defendant's written communications falsely represent or imply the level of attorney review or involvement in violation of 15 U.S.C. §§ 1692e(2)(A), 1692e(3), 1692e(10);

(b)    whether the Defendant has a bona fide error defense against liability under 15 U.S.C. § 1692k(c)

(c)    whether Settlement Class Representative Plaintiff and the Settlement Class Members are entitled to recover statutory damages and, if so, in what amount; and

(d)    whether Settlement Class Representative Plaintiff and the Settlement Class Members are entitled to recover attorney's fees and costs and, if so, in what amount.

Under the definition of the Settlement Class as agreed by the Settling Parties, and set forth in *Exhibit A*, commonality is established by the Defendant's business practice of sending the same computer-generated written collection communications to the Settlement Class Representative Plaintiff and the Settlement Class Members.

### *Typicality*

2.05.    A class representative's claim is typical "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. at 456 citing *Robidoux v. Celani*, 987 F.2d 931, 936-937 (2d Cir. 1993) (internal citations omitted). When the same "unlawful conduct was directed at both the named plaintiff and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims. *Id.* (internal citations omitted).

2.06.    Plaintiff contends that his claims are typical of the claims of the rest of the Settlement Class. Specifically, Plaintiff alleges that the Defendant sent him and Settlement Class Members at least written communication that falsely represents the level of meaningful attorney review and involvement in violation of 15 U.S.C. §§ 1692e(2)(A), 1692e(3), and 1692e(10).

### *Adequacy of Representation*

2.07.    In order for Plaintiff to be considered a fair and adequate representatives of the Settlement Class, three requirements must be met: (1) counsel must be qualified, experienced and generally able to conduct the proposed litigation; (2) the class representative must have sufficient interest in the outcome to ensure vigorous advocacy; and (3) the class representative must not have antagonistic or conflicting interests with other members of the proposed class. *Amchem Prods.*, *supra*, 521 U.S. at 625. "The adequacy inquiry serves to uncover conflicts of

interest between named class representatives and the class they seek to represent." *Id.* Plaintiff asserts he they will fairly and adequately represent the interests of the class. Through his attorney of record, Plaintiff has been willing to pay the costs of notice and litigation. Plaintiff further states that he has no interests adverse to other members of the Settlement Class.

2.08.    Plaintiff has hired the undersigned attorney to represent him in this matter. As demonstrated by the Declaration of William F. Horn, which is attached hereto as ***Exhibit B***, Plaintiff's attorney has experience in the handling of both consumer protection class action and other types of complex litigation.

### 3. OTHER CONSIDERATIONS

3.01.    Pursuant to Fed. R. Civ. P. 23 an action may be maintained as a class action if the four elements described above are satisfied, and in addition, certain other conditions exist as enumerated under Fed. R. Civ. P. 23(b).  These certain other conditions are:

(a.)    The prosecution of separate actions by or against individual members of the class would create a risk of:

   (i)    inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

   (ii)    adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

b.)    The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

c.)    Where the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

d.)    The Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual

> members, and that a class action is superior to other available methods for
> the fair and efficient adjudication of the controversy.

It is the Parties' position that the third condition, imposed by Rule 23(b)(3) is met. Certification is appropriate under Fed. R. Civ. P. 23(b)(3) where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### *Common Questions of Law and Fact Predominate*

Where there is an essential factual link between all class members and the defendants, for which the law provides a remedy, questions of law or fact common to the class exist. *Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. at 458. "[C]ases regarding the legality of standardized documents and practices often result in the predomination of common questions of law or fact and are, therefore, generally appropriate for resolution by class action." *Id.* citing *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164 (7th Cir. 1974).

Here Plaintiff claims that it is Defendant's use of standardized debt collection letters and lawsuits and its standardized collection practices that have given rise to Plaintiff's FDCPA claims. The questions of law and fact involved in this action relate to the use of the debt collection letters mailed, and collection lawsuits served, by Defendant to Plaintiff and Settlement Class Members. Accordingly, these common questions of law and fact surrounding the contents, policies, and procedures for mailing of Defendant's collection communications predominate over individual issues and, therefore, this prong of Fed. R. Civ. P. 23(b)(3) is satisfied.

### *A Class Action is the Superior Method to Resolve this Controversy*

In addition to the predomination of common questions of law or fact, the class action must be the superior method to resolve the controversy to satisfy fully the requirements of Rule

23(b)(3). Class actions are the superior method for resolving controversies when the main objectives of Rule 23 are served; namely, the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications. *Labbate-D'Alauro v. GC Servs. Ltd. Pshp.*, 168 F.R.D. at 458 citing *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979).

Here, the Settlement Class consists of approximately 255,000 class members who are not likely to bring suit on their own. The individual recovery is estimated by the Parties to be approximately $0.04 per class member, which is a sum not likely to encourage many individual consumers to bring suit. *Id.* Accordingly, the Parties submit that a class action is the superior method for resolving this controversy and, therefore, the second prong of Fed. R. Civ. P. 23(b)(3) has been satisfied.

3.02.   Pursuant to the Parties' Amended Stipulation, Defendant does not dispute that the Settlement Class should be certified for settlement purposes. "[F]ederal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).

### 4. CLASS TYPE

4.01.   As discussed *supra*, Plaintiffs ask the Court to certify the Settlement Class pursuant to Fed R. Civ. P. 23(b)(3), which would permit recovery of monetary relief for the class.

4.02.   Fed. R. Civ. P. 23(b)(3) requires that the class receive notice, an opportunity to opt-out, or the right to subsequently file an individual lawsuit for money damages.

#### *Relief for the Settlement Class*

##### *A. Statutory Damages*

The Defendant has agreed to pay maximum statutory damages to the Settlement Class. Specifically, the Defendant has agreed to pay 1% of its net worth (i.e. $9,400.00), which is the

*maximum* statutory class damages permitted under the FDCPA. [See, 15 U.S.C. § 1692k(a)(2)(B)]. Thus, the class damages of $9,400.00 are *de minimis* in light of the fact that each member of the more than 300,000 Settlement Class stands to receive *approximately 4 cents* per class member.

## B. *Notice to Class of Opt-Out & Other Rights*

Settlement Class Members have the ability to opt out of, or object to, the Settlement. Pursuant to Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure, for any class certified under Rule 23(b)(3), the Court must direct to class members the best notice that is "practicable under the circumstances," including individual notice to all members who can be identified through reasonable effort. Here, and as discussed below, the Settlement Class Representative Plaintiff and Defendant have agreed to provide combination of notice to each individual Settlement Class Member via U.S. Mail, a website, and toll-free telephone number.

The Settling Parties are cognizant of the Supreme Court holding in the matter of *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) wherein the Court held that individual notice must be sent to all class members who can be identified through "reasonable effort". Additionally, in light of the Second Circuit's guidance in *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012), the Settling Parties agree, and based on the circumstances of this Action, the Parties agree that individual notice of the Settlement should be sent to each absent class member via U.S. Mail. Furthermore, based on the circumstances of this case, the Settling Parties agree that individual notice sent via U.S. Mail is the best practicable notice to ensure absent class members receive their due process right to notice and afford them an opportunity to opt out of, or object to, the class settlement. In the event more than 25 Settlement Class Members opt-out, Defendant has the right to terminate and cancel this Settlement and the Amended Stipulation will no longer be binding and will cease to be effective. Defendant will have ten (10) business after

the conclusion of the opt-out period to advise the Court and Settlement Class Counsel if this

option is to be exercised.

In view of the fact that there is a significantly large class size and that the Defendant has

a low net worth, the Amended Stipulation sets forth the following plan for providing Notice to

the Settlement Class Members, which comports with the Second Circuit's decision in *Hecht v.*

*United Collection Bureau, Inc.*:

> (1)     The Settlement Administrator shall send a postcard notice to each
> Settlement Class Member's last known mailing address, as available,
> setting forth a summary of the proposed settlement and referring the
> Settlement Class Member to a toll-free number and to a website to obtain
> the full notice of Settlement and all other related court documents. The
> Settlement Administrator shall update the postal mailing addresses as
> appropriate using the National Change of Address database maintained by
> the United States Postal Service.
>
> (2)     The Settlement Administrator shall, within ten (10) days after the Court
> grants Preliminary Approval, establish and post a settlement website.
>
> (3)     The Settlement Administrator shall also establish and maintain during the
> class notice period a toll-free telephone number which will access a pre-
> recorded message regarding this settlement (including questions and
> answers) and will offer Settlement Class Members the option of leaving
> their contact information if they wish to speak with a live person regarding
> this settlement and/or receive a mailed copy of the full notice of
> Settlement.

A copy of the Settling Parties' proposed postcard notice that is to be mailed to each

Settlement Class Member is attached hereto as ***Exhibit C***. A copy of the Settling Parties' full

notice that will be available to each Settlement Class Member via the website and toll-free

telephone number is attached hereto as ***Exhibit D***.

What is "the best notice practicable under the circumstances" and what constitutes

"reasonable effort" is a determination of fact to be made in the individual litigation. *In re*

*Franklin National Bank Securities Litigation*, 599 F.2d 1109 (2d Cir. 1978); *see also*, *In re*

*Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1098 n.11 (5th Cir. 1977) (and cases cited therein); *In re Agent Orange Prod. Liab. Litig.*, 100 F.R.D. 718 (E.D.N.Y. 1983).

Here, notice to Settlement Class Members by postcard via U.S. Mail is the best notice practicable under the circumstances for the following reasons:

(1) There are approximately 255,000 Settlement Class Members [See, ***Exhibit A***]; and

(2) The potential recovery is but *4 cents* per class member, while the cost to provide full individual notice to each possible class member via U.S. Mail would be prohibitively expensive as it would likely cost $450,000.00 and, as a result, the only benefit would be that the U.S Postal Service and third-party administrator garner income while each class member would still receive not more than 4 cents.

Importantly, Courts routinely certify class settlement agreements in consumer cases pursuant to Fed. R. Civ. P. 23(b)(3) where such settlements provide for postcard notice to the class members via U.S. Mail when coupled with a website and toll-free telephone number for class members to obtain additional information. See e.g., *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92 (D. NJ. 2012); see also, *Malta v. Fed. Home Loan Mortg. Corp.*, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 4, 2013); *LaCour v. Whitney Bank*, 2012 U.S. Dist. LEXIS 151923 (M.D. Fla. Oct. 23, 2012); Bower v. MetLife, Inc., 2012 U.S. Dist. LEXIS 149117 (S.D. Oh. Oct. 17, 2012); *Kagan v. Wachovia Sec., LLC*, 2012 U.S. Dist. LEXIS 107536 (N.D. Cal. Aug. 1, 2012) (Court was "puzzled" why the parties do not simply send potential class members a brief, bare-bones letter or postcard directing them to the website instead of mailing an 8 page notice, as the mailing's main objective should be to entice potential class members to view the website); *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 105384 (S.D. Fla. July 26, 2012); *In re Philips/Magnavox TV Litig.*, 2012 U.S. Dist. LEXIS 67287 (D. N.J. May 14, 2012).

Furthermore, due process is satisfied even if all potential class members ultimately do not receive actual notice so long as class counsel acted reasonably in selecting means likely to inform the person affected. *Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir. 1988).

There is an overriding public interest in settling and quieting litigation, particularly in class actions. *In re Prudential Sec,, Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995); see also *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-117 (2d Cir. 2005) (finding a strong public policy in favor or settlement, particularly in the class action context and that the compromise of complex litigation is encouraged by the courts and favored by public policy.)

Based upon the overriding public interest in settling and quieting litigation such as the herein class action, and the strong public policy of favoring settlements such as the herein class settlement which compromises this complex FDCPA litigation this Court should approve the Parties foregoing plan of providing notice to the Settlement Class.

## 5. JOINT MOTION

5.01.    In light of, and subject to the approval of the Amended Stipulation attached hereto as ***Exhibit A***, the Parties move that the Court certify Plaintiff as the Settlement Class Representative Plaintiff for the Settlement Class and that Plaintiff's attorney, William F. Horn, be certified as Settlement Class Counsel. In the event the proposed Settlement is not approved, however, the Settling Parties agree that the Court will decertify the Settlement Class and take up the issue of certification as a contested matter.

5.02.    The Settling Parties have stipulated that any failure of the Court to approve the Amended Stipulation shall not operate as a waiver of the claims or defenses of any of the Settlement Parties on the issue of certification at any such contested hearing.

5.03.    Settling Parties have further stipulated that certification of the Settlement Class is conditioned upon:

> (a)    the accuracy of the representations and warranties contained in the Amended Stipulation;

(b)    the performance by the Settling Parties of their respective obligations under the Amended Stipulation in all material respects prior to the date the Amended Stipulation was signed by the Settling Parties;

(c)    the entry of a final order releasing, on behalf of Plaintiff and the Settlement Class, all of the Released Claims as defined in the Amended Stipulation;

(d)    the receipt by the Settling Parties of all documents reasonably required to implement the Amended Stipulation; and

(e)    no other class actions being certified against the Defendant asserting causes of action substantially identical to those asserted by Plaintiff in the present case.

5.04.   In the event that any one of the foregoing conditions is not met as required by the Amended Stipulation, the Settling Parties have agreed that upon motion to the Court, the Court will then decertify the class and take up the issue of certification as a contested matter.

## B. MOTION TO APPROVE SETTLEMENT

## 6. NATURE OF SETTLEMENT

6.01.   The Settlement Parties have agreed in principle to a settlement of this Action on a class-wide basis. The essential terms of the Settlement are set out in the Amended Stipulation attached hereto as ***Exhibit A***. The Amended Stipulation provides that the Court will certify Plaintiff as the Class Representative Plaintiff for the Settlement Class, and certify Plaintiff's attorney, William F. Horn, as Settlement Class Counsel. As discussed above, the Amended Stipulation provides substantial benefits to the Settlement Class, and is fair, reasonable, and adequate in light of the relevant facts, applicable law, and potential value of the Settlement.

6.02.    Subject to the terms of the Amended Stipulation, Defendant agrees to provide the following relief to Plaintiff and the Settlement Class:

***Settlement Fund.*** Defendant shall pay the total sum $137,900.00 as provided herein:

(a)    ***Settlement Class Representative Plaintiff's Individual Relief***. Settlement Class Representative Plaintiff shall receive $1,000.00, to be paid from the Settlement Fund, as statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i). Settlement Class Representative Plaintiff shall also receive $2,500.00, to be paid from the Settlement Fund, in recognition for his services to the Settlement Class Members.

(b)    ***Class Relief***. $9,400.00, which represents the maximum class recovery available pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii) (i.e. 1% of Defendant's net worth), shall be paid from the Settlement Fund as a *cy pres* payment to one or more charitable organizations without any religious or political affiliations and whose primary focus is to assist consumers with respect to consumer debts in the State of New York. Subject to the Court's approval, the Settling Parties propose that the Legal Aid Society of New York will be the recipient of the *cy pres* payment.

(c)    ***Counsel Fees***. Settlement Class Counsel shall be entitled to receive up to $125,000.00 from the Settlement Fund, which is intended to cover all fees and expenses arising out of the Action. Class counsel will accept the amount of fees and expenses awarded by the Court in full satisfaction of reasonable attorney's fees and costs and will not request additional fees from Defendant, Settlement Class Representative Plaintiff, or any Settlement Class Member. Defendant will not oppose or cause to be opposed an attorney fee application, so long as such application does not exceed $125,000.00.

The Amended Stipulation was reached through extensive and protracted arms-length negotiations between the Settlement Parties and that Settlement Class Counsel is able and experienced attorney who is well-qualified to evaluate the proposed Amended Stipulation on behalf of the Settlement Class Members. Plaintiff asserts, and Defendant does not dispute for settlement purposes only, that the Settlement Class meets the requirements for class certification under Fed. R. Civ. P. 23(b)(3) as discussed, *supra*.

## 7. FINAL ORDER

7.01.    At the Final Fairness Hearing, the Settling Parties anticipate presenting a final order giving effect to the Amended Stipulation and dismissing with prejudice all claims of any purported Settlement Class Members, which involve the exact identical factual predicate alleged in the Action, who did not opt-out of the class settlement within the time prescribed by the Court.

## 8. RELEASE

8.01.    Upon confirmation of the Amended Stipulation at the Final Fairness Hearing the Final Approval Order will release Defendant of all liability to the Settlement Class from any and all claims, including Unknown Claims, which involve the identical factual predicate alleged in the Action arising out of state or federal law. The Final Approval Order will enjoin Settlement Class Members from pursuing or filing suit upon any of the foregoing claims.

WHEREFORE, PREMISES CONSIDERED, Settling Parties pray that the Court:

1.    Preliminarily certify the Settlement Class for settlement purposes as set forth in the proposed Amended Stipulation;

2.    Order that Plaintiff may act as the Settlement Class Representative Plaintiff for of the Settlement Class and that Plaintiff's undersigned attorney may act as Settlement Class Counsel;

3.      Set a Final Fairness Hearing to determine whether the Amended Stipulation is fair, adequate, and reasonable; and

4.      At such Final Fairness Hearing approve the Amended Stipulation and grant Final Approval.

Respectfully submitted this 5th Day of April 2013.

**Attorneys for Defendant:**
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP

**Attorneys for Plaintiff:**
LAW OFFICE OF WILLIAM F. HORN

*s/ Thomas A. Leghorn*
Thomas A. Leghorn, Esq.
150 East 42nd Street
New York, NY 10017
Telephone: (212) 915-5234
Facsimile: (212) 490-3038
E-Mail: thomas.leghorn@wilsonelser.com

*s/ William F. Horn*
William F. Horn, Esq.
188-01B 71st Crescent
Fresh Meadows, NY 11365
Telephone: (718) 785-0543
Facsimile: (866) 596-9003
E-Mail: bill@wfhlegal.com

# EXHIBIT "B"

**From:**      R. ARLEO [r.arleo@verizon.net]
**Sent:**      Tuesday, August 28, 2012 6:51 AM
**To:**        PSanders@hblaw.com
**Cc:**        bill@wfhlegal.com
**Subject:**   Re: Re: : Felix/Harb  v. Northstar Location Services, LLC, et al (11-166) [DMS-
               ACTIVE.FID878681]

**HoudiniEventDuration:**   360000
**HoudiniEventGUID:**       33499
**HoudiniInboxGUID:**       88022
**HoudiniMatterGUID:**      195
**HoudiniMatterLabel:**     Northstar - Felix -- 1078-195
**Time?:**                  -1

2012 U.S. App. LEXIS 17374. Please review it and call me as soon as possible. Also, please copy Bill
on all emails.
Robert L. Arleo, Esq.
380 Lexington Avenue
17th Floor
New York, NY 10168

212-551-1115 Phone
518-751-1801 Fax

Aug 27, 2012 08:16:10 PM, PSanders@hblaw.com wrote:

> Just called. No answer. Can you send me a copy of the decision?
>
> Sent from my iPhone
>
> On Aug 27, 2012, at 3:13 PM, "R. ARLEO" <r.arleo@verizon.net> wrote:
>
>> Paul-  Please call me at 212 551-1115. We need to discuss this matter in light of
>> hte Hecht decision which
>> was issed by the Second Circuit on 8/17.
>> Robert L. Arleo, Esq.
>> 380 Lexington Avenue
>> 17th Floor
>> New York, NY 10168
>>
>> 212-551-1115 Phone
>> 518-751-1801 Fax
>>
>> May 8, 2012 11:52:56 AM, PSanders@hblaw.com wrote:
>>
>>> Robert: What was the latest status on negotiation of
>>> attorneys fees in this matter?
>>> Paul

**Paul A. Sanders**
Associate

# HISCOCK & BARCLAY LLP

**2000 HSBC Plaza • 100 Chestnut Street • Rochester, NY 14604**
**D: (585) 295-4426 • F: (585) 295-8422 • E: PSanders@hblaw.com**

**www.hblaw.com • vCard • Profile**

---

**Federal Tax Disclosure and Confidentiality Notice:**
**In accordance with IRS requirements, we inform you that any Federal tax advice contained in this communication is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.**

**This electronic mail transmission is intended only for the use of the individual or entity to which it is addressed and may contain confidential information belonging to the sender which is protected by the attorney-client privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message.**

---

# EXHIBIT "C"

| | |
|---|---|
| **From:** | Matthew_Yusick@nywd.uscourts.gov |
| **Sent:** | Wednesday, August 29, 2012 2:56 PM |
| **To:** | Sanders, Paul A. |
| **Cc:** | Andrew; William F. Horn; Penn, Nicole; r.arleo@verizon.net |
| **Subject:** | RE: Felix v. Northstar Location Services (11-cv-166) [DMS-ACTIVE.FID878681] |

| | |
|---|---|
| **HoudiniEventDuration:** | 360000 |
| **HoudiniEventGUID:** | 33747 |
| **HoudiniInboxGUID:** | 88323 |
| **HoudiniMatterGUID:** | 195 |
| **HoudiniMatterLabel:** | Northstar - Felix -- 1078-195 |
| **Time?:** | -1 |

Thanks Paul.

Matthew D. Yusick
Law Clerk to Hon. Jeremiah J. McCarthy
United States District Court, Western District of New York
2 Niagara Square, Suite 640
Buffalo, New York 14202-3350
(716) 551-1882 (voice); (716) 551-1885 (fax)
E-Mail: matthew_yusick@nywd.uscourts.gov

From:     "Sanders, Paul A." <PSanders@hblaw.com>
To:       "Matthew_Yusick@nywd.uscourts.gov" <Matthew_Yusick@nywd.uscourts.gov>
Cc:       Andrew <andrew@wfhlegal.com>, "William F. Horn" <Bill@wfhlegal.com>, "Penn, Nicole" <NPenn@hblaw.com>, "r.arleo@verizon.net" <r.arleo@verizon.net>
Date:     08/29/2012 02:52 PM
Subject:  RE: Felix v. Northstar Location Services (11-cv-166) [DMS-ACTIVE.FID878681]

Confirmed.  Thanks.

**From:** Matthew_Yusick@nywd.uscourts.gov [mailto:Matthew_Yusick@nywd.uscourts.gov]
**Sent:** Wednesday, August 29, 2012 2:10 PM
**To:** Sanders, Paul A.
**Cc:** Andrew; William F. Horn; Penn, Nicole; r.arleo@verizon.net
**Subject:** RE: Felix v. Northstar Location Services (11-cv-166) [DMS-ACTIVE.FID878681]

and please confirm that the motion [35] can still be deemed withdrawn.

Matthew D. Yusick
Law Clerk to Hon. Jeremiah J. McCarthy
United States District Court, Western District of New York
2 Niagara Square, Suite 640
Buffalo, New York 14202-3350
(716) 551-1882 (voice); (716) 551-1885 (fax)
E-Mail: matthew_yusick@nywd.uscourts.gov

From:        "Sanders, Paul A." <PSanders@hblaw.com>
To:          "Matthew_Yusick@nywd.uscourts.gov" <Matthew_Yusick@nywd.uscourts.gov>
Cc:          Andrew <andrew@wfhlegal.com>, "William F. Horn" <Bill@wfhlegal.com>, "Penn, Nicole" <NPenn@hblaw.com>, "r.arleo@verizon.net"
<r.arleo@verizon.net>
Date:        08/29/2012 12:12 PM
Subject:     RE: Felix v. Northstar Location Services (11-cv-166) [DMS-ACTIVE.FID878681]

Matt:
That makes sense.
Paul

**From:** Matthew_Yusick@nywd.uscourts.gov [mailto:Matthew_Yusick@nywd.uscourts.gov]
**Sent:** Wednesday, August 29, 2012 11:54 AM
**To:** Sanders, Paul A.
**Cc:** Andrew; William F. Horn; Penn, Nicole; r.arleo@verizon.net
**Subject:** RE: Felix v. Northstar Location Services (11-cv-166) [DMS-ACTIVE.FID878681]

In light of this, does it make sense to set a status in a couple of weeks and at that point you can advise the Judge what
direction the case is going take?

Matthew D. Yusick
Law Clerk to Hon. Jeremiah J. McCarthy
United States District Court, Western District of New York
2 Niagara Square, Suite 640
Buffalo, New York 14202-3350
(716) 551-1882 (voice); (716) 551-1885 (fax)
E-Mail: matthew_yusick@nywd.uscourts.gov

From:        "Sanders, Paul A." <PSanders@hblaw.com>
To:          "Matthew_Yusick@nywd.uscourts.gov" <Matthew_Yusick@nywd.uscourts.gov>
Cc:          "William F. Horn" <Bill@wfhlegal.com>, "r.arleo@verizon.net" <r.arleo@verizon.net>, "Penn, Nicole" <NPenn@hblaw.com>, Andrew
<andrew@wfhlegal.com>
Date:        08/29/2012 11:50 AM
Subject:     RE: Felix v. Northstar Location Services (11-cv-166) [DMS-ACTIVE.FID878681]

Matt:
The parties are attempting to negotiate a new settlement in light of the *Hecht* case.  We should be able to do so,
or not, within the next couple weeks, and we may need additional time to draft the application as well.  I may
request a settlement conference with the Court as an impasse over the terms of the agreement seems to be
developing.  Thanks for your efforts.
Paul

**From:** Matthew_Yusick@nywd.uscourts.gov [mailto:Matthew_Yusick@nywd.uscourts.gov]

**Sent:** Wednesday, August 29, 2012 11:41 AM
**To:** Sanders, Paul A.; Andrew; William F. Horn; r.arleo@verizon.net
**Subject:** RE: Felix v. Northstar Location Services (11-cv-166) [DMS-ACTIVE.FID878681]

Guys - How long do you need to file your second amended motion?  Thanks, Matt


Matthew D. Yusick
Law Clerk to Hon. Jeremiah J. McCarthy
United States District Court, Western District of New York
2 Niagara Square, Suite 640
Buffalo, New York 14202-3350
(716) 551-1882 (voice); (716) 551-1885 (fax)
E-Mail: matthew_yusick@nywd.uscourts.gov


From:       "Sanders, Paul A." <PSanders@hblaw.com>
To:         "William F. Horn" <Bill@wfhlegal.com>, "Matthew_Yusick@nywd.uscourts.gov" <Matthew_Yusick@nywd.uscourts.gov>, "r.arleo@verizon.net"
            <r.arleo@verizon.net>
Cc:         Andrew <andrew@wfhlegal.com>
Date:       08/28/2012 01:36 PM
Subject:    RE: Felix v. Northstar Location Services (11-cv-166) [DMS-ACTIVE.FID878681]

---

No objection from defendant.  Thanks.



**Paul A. Sanders**
Associate


2000 HSBC Plaza  •  100 Chestnut Street  •  Rochester, NY 14604
D: (585) 295-4426  •  F: (585) 295-8422  •  E: PSanders@hblaw.com

**www.hblaw.com  •  vCard  •  Profile**

---

Federal Tax Disclosure and Confidentiality Notice:
In accordance with IRS requirements, we inform you that any Federal tax advice contained in this communication is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

This electronic mail transmission is intended only for the use of the individual or entity to which it is addressed and may contain confidential information belonging to the sender which is protected by the attorney-client privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message.

---

**From:** William F. Horn [mailto:Bill@wfhlegal.com]
**Sent:** Tuesday, August 28, 2012 1:29 PM
**To:** Matthew_Yusick@nywd.uscourts.gov; r.arleo@verizon.net; Sanders, Paul A.
**Cc:** Andrew
**Subject:** RE: Felix v. Northstar Location Services (11-cv-166)

No objection from Plaintiff, Matt.

William F. Horn
Law Office of William F. Horn
188-01B 71st Crescent
Fresh Meadows, NY 11365
Telephone: 718.785.0543
Facsimile: 866.596.9003

**From:** Matthew_Yusick@nywd.uscourts.gov [mailto:Matthew_Yusick@nywd.uscourts.gov]
**Sent:** Tuesday, August 28, 2012 1:23 PM
**To:** r.arleo@verizon.net; bill@wfhlegal.com; psanders@hiscockbarclay.com
**Subject:** Felix v. Northstar Location Services (11-cv-166)

Paul Sanders advised me this morning that in light of the Second Circuit's recent decision in Hecht, the parties intend to amend their amended  consent motion for a conditional order certifying the class and granting preliminary approval of the class action settlement.  [35].  In light of this, do the parties have any objection to the court (for internal administrative  reporting purposes) deeming  the pending motion [35] withdrawn, without prejudice to the filing of a second amended consent motion?  Please let me know.

Thanks,

Matt


Matthew D. Yusick
Law Clerk to Hon. Jeremiah J. McCarthy
United States District Court, Western District of New York
2 Niagara Square, Suite 640
Buffalo, New York 14202-3350
(716) 551-1882 (voice); (716) 551-1885 (fax)
E-Mail: matthew_yusick@nywd.uscourts.gov

# EXHIBIT "D"

Lilys D. McCoy (Cal. State Bar No. 156918)
E-mail: ldm@mtrlaw.com
MCCOY, TURNAGE & ROBERTSON, LLP
5469 Kearny Villa Road, Suite 206
San Diego, California 92123
Tel: (858) 300-1900
Fax: (858) 300-1910

William F. Horn (*Pro Hac Vice*)
Email: bill@wfhlegal.com
LAW OFFICE OF WILLIAM F HORN
188-01B 71st Crecent
Fresh Meadows, New York 11365
Tel: (718) 785-0543
Fax: (866) 596-9003

Attorneys for Plaintiff, Sergio Cedeno, and
all others similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| SERGIO CEDENO, an individual; *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>BUREAU OF COLLECTION RECOVERY, INC., a Minnesota Corporation; *et al.*,<br><br>                    Defendants. | Case No.: 8:10-cv-01960-JVS (FFMx)<br><br>**NOTICE OF HEARING ON CONSENT MOTION FOR AN ORDER CONDITIONALLY CERTIFYING CLASS AND GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INJUNCTIVE RELIEF**<br><br>Hon. James V. Selna<br><br>Date: June 18, 2012<br>Time: 1:30 p.m.<br>Courtroom 10C |

**TO ALL PARTIES HEREIN AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 18, 2012, at 8:30 a.m. in Courtroom 10C of the above-referenced court, located at 411 West 4th Street, Santa Ana,

92701, California, Plaintiff Sergio Cedeno makes this uncontested consent motion pursuant to Fed. R. Civ. P 23 for preliminary conditional approval of the class action settlement reached in this case.

The motion is brought on the grounds that the settlement is fair and reasonable under all the circumstances. This motion is based on this Notice, the accompanying memorandum of points and authorities, the declarations of Lilys D. McCoy and William F. Horn, on the files and records in this action, and on such further argument as the Court may permit.

Respectfully submitted,

Dated: May 4, 2012                    MCCOY, TURNAGE & ROBERTSON, LLP

By: ___s/ Lilys D. McCoy_____
    Lilys D. McCoy

Attorneys for Plaintiff, Sergio Cedeno, and all others similarly situated

NOTICE OF HEARING ON CONSENT MOTION FOR AN ORDER CONDITIONALLY CERTIFYING CLASS
AND GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   Lilys D. McCoy (Cal. State Bar No. 156918)
    E-mail: ldm@mtrlaw.com
2   MCCOY, TURNAGE & ROBERTSON, LLP
    5469 Kearny Villa Road, Suite 206
3   San Diego, California 92123
    Tel: (858) 300-1900
4   Fax: (858) 300-1910

5   William F. Horn (*Pro Hac Vice*)
    Email: bill@wfhlegal.com
6   LAW OFFICE OF WILLIAM F HORN
    188-01B 71st Crecent
7   Fresh Meadows, New York 11365
    Tel: (718) 785-0543
8   Fax: (866) 596-9003

9   Attorneys for Plaintiff, Sergio Cedeno, and
10  all others similarly situated

11

12              UNITED STATES DISTRICT COURT

13      CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

14  SERGIO CEDENO, an individual; *et*          ) Case No.: 8:10-cv-01960-JVS (FFMx)
15  *al.*,                                      )
                                                ) **CONSENT MOTION FOR AN**
16              Plaintiffs,                      ) **ORDER CONDITIONALLY**
                                                ) **CERTIFYING CLASS AND**
17  v.                                          ) **GRANTING PRELIMINARY**
                                                ) **APPROVAL OF CLASS ACTION**
18                                              ) **SETTLEMENT AND**
19  BUREAU OF COLLECTION                        ) **INJUNCTIVE RELIEF**
    RECOVERY, INC., a Minnesota                 )
20  Corporation; *et al.*,                      ) Hon. James V. Selna
                                                )
21              Defendants.                      ) Date: June 18, 2012
22                                              ) Time: 1:30 p.m.
                                                ) Courtroom 10C
23  _____ )

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

_____
MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AGREEMENT

1

# TABLE OF CONTENTS

**A. Motion To Certify**………………………………………………………………………1

1.  Nature Of Case   …………………………………….....................1

2.  Elements For Class Certification …………….…………………………4

3.  Other Considerations… ………………………………………..8

    *Certification Pursuant to Fed. R. Civ. P. 23(.b)(2)…………..…………9*

    *Relief For The Settlement Class* ………………………………..13

    A. *Injunctive Relief*  …………………………………………..13

    B. *Statutory Damages*  …………………………………13

    C. *Opt-Out and Other Rights*……………………………14

4.  Class Type ……………………………………………….................15

5.  Consent Motion ………………………………….................16

**B. Motion To Approve Settlement**……………………………….................17

6. Nature Of Settlement…………………………………………..17

7. Final Order……………………………………………………..19

8. Release ……………………………………………………...19

MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AGREEMENT

# TABLE OF AUTHORITIES

**Cited Cases:**

*Amchem Products, Inc. v. Windsor*
    521 U.S. 591, 625 (1997)…………………………………….....5,7

*Anderson v. Nationwide Credit, Inc.*
    E.D.N.Y. Case No. 2:08-cv-01016-LDW-MLO……………………………..9

*Anderson v. Nationwide Credit, Inc.*
    E.D.N.Y. Case No. 2:10-cv-03825-LDW-ETB………………………..9,10

*Ballard v. Equifax Check Services, Inc.*
    186 F.R.D. 589, 596-97 (E.D. Cal. 1999)…………………………………..11

*Blake v. Arnett*, 663 F.2d 906
    912 (9th Cir. 1981)………………………………...………………………5

*Bolin v. Sears, Roebuck & Co.*
    231 F.3d 970, 975 n.22 (5th Cir. 2000)…………………………………....9

*Borcherding-Dittloff v. Transworld Systems, Inc.*
    185 F.R.D. 558, 565-566 (W.D. Wis. 1999)………………………………..11

*Chana Hecht v. United Collection Bureau, Inc.*
    2011 U.S. Dist. LEXIS 22840 (D. Conn. March 8, 2011)……………….....10

*Drinkman v. Encore Receivable Mgmt.*
    2007 U.S. Dist. LEXIS 89514, (E.D. Wis. 2007)…………………………..10

*Evans v. American Credit Systems, Inc.*
    222 F.R.D. 388, 396-97 (D. Neb. 2004)………………………………….11

*Foti v. NCO Financial Systems, Inc.*
    2008 U.S. Dist. LEXIS 16511…………………………………………9

*Gammon v. GC Servs. Ltd. Partnership*
    162 F.R.D. 313, 321 (N.D. Ill. 1995)……………..………………………...10

*Gonzalez v. Arrow Fin. Services, LLC*
    233 F,R,D, 577 (S.D. Cal. 2006)…………………………………………11

*Gravina v. Client Services, Inc.*
    E.D.N.Y. Case No. 2:08-cv-03634-LDW-MLO……………………………10

*Gravina v. National Enterprise Systems, Inc.*
    E.D.N.Y. Case No. 2:09-cv-02942-JFB-AKT……………………………….9

*Gravina v. United Collection Bureau, Inc.*
    E.D.N.Y. Case No. 2:09-cv-04816-LDW-AKT…………………………….10

MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AGREEMENT

*Hanon v. Dataproducts Corp.*
    976 F.2d 497, 508 (9th Cir. 1992)................................................6

*Harrigan v. Receivables Performance Management, LLC*
    N.D.N.Y. Case No. 8:09-cv-01351-RFT...........................…….10

*Hunt v. Check Recovery Sys.*
    241 F.R.D. 505, 513 (N.D. Cal. 2007)...........................................11

*In re Agent Orange Prod. Liab. Litig.*
    818 F.2d 145, 166-167 (2d Cir. 1987)...........................................5

*Isby v. Bayh*
    75 F.3d 1191, 1196 (7th Cir. 1996)...........................….............15

*Jordan v. County of Los Angeles*
    669 F.2d 1311, 1319 (9th Cir. 1982)...........................................5

*Keele v. Wexler*
    149 F.3d 589 (7th Cir. 1998) ...................................................5

*Leyva v. Buley*
    125 F.R.D. 512, 515 (E.D. Wash. 1989)........................................5

*Ortiz v. Fibreboard Corp.*
    527 U.S. 815, 841 (1999)...........................................................12

*Parker v. United Steelworkers of America*
    642 F.2d 104, 107 (5th Cir. 1981)...............................................9

*Parra v. Bashas', Inc.*
    536 F.3d 975, 978 (9th Cir. 2008)...............................................5

*Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*
    2006 U.S. Dist. LEXIS 89226.........................................…….....11

*Rosario v. Livaditis*
    963 F.2d 1013, 1018 (7th Cir. 1992)...........................................5

*Schwartz v. Harp*
    108 F.R.D. 279, 282 (C.D. Cal. 1985).........................................6

*Simon II Litig. v. Philip Morris USA Inc. (In re Simon II Litig.)*
    407 F.3d 125, 137 (2d Cir. 2005)...............................................12

*Swanson v. Mid Am, Inc.*
    186 F.R.D. 665 (M.D. Fla. 1999)...............................................11

*Tietz v. Bowen*
    695 F. Supp. 441, 445 (N.D. Cal. 1987)......................................5

*Tyrell v. Robert Kaye & Associates, P.A.*
    223 F.R.D. 686, 690 (S.D. Fla. 2004)........................................11

-iii-

*Young v. Meyer & Njus, P.A.*
    183 F.R.D. 231, 234 (N.D. Ill. 1998)…………………………………………11

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. ___, 131 S. Ct. 2541, 180 L. Ed. 2d 374, 396 (2011)…………….....9

**Federal Statutes:**

    Fed. R. Civ. P. 23(a)(2)………………………………………………………….5

    Fed. R. Civ. P. 23(b)(1)(B)……………………………………………….....1,12,13

    Fed. R. Civ. P. 23(b)(2)………………………………1,8,9,10,11,13,15,18

    15 U.S.C. §§1692, *et seq*..………………………………………………………1

    15 U.S.C. §1692d(6)…………………………………………………………..1,5

    15 U.S.C. §1692e(11)………………………………………………………….1,5

    15 U.S.C. §1692k(a)(2)(A)………………………………………………...2,17

    15 U.S.C. § 1692k……………………………………………………….4,18

    15 U.S.C. § 1692k(a)(2)(b)……………………………………………10,12,13

**State Statutes:**

    Cal. Civ. Code §§1788, *et seq*..……………………………………………….1

    Cal. Civ. Code §1788.11(b)…………………………………………………1,6,7

    Cal. Civ. Code §1788.17…………………………………………......1,6,7,12,13

    Cal. Civ. Code § 1788.30(b)……………………………………………3,17

    Cal. Civ. Code § 1788.30………………………………………………...13

    Cal. Civ. Code § 1788.30(c)…………………………………………….4,18

**Treatises:**

5 Moore's Federal Practice
    § 23.43[3][a]…………..……………………………………………………9

**Law Reviews:**

*Class Certification in the Age of Aggregate Proof*
    84 N. Y. U. L. Rev. 97, 132 (2009)…………….......…………………..9

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Plaintiff, SERGIO CEDENO, on behalf of himself and all others similarly situated, and Defendant, BUREAU OF COLLECTION RECOVERY, LLC[1], hereby request pursuant to Fed. R. Civ. P. 23(b)(1)(B) and 23(b)(2) that the Court enter an order: (1) certifying the Settlement Class; (2) preliminarily approving the attached proposed Stipulation of Settlement; (3) directing notice to the class; and (4) setting dates for objections and a Final Fairness Hearing.[2] In support of his motion, Plaintiff respectfully shows the following:

### A. MOTION TO CERTIFY

### 1. NATURE OF THE CASE

1.01. Plaintiff filed this lawsuit on December 27, 2010. Plaintiff is a consumer who allegedly became delinquent on a consumer debt. Plaintiff contends that in attempting to collect the consumer debt from him, and the proposed settlement class he seeks to represent, Defendant left "pre-recorded" telephone voice messages for him that violated the federal Fair Debt Collection Practices Act, 15 U.S.C. §§1692, *et seq.* ("FDCPA") and the California Fair Debt Collection Practices Act, Cal. Civ. Code §§1788, *et seq.* ("RFDCPA").

1.02. The Plaintiff alleges that Defendant's telephone messages failed to provide meaningful identification of the caller in violation of 15 U.S.C. §1692d(6), and that the messages also failed to give the disclosures required by 15 U.S.C. §1692e(11). The Plaintiff further alleges that this same conduct constitutes a violation of and Cal. Civ. Code §§ 1788.11(b) and 1788.17.

1.03. In its Answer to Plaintiff's Complaint [Doc. 4], Defendant denies the Plaintiff's allegations and asserts, *inter alia*, a number of affirmative defenses.

---

[1] Defendant, Bureau of Collection Recovery, LLC was erroneously sued as Bureau of Collection Recovery, Inc.

[2] As used in this Consent Motion, all capitalized terms shall have the meanings and definitions set forth in Section 1 of the Stipulation of Settlement, which is attached hereto as ***Exhibit A.***

1 Defendant denies the Plaintiff's allegations and asserts, *inter alia*, that any alleged

2 violation, if it was a violation, was unintentional and resulted from a *bona fide*

3 error, notwithstanding the maintenance of procedures reasonably adapted to avoid

4 the violation. Defendant has also denied, and continues to deny, *inter alia*, any and

5 all allegations that members of the proposed settlement class have suffered any

6 damage whatsoever, have been harmed in any way, or are entitled to any relief as a

7 result of any conduct on the part of Defendant as alleged by the Plaintiff.

8    1.04. Over the course of several months, counsel for the Plaintiff and

9 Defendant have respectively reviewed and analyzed the complex legal and factual

10 issues present in this Action, the risks and expense involved in pursuing the

11 litigation to conclusion, the likelihood of recovering damages in excess of those

12 obtained through this settlement from Defendant, the protracted nature of the

13 litigation and the likelihood, costs, and possible outcomes of one or more appeals of

14 procedural and substantive issues.

15    1.05. Based upon these reviews and analyses, the Plaintiff and Defendant

16 embarked upon and concluded comprehensive settlement discussions, which

17 resulted in execution of the Stipulation of Settlement, a copy of which is attached

18 hereto as **Exhibit A**.

19    1.06. As a compromise of their claims, the Settling Parties have agreed to

20 seek class certification for those claims pursuant to the FDCPA and RFDCPA as

21 described, *supra* ("Settlement Class"). During the discovery phase of the Action,

22 Defendant disclosed to Plaintiff the number of Settlement Class Members and the

23 Defendant's audited net worth. Specifically, that there may be over 100,000

24 potential members of the Settlement Class and that the Defendant's net worth is

25 approximately $3,000,000.00.

26 / / /

27 / / /

28 / / /

-2-

MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AGREEMENT

1.07. Subject to the terms of the Stipulation of Settlement, Defendant has agreed to provide the following relief to Plaintiff and the Settlement Class:

(a) **Individual Relief.** The Settlement Class Representative Plaintiff shall receive $2,000.00 as statutory damages under 15 U.S.C. §1692k(a)(2)(A) and Cal. Civ. Code § 1788.30(b). Settlement Class Representative Plaintiff shall also receive an additional $1,000.00 in recognition for his services to the Settlement Class Members.

(b) **FDCPA Class Relief.** Defendant shall pay $30,000.00, which represents the maximum class recovery permitted under the FDCPA (i.e. 1% of Defendant's net worth), as a *cy pres* payment to one or more national charitable organizations without any religious or political affiliations. Subject to the Court's approval, the Settling Parties propose that the recipient(s) of the cy pres payment will be the National Consumer Law Center, which is a national organization that provides assistance to low-income and vulnerable Americans on, inter alia, issues involving consumer fraud, debt collection, consumer finance, energy assistance programs, predatory lending, and sustainable home ownership programs.

(c) **RFDCPA Class Relief.** Defendant shall pay an additional $30,000.00, which represents the maximum class recovery permitted under the RFDCPA (i.e. 1% of Defendant's net worth), as a *cy pres* payment to one or more California charitable organizations without any religious or political affiliations. Subject to the Court's approval, the Settling Parties propose that the recipient(s) of the cy pres payment will be the Legal Aid Association of California, which is a statewide membership organization of legal services nonprofits, that serves and strengthens its members through advocacy, training, and support in their efforts to provide critical legal assistance to low-income Californians and ensure equal access to justice.

(d) **Injunctive Relief.** Defendant shall consent to entry of a stipulated injunction mandating that Defendant use its best efforts to ensure that it identifies itself by its legal name in <u>all</u> telephone messages left for consumers in the State of California, and that it further disclose that the call is from a debt collector

-3-

and concerns the collection of a debt. Settlement Class Counsel shall be entitled to recover their reasonable attorney fees and costs if they are required to pursue any action necessary to enforce the terms of the stipulated injunction. The Court shall decide the final terms of the stipulated injunction at the Final Fairness Hearing

(e) **_Counsel Fees_**. Defendant agrees that Settlement Class Representative Plaintiff is the successful party in this Action and further agrees to pay reasonable attorneys' fees and costs as the Court may award for prosecution of a "successful action" under 15 U.S.C. § 1692k and Cal. Civ. Code § 1788.30(c). Settlement Class Counsel will accept the amount of fees and expenses awarded by the Court in full satisfaction of reasonable attorney's fees and costs arising out of this lawsuit and enforcement of the injunction and will not request additional fees from Defendant, Settlement Class Representative Plaintiff, or any Settlement Class Member. The parties reserve the right to settle the issue of reasonable attorney's fees and costs.

1.08. In the event the class settlement is not approved or as may otherwise be provided in the Stipulation of Settlement, Settlement Class Representative Plaintiff stipulates that the certification order will be set aside and neither this motion nor the Stipulation of Settlement will in any way prejudice Defendant's right to contest class certification on any legal or equitable grounds.

## 2. ELEMENTS FOR CLASS CERTIFICATION

2.01. Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions. One or more members of a class may sue or be sued as representative on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the class representative will fairly and adequately protect the interests of the class. To obtain class certification, Plaintiff must demonstrate that the proposed Settlement Class satisfies the general class

-4-

1   certification requirements of: (1) numerosity; (2) commonality; (3) typicality; (4)

2   adequacy of representation under Rule 23(a); and (5) some section pursuant to Fed.

3   R. Civ. P. 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997);

4   *Blake v. Arnett*, 663 F.2d 906, 912 (9th Cir. 1981).

5      2.02. Accordingly, Plaintiff shows the following in support of his contention

6   that sufficient grounds for class certification exist under Fed. R. Civ. P. 23:

7               *Numerosity*

8      2.03. Based upon information received from Defendant, there are more than

9   100,000 potential members of the Settlement Class. This is sufficient for

10   numerosity. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982),

11   *vacated on other grounds*, 459 U.S. 810 (1982); see also, *Leyva v. Buley*, 125

12   F.R.D. 512, 515 (E.D. Wash. 1989) (certifying class of 50 members); *Tietz v.*

13   *Bowen*, 695 F. Supp. 441, 445 (N.D. Cal. 1987) (numerosity requirement met in

14   class numbering 27).

15              *Commonality*

16      2.04. A common nucleus of operative law or fact is enough to satisfy the

17   commonality requirement of Rule 23(a)(2). *Parra v. Bashas', Inc.*, 536 F.3d 975,

18   978 (9th Cir. 2008) (either shared legal issues with divergent facts, or shared facts

19   with disparate legal remedies, may be sufficient to meet commonality requirement);

20   see also, *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 166-167 (2d Cir.

21   1987) (common defenses applicable to whole class satisfied commonality

22   requirement); see also, *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) citing *Rosario*

23   *v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Here, Plaintiff contends there are

24   common questions of fact in that Plaintiff and each member of the Settlement Class

25   received the same "pre-recorded" message from Defendant. Plaintiff further

26   contends there are common questions of law affecting the Settlement Class, and

27   that these questions include but are not limited to:

28

(a)    whether the Defendant's telephone messages left for consumers violate 15 U.S.C. §1692d(6);

(b)    whether the Defendant's telephone messages left for consumers violate 15 U.S.C. §1692e(11);

(c)    whether the Defendant's telephone messages left for consumers violate Cal. Civ. Code §§ 1788.11(b) and 1788.17;

(d)    whether the Settlement Class Representative Plaintiff and the Settlement Class Members are entitled to injunctive relief;

(e)    whether Settlement Class Representative Plaintiff and the Settlement Class Members are entitled to recover statutory damages and, if so, in what amount; and

(f)    whether Settlement Class Representative Plaintiff and the Settlement Class Members are entitled to recover attorney's fees and costs and, if so, in what amount.

Under the definition of the Settlement Class as agreed by the Settling Parties, and set forth in ***Exhibit A***, commonality is established by the Defendant's uniform business practice of leaving the same type of uniform telephone message for the Settlement Class Representative Plaintiff and the Settlement Class Members.

### *Typicality*

2.05. A class representative's claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* citing *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985).

/ / /

-6-

2.06. Plaintiff contends that his claims are typical of the claims of the Settlement Class. Specifically, Plaintiff alleges that the Defendant left him and the Settlement Class Members at least one "pre-recorded" telephone voice message that failed to provide meaningful disclosure of the caller's identity in violation of 15 U.S.C. § 1692d(6) and which did not contain the disclosures required for by 15 U.S.C. § 1692e(11). Plaintiff further contends that this same conduct also constitutes a *per se* violation of Cal. Civ. Code §§ 1788.11(b) and 1788.17.

### *Adequacy of Representation*

2.07. In order for Plaintiff to be considered a fair and adequate representative of the Settlement Class, three requirements must be met: (1) counsel must be qualified, experienced and generally able to conduct the proposed litigation; (2) the class representative must have sufficient interest in the outcome to ensure vigorous advocacy; and (3) the class representative must not have antagonistic or conflicting interests with other members of the proposed class. *Amchem Prods.*, *supra*, 521 U.S. at 625. "The adequacy inquiry serves to uncover conflicts of interest between named class representatives and the class they seek to represent." *Id.* Plaintiff asserts that he will fairly and adequately represent the interests of the class. Through his attorneys of record, Plaintiff has been willing to pay the costs of notice and litigation. Plaintiff further states that he has no interests adverse to other members of the Settlement Class.

2.08. Plaintiff has hired the undersigned attorneys to represent them in this matter. Plaintiff's attorneys have significant experience in the handling of both consumer protection class action and other types of complex litigation as evidenced by the accompanying declarations of counsel, which are attached hereto as ***Exhibits B & C***.

/ / /

/ / /

/ / /

-7-

# 3. OTHER CONSIDERATIONS

3.01. Pursuant to Fed. R. Civ. P. 23 an action may be maintained as a class action if the four elements described above are satisfied, and in addition, certain other conditions exist as enumerated under Fed. R. Civ. P. 23(b). These certain other conditions are:

(a.) The prosecution of separate actions by or against individual members of the class would create a risk of:

    (i) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

    (ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

b.) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;

c.) Where the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

d.) The Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Plaintiff respectfully submits that the Court should certify the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(2). Certification is appropriate under Fed. R. Civ. P. 23(b)(2) when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final

1  injunctive relief or corresponding declaratory relief with respect to the class as a

2  whole." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___, 131 S. Ct. 2541, 180 L. Ed.

3  2d 374, 396 (2011); ("The key to the (b)(2) class is 'the indivisible nature of the

4  injunctive or declaratory remedy warranted--the notion that the conduct is such

5  that it can be enjoined or declared unlawful only as to all of the class members or

6  as to none of them.'" quoting Nagareda, *Class Certification in the Age of*

7  *Aggregate Proof*, 84 N. Y. U. L. Rev. 97, 132 (2009)); *Bolin v. Sears, Roebuck &*

8  *Co.*, 231 F.3d 970, 975 n.22 (5th Cir. 2000) ("this rule seeks to redress what are

9  really group as opposed to individual injuries. The uniformity of the injury across

10 the class is what renders the notice and opt-out provisions of (b)(3)

11 unnecessary."). Generally, courts may certify classes under Rule 23(b)(2) when a

12 plaintiff seeks both injunctive relief and monetary damages if the monetary

13 damages are secondary or "incidental" to the injunctive relief. *Id*. Federal courts

14 have held that class certification, under Rule 23(b)(2), is not appropriate if the

15 damage claims "predominate" the plaintiff's request for injunctive relief. *Id*.; see

16 also, 5 Moore's Federal Practice § 23.43[3][a]; *Parker v. United Steelworkers of*

17 *America*, 642 F.2d 104, 107 (5th Cir. 1981).

18 ### *Certification Pursuant to Fed. R. Civ. P. 23(b)(2)*

19 With respect to the Settlement Class, District Courts throughout the

20 United States have certified FDCPA class action lawsuits pursuant to Fed. R. Civ.

21 P. 23(b)(2), even though injunctive and/or declaratory relief is not available as a

22 matter of right to private litigants under the FDCPA. See e.g., *Foti v. NCO*

23 *Financial Systems, Inc.*, 2008 U.S. Dist. LEXIS 16511, at *12 (S.D.N.Y. 2006)

24 (approving FDCPA settlement awarding injunctive relief, attorneys' fees, and

25 incentive payments under Fed. R. Civ. P. 23(b)(2), in part because "[t]he monetary

26 damages would be so *de minimis* that the value of the injunction to the plaintiffs

27 clearly outweighs any potential financial recompense."); *Gravina v. National*

28 *Enterprise Systems, Inc.*, E.D.N.Y. Case No. 2:09-cv-02942-JFB-AKT; *Anderson*

-9-

1   *v. Nationwide Credit, Inc.*, E.D.N.Y. Case No. 2:08-cv-01016-LDW-MLO

2   *Anderson v. Nationwide Credit, Inc.*, E.D.N.Y. Case No. 2:10-cv-03825-LDW-

3   ETB; *Gravina v. Client Services, Inc.*, E.D.N.Y. Case No. 2:08-cv-03634-LDW-

4   MLO; *Harrigan v. Receivables Performance Management, LLC*, N.D.N.Y. Case

5   No. 8:09-cv-01351-RFT; *Gravina v. United Collection Bureau, Inc.*, E.D.N.Y.

6   Case No. 2:09-cv-04816-LDW-AKT; *Foti v. NCO Financial Systems*, S.D.N.Y.

7   Case No. 1:04-cv-00707-RJS-DCF; see also, *Chana Hecht v. United Collection*

8   *Bureau*, 2011 U.S. Dist. LEXIS 22840 (D. Conn. March 8, 2011) (denying class

9   member challenge to class settlement in *Gravina v. United Collection Bureau,*

10   *Inc.*); *Drinkman v. Encore Receivable Mgmt.*, 2007 U.S. Dist. LEXIS 89514,

11   (E.D. Wis. 2007). Importantly, all of the foregoing cases involved identical factual

12   and legal claims as those at issue in this Action.

13       Courts have likewise approved class settlements including statutory damages

14   awards as incidental to stipulated injunctions under Fed. R. Civ. P. 23(b)(2). *Id.*

15   See also, *Drinkman v. Encore Receivable Mgmt.*, *supra* at *14-16 (plaintiff's

16   request that the proposed class receive statutory damages under 15 U.S.C. §

17   1692k(a)(2)(B) is a request for "incidental" damages that flow directly from the

18   main relief sought for the class (i.e, declaratory relief) because such damages

19   require a mere mechanical computation without any need for individual

20   calculation (i.e., divide the lesser of $500,000 or 1 per centum of defendant's net

21   worth by the number of class members), and because defendant acted on grounds

22   generally applicable to the class by using substantially the same pre-recorded

23   messages to contact class members); *Gammon v. GC Servs. Ltd. Partnership*, 162

24   F.R.D. 313, 321 (N.D. Ill. 1995) (certifying class seeking declaratory judgment

25   and statutory damages pursuant to FDCPA as a Fed. R. Civ. P. 23(b)(2) class

26   because "in light of the *de minimis* amount of statutory damages that each class

27   member would potentially receive, the fact that the damages flow from the

28   declaratory judgment, and the readiness with which the statutory damages can be

1 calculated....the request for non-monetary relief predominates over the request for
2 damages."); *Hunt v. Check Recovery Sys.*, 241 F.R.D. 505, 513 (N.D. Cal. 2007)
3 (certifying FDCPA class seeking statutory damages and declaratory relief under
4 Rule 23(b)(2) in part because "plaintiffs' monetary damages, and those of the
5 putative class, all flow directly from the demand letters sent by Defendant and are
6 therefore secondary to the claim for declaratory relief"); *Gonzalez v. Arrow Fin.*
7 *Services, LLC*, 233 F,R,D, 577 (S.D. Cal. 2006)(certifying FDCPA class under
8 Rule 23(b)(2) where plaintiffs received standardized demand letters and sought
9 declaratory relief and statutory damages); *Swanson v. Mid Am, Inc.*, 186 F.R.D.
10 665 (M.D. Fla. 1999) (certifying class under 23(b)(2) for FDCPA claims seeking
11 declaratory relief and statutory damages); *Ballard v. Equifax Check Services, Inc.*,
12 186 F.R.D. 589, 596-97 (E.D. Cal. 1999) (certifying FDCPA class under Rule
13 23(b)(2) on the issues of liability, declaratory relief, and statutory damages but
14 reserving certification of actual damages for certification under Rule 23(b)(3)).

15 In fact, Courts have ruled that granting injunctive relief as part of a settlement in
16 an FDCPA case supports the reasonableness of the proposed settlement. *See*,
17 *Reade-Alvarez v. Eltman, Eltman, & Cooper, P.C.*, 2006 U.S. Dist. LEXIS 89226,
18 *22-23, fn 8 (E.D.N.Y. 2006); *see also*, *Hunt v. Check Recovery Systems, Inc.*,
19 *supra* at 512-513; *Gonzales*, *supra* at 582-583; *Tyrell v. Robert Kaye &*
20 *Associates, P.A.*, 223 F.R.D. 686, 690 (S.D. Fla. 2004); *Evans v. American Credit*
21 *Systems, Inc.*, 222 F.R.D. 388, 396-97 (D. Neb. 2004); *Swanson v. Mid Am, Inc.*,
22 *supra* at 669; *Ballard*, *supra* at 596-597; *Borcherding-Dittloff v. Transworld*
23 *Systems, Inc.*, 185 F.R.D. 558, 565-566 (W.D. Wis. 1999); *Young v. Meyer &*
24 *Njus, P.A.*, 183 F.R.D. 231, 234 (N.D. Ill. 1998); *Gammon v. GC Services Ltd.*
25 *Partnership*, *supra* at 319-320.

26     In many cases, courts have certified a Rule 23(b)(2) class even though the
27 class members were not provided notice, an opportunity to opt-out, or the right to
28 subsequently file an individual lawsuit for statutory damages. See e.g., *Gammon*,

1   162 F.R.D. at 321-22 ("As stated above, Rule 23(b)(2) is a no-notice, non opt-out

2   provision....We see no reason to decline to certify the class in the instant case

3   merely because of the defendant's mere speculation that some class members

4   might prefer to bring individual actions for statutory damages. The Court is

5   mindful of the practical reality that few individuals will pursue the filing of a

6   federal lawsuit, with its attendant costs, when their statutory damage recovery is

7   capped at $1,000.00. Class certification is not barred simply because some class

8   members may recover lesser statutory damages than they would have had they

9   brought their claims individually.").

10      Plaintiff also submits that certification of the Settlement Class is appropriate

11  pursuant to Rule 23(b)(1)(b), which provides that class certification is appropriate

12  where "prosecuting separate actions by or against individual class members would

13  create a risk of inconsistent or varying adjudications with respect to individual

14  class members that would establish incompatible standards of conduct for the

15  party opposing the class." Fed. R. Civ. P. 23(b)(1)(b). In this case, the necessary

16  requirements for certification of the Settlement Class under Rule 23(b)(1)(b) are

17  met because the statutory damages at issue represent "a 'fund' with a definitely

18  ascertained limit" to be distributed on an equitable, pro rata basis. See, *Ortiz v.*

19  *Fibreboard Corp.*, 527 U.S. 815, 841 (1999); see also, *Simon II Litig. v. Philip*

20  *Morris USA Inc. (In re Simon II Litig.)*, 407 F.3d 125, 137 (2d Cir. N.Y. 2005).

21  Because the amount of statutory damages recoverable on a class-wide basis for the

22  claims asserted here is statutorily limited to "1 per centum of the net worth of [the

23  Defendant]", 15 U.S.C. § 1692k(a)(2)(b) and Cal. Civ. Code § 1788.17, Plaintiff

24  submits that the Settlement Class is uniquely appropriate for certification under

25  the Rule 23(b)(1)(b) requirements identified by the Supreme Court in *Ortiz*.

26  / / /

27  / / /

28  / / /

-12-

MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AGREEMENT

### *Relief for the Settlement Class*

#### A. *Injunctive Relief*

Here, the Defendant has consented to entry of an injunction mandating that it "use its best efforts to ensure that it identifies itself by its legal name in all telephone messages left for consumers in the State of California, and that it further disclose that the call is from a debt collector and concerns the collection of a debt." Injunctive relief is not available to private litigants under the FDCPA. Such an injunction would subject the Defendant to civil sanctions in an amount to be determined by the Court in the event Defendant violated the terms of the injunction. Consequently, this is type of injunctive relief is an extraordinary benefit for the Settlement Class Members *and* prospective consumers at-large, which would not otherwise be available in the absence of this Settlement.

#### B. *Statutory Damages*

The Defendant has agreed to pay maximum statutory damages to the Settlement Class. Specifically, the Defendant has agreed to pay 1% of its net worth (i.e. $30,000.00), which is the *maximum* statutory class damages permitted under the FDCPA. [See, 15 U.S.C. § 1692k(a)(2)(B)]. Defendant has further agreed to pay an additional 1% of its net worth (i.e. $30,000.00), which is the *maximum* statutory class damages permitted under the RFDCPA. [See, Cal. Civ. Code §§ 1788.30; 1788.17]. Thus, the cumulative class damages of $60,000.00 are *de minimis* in light of the fact that each member of the more than 100,000 Settlement Class stands to receive *approximately 60 cents*.

The class statutory damages sought by this lawsuit are "incidental" to, and flow directly from, the injunctive relief agreed to by the Defendant. Indeed, the statutory class damages under the FDCPA and RFDCPA are *mechanical and readily determined* by statute insofar as one need only divide the total amount of damages by the total number of class members. [See, 15 U.S.C. § 1692k(a)(2)(B) and Cal. Civ. Code §§ 1788.30; 1788.17].

-13-

1

### C. *Opt-Out & Other Rights*

2       Settlement Class Members have the ability to opt out of, or object to, the

3 Settlement. Pursuant to Rules 23(b)(1)(B) and 23(b)(2) of the Federal Rules of

4 Civil Procedure, no notice of the Settlement is required; however, Defendant has

5 agreed to place a summary advertisement notifying Settlement Class Members of

6 the Settlement in a weekday edition of *The Orange County Register* at least two

7 weeks before the Court's hearing to determine that the Settlement is fair,

8 reasonable, and adequate. Settlement Class Members will also have an opportunity

9 to opt-out of, or object to, the Settlement. In addition, after affording the

10 opportunity for making any objections, the Court will hold a hearing to determine

11 that the Settlement is fair, reasonable, and adequate.

12       In light of the above facts, Plaintiff's request for statutory class damages are

13 "incidental" and flow directly from the injunctive relief agreed to by the

14 Defendant for five reasons: (1) the injunctive relief will affect more persons and

15 have far reaching consequences over a greater period of time than the monetary

16 damages; (2) Plaintiff's request for statutory damages and injunctive relief arise

17 from Defendant's alleged repeated *and* uniform violations of the FDCPA and

18 RFDCPA, such that the resulting statutory class damages flow directly from

19 Defendant's underlying FDCPA and RFDCPA liability; (3) the calculation of

20 statutory damages is a mechanical task pursuant to the FDCPA and RFDCPA and

21 is, therefore, readily calculable for the entire class; (4) the statutory damages for

22 each class member is *de minimis*; and (5) Settlement Class Members may opt-out

23 of the settlement to pursue their individual claims for damages and attorney fees.

24       3.02.  Plaintiff also alleges that the causes of action forming the basis of the

25 Settlement Class claims in this Action are also such that the prosecution of separate

26 actions by individual members of the class would create the risk of establishing

27 incompatible standards of conduct for the Defendant.

28 / / /

MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AGREEMENT

3.03. Plaintiff also alleges that the causes of action forming the basis of the Settlement Class claims in this Action are such that the prosecution of separate actions by individual members of the class would create the risk of establishing incompatible standards of conduct for the Defendant

3.04. Additionally, Plaintiff alleges that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy in this case. Indeed, class action resolution of the issues described above outweighs the difficulties in management of the class as separate claimants and allows access to the courts for those who might not gain such access standing alone, which is often a problem for consumers with FDCPA and RFDCPA claims due to the *de minimis* recovery that often results from such claims.

3.05. Pursuant to the Parties' Stipulation of Settlement, Defendant does not dispute that the Settlement Class should be certified for settlement purposes. "[F]ederal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).

## 4. CLASS TYPE

4.01. As discussed *supra*, Plaintiff asks the Court to certify the Settlement Class pursuant to Fed R. Civ. P. 23(b)(2), which would permit recovery of monetary and injunctive relief for the class.

4.02. Fed. R. Civ. P. 23(b)(2) does not require that class receive notice, an opportunity to opt-out, or the right to subsequently file an individual lawsuit for money damages; however, as set forth *supra*, the Settling Parties have agreed to provide notice and opt-out rights for the benefit of the Settlement Class. Indeed, the Defendant has agreed to place a summary advertisement notifying Settlement Class Members of the Settlement in one weekday edition of *The Orange County Register* at least two weeks before the Court's hearing to determine that the Settlement is

-15-

1  fair, reasonable, and adequate. Settlement Class Members will then have an
2  opportunity to opt-out of, or object to, the Settlement. A copy of the Parties'
3  proposed Notice to the Settlement Class, is attached hereto as ***Exhibit D***.

## 5. CONSENT MOTION

5  5.01. In light of, and subject to the approval of the Stipulation of Settlement
6  attached hereto as ***Exhibit A***, Plaintiff moves that the Court certify Plaintiff as the
7  representative for the Settlement Class and certify Plaintiff's attorneys, Lilys D.
8  McCoy and William F. Horn, as Settlement Class Counsel. In the event the
9  proposed Settlement is not approved, however, Plaintiff agrees that the Court will
10 decertify the Settlement Class and take up the issue of certification as a contested
11 matter.

12 5.02. The Settling Parties have stipulated that any failure of the Court to
13 approve the Stipulation of Settlement shall not operate as a waiver of the claims or
14 defenses of any of the Settlement Parties on the issue of certification at any such
15 contested hearing.

16 5.03. Settling Parties have further stipulated that certification of the
17 Settlement Class is conditioned upon:

18
19      (a)    the accuracy of the representations and warranties contained in the Stipulation of Settlement;

20
21
22      (b)    the performance by the Settling Parties of their respective obligations under the Stipulation of Settlement in all material respects prior to the date the Stipulation was signed by the Settling Parties;

23
24
25      (c)    the entry of a final order releasing, on behalf of Plaintiff and the Settlement Class, all of the Released Claims as defined in the Stipulation of Settlement;

26      (d)    the receipt by the Settling Parties of all documents reasonably required to implement the Stipulation of Settlement; and

27 / / /
28 / / /

-16-

(e)     no other class actions being certified against Defendant asserting causes of action substantially identical to those asserted in this Action.

5.04.   In the event that any one of the foregoing conditions is not met as required by the Stipulation of Settlement, Settling Parties have agreed that upon motion to the Court, the Court will then decertify the class and take up the issue of certification as a contested matter.

## B. MOTION TO APPROVE SETTLEMENT

## 6. NATURE OF SETTLEMENT

6.01.   The Settlement Parties have agreed in principle to a settlement of this Action on a class-wide basis. The essential terms of the Settlement are set out in the Stipulation of Settlement attached hereto as ***Exhibit A***. The Stipulation of Settlement provides that the Court will certify Plaintiff as the Settlement Class Representative Plaintiff for the Settlement Class, and certify Plaintiff's attorneys, Lilys D. McCoy and William F. Horn, as Settlement Class Counsel. As discussed above, the Stipulation of Settlement provides substantial benefits to the Settlement Class, and is fair, reasonable, and adequate in light of the relevant facts, applicable law, and potential value of the Settlement.

6.02.   Subject to the terms of the Stipulation of Settlement, Defendant agrees to provide the following relief to Plaintiff and the Settlement Class:

***Settlement Fund.*** Defendant shall pay the total sum $63,000.00 as provided herein:

(a)     ***Individual Relief.*** The Settlement Class Representative Plaintiff shall receive $2,000.00 as statutory damages under 15 U.S.C. §1692k(a)(2)(A) and Cal. Civ. Code § 1788.30(b). Settlement Class Representative Plaintiff shall also receive an additional $1,000.00 in recognition for his services to the Settlement Class Members.

(b)     ***FDCPA Class Relief.*** Defendant shall pay $30,000.00, which represents the maximum class recovery permitted under the

-17-

FDCPA (i.e. 1% of Defendant's net worth), as a *cy pres* payment to one or more national charitable organizations without any religious or political affiliations. Subject to the Court's approval, the Settling Parties propose that the recipient(s) of the cy pres payment will be the National Consumer Law Center, which is a national organization that provides assistance to low-income and vulnerable Americans on, inter alia, issues involving consumer fraud, debt collection, consumer finance, energy assistance programs, predatory lending, and sustainable home ownership programs.

(c) ***RFDCPA Class Relief.*** Defendant shall pay an additional $30,000.00, which represents the maximum class recovery permitted under the RFDCPA (i.e. 1% of Defendant's net worth), as a *cy pres* payment to one or more California charitable organizations without any religious or political affiliations. Subject to the Court's approval, the Settling Parties propose that the recipient(s) of the cy pres payment will be the Legal Aid Association of California, which is a statewide membership organization of legal services nonprofits, that serves and strengthens its members through advocacy, training, and support in their efforts to provide critical legal assistance to low-income Californians and ensure equal access to justice.

(d) ***Injunctive Relief***. Defendant shall consent to entry of a stipulated injunction mandating that Defendant use its best efforts to ensure that it identifies itself by its legal name in all telephone messages left for consumers in the State of California, and that it further disclose that the call is from a debt collector and concerns the collection of a debt. Settlement Class Counsel shall be entitled to recover their reasonable attorney fees and costs if they are required to pursue any action necessary to enforce the terms of the stipulated injunction. The Court shall decide the final terms of the stipulated injunction at the Final Fairness Hearing

(e) ***Counsel Fees***. Defendant agrees that Settlement Class Representative Plaintiff is the successful party in this Action and further agrees to pay reasonable attorneys' fees and costs as the Court may award for prosecution of a "successful action" under 15 U.S.C. § 1692k and Cal. Civ. Code § 1788.30(c). Settlement

-18-

Class Counsel will accept the amount of fees and expenses awarded by the Court in full satisfaction of reasonable attorney's fees and costs arising out of this lawsuit and enforcement of the injunction and will not request additional fees from Defendant, Settlement Class Representative Plaintiff, or any Settlement Class Member. The parties reserve the right to settle the issue of reasonable attorney's fees and costs.

The proposed Stipulation of Settlement was reached through extensive and protracted arms-length negotiations between the Settlement Parties and that Settlement Class Counsel are able and experienced attorneys who are well-qualified to evaluate the proposed Stipulation of Settlement on behalf of the Settlement Class Members. Plaintiff asserts, and Defendant does not dispute for settlement purposes only, that the Settlement Class meets the requirements for class certification under Fed. R. Civ. P. 23(b)(2) as discussed, *supra*.

## 7. FINAL ORDER

7.01. At the Final Fairness Hearing, the Settling Parties anticipate presenting a final order giving effect to the Stipulation of Settlement and dismissing with prejudice all claims of any purported Settlement Class Members, which involve the identical factual predicate alleged in the Action, who did not opt-out of the class settlement within the time prescribed by the Court.

## 8. RELEASE

8.01. Upon confirmation of the Stipulation of Settlement at the Final Fairness Hearing the Final Approval Order will release Defendant of all liability to the Settlement Class from any and all claims, including Unknown Claims, which involve the identical factual predicate alleged in the Action arising out of state or federal law. The Final Approval Order will enjoin Settlement Class Members from pursuing or filing suit upon any of the foregoing claims.

/ / /

/ / /

/ / /

-19-

WHEREFORE, PREMISES CONSIDERED, Settling Parties pray that the Court:

1.  Preliminarily certify the Settlement Class for settlement purposes as set forth in the proposed Stipulation of Settlement;

2.  Order that Plaintiff may act as the Settlement Class Representative Plaintiff for of the Settlement Class and that Plaintiff's undersigned attorneys may act as Settlement Class Counsel;

3.  Set a Final Fairness Hearing to determine whether the Stipulation of Settlement is fair, adequate, and reasonable; and

4.  At such Final Fairness Hearing approve the Stipulation of Settlement and grant Final Approval.

Plaintiff further prays for all such other and further relief, both at law and in equity, as to which he and the Settlement Class may be justly entitled.

Respectfully submitted,

Dated:  May 4, 2012                    MCCOY, TURNAGE & ROBERTSON, LLP

By:  ___s/ Lilys D. McCoy_____
     Lilys D. McCoy

Attorneys for Plaintiff, Sergio Cedeno, and all others similarly situated

-20-

<u>PROOF OF SERVICE</u>

At the time of service I was over 18 years of age and not a party to this action. My business address is 5469 Kearny Villa Road, Suite 206, San Diego, California 92123. On the date shown below, I served the preceding document on the persons below, as follows:

[] By personal service. I personally delivered the documents to the persons at the addresses listed above. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

[] By United States mail. I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses above: [] deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid; OR [X] placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Diego, California.

[] By overnight delivery. I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

[] By messenger service. I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed above and providing them to a professional messenger service for service.

[] By fax transmission. Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed above. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached or will be made available for inspection upon reasonable notice.

[XX] By e-mail or electronic transmission. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*s/ Lilys D. McCoy*

Date:        May 4, 2012

Lilys D. McCoy

-21-

MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AGREEMENT

# EXHIBIT "E"

Sergio Cedeno v. Bureau of Collection Recovery, Inc.,
SACV 10-1960 JVS (FFMx)

Tentative Order re: Motion for Final Approval of Class Action Settlement

Plaintiff Sergio Cedeno ("Cedeno"), on behalf of himself and others similarly situated (collectively, "Plaintiffs"), and Defendant Bureau of Collection Recovery, LLC ("Defendant") (collectively, "Parties")),[1] move for final approval of a proposed class action settlement. (Consent Mot. for an Order Granting Final Approval of Class Action Settlement and Injunctive Relief ("Final Approval Motion"), Docket No. 27.) For the following reasons, the motion is **GRANTED**.

I.     SETTLEMENT BACKGROUND

The Parties seek final approval of a class action settlement (the "Settlement"). Defendant is a debt collection agency. In attempting to collect alleged debts, Defendant left pre-recorded telephonic voice messages for Plaintiffs. The putative class action complaint alleges that Defendant's voice messages violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Rosenthal Fair Debt Collection Practices Act ("California FDCPA), Cal. Civ. Code. § 1788 *et seq.* (Compl. ¶¶ 86–89, Docket No. 1.) The voice messages did not disclose: (1) Defendant's identity as the caller, (2) that the communication was from a debt collector, or (3) the purpose of the communication. (Id. ¶ 57.)

The Parties engaged in discovery and comprehensive settlement negotiations, which resulted in a Stipulation of Settlement ("Settlement"). (Final Approval Motion § 1.03; Docket No. 22-1.) The Settlement provides for the following relief to the Settlement Class: Defendant shall pay a total sum of $63,000. Cedeno shall receive $2000 as statutory damages under 15 U.S.C. § 1692k(a)(2)(A) and Cal. Civ. Code § 1788.30(b), as well as $1000 for his services to the Settlement Class. Defendant shall pay $30,000, which represents the maximum class recovery permitted under the FDCPA, as a *cy pres* payment to one or more national charitable organizations without any religious or political

---

[1] Defendant Bureau of Collection Recovery, LLC, was erroneously sued as Bureau of Collection Recovery, Inc. (Docket No. 22 at 1 n.1.)

affiliations.[2] Defendants shall pay an additional $30,000, which represents the maximum recovery permitted under the California FDCPA, as a *cy pres* payment to one or more California charitable organizations without any religious or political affiliations.[3] Defendant shall consent to a stipulated permanent injunction mandating it use its "best efforts" to ensure that it identifies itself by its legal name in all telephone messages left for consumers in the State of California, and that it further discloses that the call is from a debt collector and concerns the collection of a debt. Settlement Class Counsel shall be entitled to recover reasonable attorney fees and costs if they must pursue any action necessary to enforce the terms of the stipulated injunction. (Settlement, Terms, § 2.3(a)–(d).)

On June 18, 2012, the Court granted preliminary class certification, and preliminarily appointed Cedeno as an appropriate and adequate Settlement Class representative and Lilys D. McCoy and William F. Horn as counsel for the Settlement Class. (Ruling on Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval," Docket No. 23.) The Court also preliminarily approved the Settlement and the proposed class representative incentive award, but noted the final terms of the stipulated injunction would be decided at the final fairness hearing. (Id. at 8, 9.) The Court further directed, based on the terms of the Stipulation, that Defendant place a summary advertisement notifying the Settlement Class members of the Settlement in one weekday edition of *The Orange County Register*, at least two weeks before the final fairness hearing. (Id. at 8.) Additionally, the Court indicated additional documents would be required in certain areas for final approval. (Id. at 4, 8, 9.) Specifically, the Court directed Cedeno to produce competent evidence supporting his assertion that he will fairly and adequately represent the interests of the class (id. at 4 n.3); directed the Parties to produce competent evidence of the Defendant's net worth (id. at 8); and

---

[2]The Parties propose that the recipient of this *cy pres* payment be the National Consumer Law Center, a national organization that provides assistance to low-income and vulnerable Americans on, *inter alia*, issues involving consumer fraud, debt collection, consumer finance, energy assistance programs, predatory lending, and sustainable home ownership programs. (Settlement, Terms § 2.3(b).)

[3]The Parties propose that the recipient of this *cy pres* payment be the Legal Aid Association of California, a statewide membership organization of legal services non-profits that serves and strengthens its members through advocacy, training, and support in their efforts to provide critical legal assistance to low-income Californians to ensure equal access to justice. (Settlement, Terms, § 2.3(c).)

directed the Parties to submit a motion for attorneys' fees and expenses (id. at 9).

The Parties seek final class certification, appointment of the class representative and counsel, and approval of the Stipulation of Settlement.

## II.   CLASS CERTIFICATION FOR SETTLEMENT

The Parties ask the Court to finally certify the following Settlement Class:

[A]ll residents of the State of California who received a voice message left by Defendant on a telephone answering device where such message did not provide meaningful identification of Defendant as the caller, state the purpose or nature of the communication, or disclose that the message was left by a debt collector within one year of the date the action was filed and up through and including the date of preliminary certification of the proposed settlement class.

(Settlement, Recitals § B, Docket No. 22-1.)

The Court previously granted the Parties' request to certify the class for purposes of settlement on a preliminary basis. (Preliminary Approval.) No evidence indicates anything has changed in the interim to warrant a deviation from the Court's prior ruling that the proposed class satisfies the requirements of Fed. R. Civ. P. 23. Additionally, Defendant confirmed the previous estimate of 100,000 potential Settlement Class members, bolstering the numerosity. (Declaration of Kaveena Barretto of Defendant Bureau of Collection Recovery, LLC ("Barretto Decl."), Docket No. 24.) The Parties further represent that neither Defendant nor Settlement Class Counsel received any opt-outs or objections to the Settlement. (Final Approval Motion § 2.04; Declaration of J. Grace Felipe ("Felipe Decl.") ¶¶ 3–4, Docket No. 33; Supplemental Declaration of William F. Horn ("Horn Suppl.") ¶ 3, Docket No. 36.) Accordingly, the Court certifies the class for purposes of class settlement for the reasons specified in the June 18, 2012 Order.

## III.   CLASS REPRESENTATIVE AND COUNSEL APPOINTMENT

Federal Rule of Civil Procedure 23(a)(4) requires that the representative party "fairly and adequately protect the interests of the class." Fed. R. Civ. P.

3

23(a)(4). Representation is fair and adequate if (1) the named plaintiff and his counsel are able to prosecute the action vigorously and (2) the named plaintiff does not have conflicting interests with the unnamed class members. Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).

In its Preliminary Approval, the Court requested that Cedeno produce "competent evidence" supporting assertions that "he will fairly and adequately represent the interests of the class" and that "he has no interests adverse to other members of the Settlement Class." (Preliminary Approval, at 4 ). In a Declaration, Cedeno declares that he recognizes the lawyers are prosecuting the case on behalf of the entire class; that as class representative he may have to testify at a deposition and/or trial; that the case cannot be settled or dropped without protecting the class members; that he is responsible for the attorney costs; that he has not been promised or guaranteed money for being the class representative; and that he is not employed by or related to any of his attorneys or respective law firms. (Declaration of Sergio Cedeno ("Cedeno Decl.") ¶¶ 7-11, Docket No. 27-3.)

The Court is satisfied that the representation by Cedeno is fair and adequate. Additionally, nothing has changed to warrant a deviation from the Court's prior ruling that Lilys D. McCoy and William F. Horn should be appointed as Settlement Class Counsel. Therefore, the Court finally appoints Cedeno as Settlement Class Representative Plaintiff and Lilys D. McCoy and William F. Horn as Settlement Class Counsel.

## IV.   FINAL APPROVAL OF CLASS SETTLEMENT

### A.   Notice to Class

Federal Rule of Civil Procedure 23(b)(2) does not require that settlement class members receive notice or an opportunity to opt-out of the settlement. Crawford v. Honig, 37 F.3d 485, 487 n.2 (9th Cir. 1994) (stating that a class action for injunctive relief certified under Fed. R. Civ. P. 23(b)(2) does not require notice or an opportunity to opt-out, although a court can provide for those in its discretion). In this case, however, the Parties agreed to provide notice and opt-out rights for the settlement class members' benefit. (Mot. for Preliminary Approval of Class Action Settlement, Docket No. 22, at § A.III.C; Settlement, Ex. D, Notice Plan). The Parties attempted notice to potential class members via a summary

advertisement notifying class members of the settlement in a weekday edition of *The Orange County Register* on July 10, 2012, which was at least two weeks before the final fairness hearing. The Parties received no objections or opt-outs. (Felipe Decl., at 3; Exh. A, Docket No. 33-1; Horn Suppl. ¶ 3.) As discussed in the Preliminary Approval, the proposed notice was fair, adequate, and reasonable. Therefore, the Court finds the provided notice adequate to support final approval of the settlement agreement.

      B.      Fair, Reasonable, and Adequate

"In evaluating a class action settlement under Rule 23(e), the district court determines whether the settlement is fundamentally fair, reasonable, and adequate." In re Syncor ERISA Litig., 516 F.3d 1095, 1100 (9th Cir. 2008) (citing Fed. R. Civ. P. 23(e)). In assessing a settlement proposal, the Court must consider a number of factors, including: (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the sage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of S.F., 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted).

The Court previously analyzed most of these factors in the Preliminary Approval, but required competent evidence of Defendant's net worth. (Preliminary Approval, p. 7–8.) The Court finds that the record continues to support the conclusions in the Preliminary Approval. Further, in a declaration, Defendant's Treasurer and Secretary, Kaveena Barretto, estimated that Defendant's net worth as of August 27, 2012, is "less than $3,000,000" based on an approximate net worth of $3,196,842 at the time of the settlement negotiations and a negative net income for the quarter of April 1 through July 31, 2012. (Barretto Decl. ¶ 3.)

As discussed in the Preliminary Approval, the Court is satisfied that based on (1) the possible risk for the Parties associated with proceeding to trial; (2) the

fact that Plaintiffs recovered the maximum damages available to the class under the FDCPA and California FDCPA, including a permanent injunction which is not otherwise available to private litigants; (3) the lack of evidence that the Settlement was a product of fraud or collusion; and (4) the fact that negotiations occurred at arm's length, the settlement is fair, reasonable, and adequate. Further, there is no competent evidence that any class member objected to the settlement or opted out, reflecting a general acceptance of the settlement's terms. Thus, the proposed settlement terms as to the class, including the recipients of the *cy pres* payments and the terms of the stipulated injunction, should be approved.

### C.   Class Representative Payment and Attorneys' Fees

Plaintiffs request a $3000 award to Sergio Cedeno for his service as class representative. As the Ninth Circuit observed in <u>Rodriguez v. West Publishing Corp.</u>, 563 F.3d 948 (9th Cir. 2009):

> [i]ncentive *awards* are fairly typical in class action cases. . .[,] are discretionary, and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in brining the action, and, sometimes, to recognize their willingness to act as a private attorney general.

<u>Id.</u> at 958-59 (emphasis in original) (citations omitted). Under the terms of the Settlement, Defendant will pay the Settlement Class representative $2000 as statutory damages under 15 U.S.C. § 1692k(a)(2)(A) and Cal. Civ. Code § 1788.30(b), as well as an additional $1000 for his services to the Settlement Class. As before, the Court finds that a modest incentive compensation award such as the one proposed is appropriate and should be approved.

## V.   CONCLUSION

For the foregoing reasons, the Court finally approves the terms of the settlement agreement and **GRANTS** the Consent Motion for an Order Granting Final Approval of Class Action Settlement and Injunctive Relief.

IT IS SO ORDERED.

# EXHIBIT "F"

<u>Sergio Cedeno v. Bureau of Collection Recovery, Inc.</u>,
SACV 10-1960 JVS (FFMx)

### <u>Tentative Ruling on Motion for Preliminary<br>Approval of Class Action Settlement</u>

    Plaintiff Sergio Cedeno, on behalf of himself and others similarly situated (collectively, "Plaintiffs"), and Defendant Bureau of Collection Recovery, LLC[1] jointly move for preliminary approval of a proposed class action settlement. (Mot. for Prelim. Approval of Class Action Settlement ("Mot."), Docket No. 22.) For the following reasons, the motion is GRANTED.

## I.    <u>Background</u>

    Defendant is a debt collection agency. In attempting to collect alleged debts, Defendant left pre-recorded telephonic voice messages for Plaintiffs. The putative class action complaint alleges that Defendant's voice messages violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 <i>et seq.</i>, and the Rosenthal Fair Debt Collection Practices Act ("California FDCPA"), Cal. Civ. Code § 1788 <i>et seq.</i> (Compl. ¶¶ 86-89, Docket No. 1.) The voice messages did not disclose: (1) Defendant's identity as the caller, (2) that the communication was from a debt collector, or (3) the purpose of the communication. (<u>Id.</u> ¶ 57.)

    The parties represent that they engaged in discovery and comprehensive settlement discussions, which resulted in a Stipulation of Settlement. (Mot. §§ 1.05, 1.06 & Ex. A, Stipulation of Settlement ("Settlement").) The parties now request that the Court: (1) conditionally certify the proposed Settlement Class, (2) preliminarily approve the Settlement, (3) direct notice to the proposed Settlement Class, and (4) set dates for any objections and a final fairness hearing.

## II.    <u>Class Certification for Purposes of Settlement</u>

    The parties request that the Court provisionally certify the following Settlement Class:

    [A]ll residents of the State of California who received a voice message left by Defendant on a telephone answering device where such message

---

[1] Defendant Bureau of Collection Recovery, LLC was erroneously sued as Bureau of Collection Recovery, Inc. (Mot. at 1 n.1.)

did not provide meaningful identification of Defendant as the caller, state the purpose or nature of the communication, or disclose that the message was left by a debt collector within one year of the date the action was filed and up through and including the date of preliminary certification of the proposed settlement class.

(Settlement, Recitals, § B.)[2]

The Court may certify a settlement class only if the four prerequisites of Federal Rule of Civil Procedure 23(a) are satisfied:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If these prerequisites are satisfied, a class action for injunctive or declaratory relief may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

When considering class certification for settlement purposes only, the Court "need not inquire whether the case, if tried, would present intractable management problems" under Rule 23(b)(3)(D). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997). However, the settlement context "demand[s] undiluted, even heightened, attention" to "unwarranted or overbroad class definitions." Id.

---

[2] The proposed Settlement Class is slightly different in the Proposed Order submitted with the Settlement. (Proposed Order, Docket No. 22-2.) The parties should clarify this issue with the Court at the hearing on June 18, 2012, and make sure to define the Settlement Class accurately in the Settlement.

2

A.    Rule 23(A) Prerequisites

1.    *Numerosity*

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the parties represent that there are more than 100,000 potential Settlement Class members. (Mot. § 2.03.) Joinder of this many individuals would be impracticable; therefore, the numerosity requirement is satisfied.

2.    *Commonality*

Rule 23(a)(2) requires that questions of law or fact be common to the class. Fed. R. Civ. P. 23(a)(2). This requirement is permissively construed. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies . . . ." Id. Here, there are common questions of fact because all potential Settlement Class members received the same voice messages from Defendant. There are also common questions of law as to whether the same statutes (the FDCPA and the California FDCPA) were violated by Defendant's conduct. Accordingly, the commonality requirement is satisfied.

3.    *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Under the "permissive standards" of this rule, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Here, the parties represent that Plaintiff Cedeno's claims are typical of the claims of the entire Settlement Class because they arise from the same facts (Defendant's voice messages) and are based on the same legal theories (violation of the FDCPA and the California FDCPA). Therefore, the typicality requirement is satisfied.

4.    *Fair and Adequate Representation*

Rule 23(a)(4) requires that the representative party "fairly and adequately

3

protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is fair and adequate if (1) the named plaintiff and his counsel are able to prosecute the action vigorously and (2) the named plaintiff does not have conflicting interests with the unnamed class members. <u>Lerwill v. Inflight Motion Pictures, Inc.</u>, 582 F.2d 507, 512 (9th Cir. 1978). Here, Plaintiff Cedeno maintains that "he will fairly and adequately represent the interests of the class," and that "he has no interests adverse to other members of the Settlement Class."[3] (Mot. § 2.07.) Plaintiff Cedeno further notes that class counsel has significant experience in handling consumer protection class actions and other types of complex litigation. (<u>Id.</u> § 2.08; <u>see also</u> <u>id.</u>, Exs. B-C.) Although this explanation is brief, the Court is satisfied that the representation is fair and adequate.

Accordingly, the Parties have satisfied the prerequisites of Rule 23(a). Next, the Court must consider whether the proposed Settlement Class falls within Rule 23(b).

B.    <u>Rule 23(b)</u>

The parties contend that the purported class action may be maintained under Rule 23(b)(2). (Mot. § 3.01.) Certification is appropriate under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); <u>see also</u> <u>Wal-Mart Stores, Inc. v. Dukes</u>, --- U.S. ---, 131 S. Ct. 2541, 2557 (2011) ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted -- the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." (internal quotation marks omitted).) Generally, claims for monetary relief may not be certified under Rule 23(b)(2). <u>Dukes</u>, 131 S. Ct. at 2557. However, courts may certify a class seeking injunctive relief <u>and</u> monetary relief under Rule 23(b)(2) if the latter is merely "incidental" to the former. <u>See id.</u> In other words, monetary relief may be allowed "if the damages flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief," and they are "measurable by objective, class-wide standards." 5 Moore's Federal Practice § 23.43[3][c].

---

[3] The Court notes, however, that Plaintiff Cedeno has not produced competent evidence supporting these assertions. He should do so before the final fairness hearing.

Here, the primary relief sought is a stipulated injunction mandating that Defendant use its "best efforts" to ensure that it identifies itself by its legal name in all telephone messages left for consumers in the State of California, and that it further discloses that the call is from a debt collector and concerns the collection of a debt. (Settlement, Terms, § 2.3(d).) Injunctive relief is not available as a matter of right to private litigants under the FDCPA or the California FDCPA. Therefore, this relief, which provides a benefit to all Settlement Class members, would not be available on an individual basis in the absence of the Settlement.[4]

The Settlement provides for an award of $60,000 to the Settlement Class members. This amounts to approximately 60 cents per persons,[5] and merely 1 percent of Defendant's net worth. (Settlement, Terms, § 2.3(a)-(c).) Accordingly, the damages are *de minimis*. They are "incidental" to the stipulated injunction because they flow directly from the same conduct that the Settlement aims to enjoin. Notably, the damages will go to organizations whose goal is to prevent wrongful practices similar to those allegedly engaged in by Defendant.

Accordingly, the Court determines that, for purposes of settlement, the Parties have sufficiently satisfied the requirements of Rule 23 for class certification.[6]

## III.   **Preliminary Approval of the Settlement**

### A.   Settlement Terms

The Settlement provides for the following relief to the Settlement Class:

---

[4] The Court notes that the Settlement provides an opt-out for those Settlement Class members who wish to pursue statutory damages. (See Settlement, Ex. D, Notice Plan.)

[5] The calculation of damages would not be unique to each Settlement Class member. Rather, it is a mechanical task provided for by the FDCPA and the California FDCPA.

[6] The parties suggest that the class action may also be maintained under "Rule 23(b)(1)(b)." However, they apparently mean Federal Rule of Civil Procedure 23(b)(1)(A), which provides that class certification is appropriate when "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." (Mot. § 3.01.) The Court need not make this determination in light of its finding that the class action may be maintained under Rule 23(b)(2).

Defendant shall pay a total sum of $63,000. Plaintiff Cedeno shall receive $2000 as statutory damages under 15 U.S.C. § 1692k(a)(2)(A) and Cal. Civ. Code § 1788.30(b), as well as $1000 for his services to the Settlement Class. Defendant shall pay $30,000, which represents the maximum recovery permitted under the FDCPA, as a *cy pres* payment to one or more national charitable organizations without any religious or political affiliations.[7] Defendants shall pay an additional $30,000, which represents the maximum recovery permitted under the California FDCPA, as a *cy pres* payment to one or more California charitable organizations without any religious or political affiliations.[8] Defendant shall consent to a stipulated injunction mandating that it use its "best efforts" to ensure that it identifies itself by its legal name in all telephone messages left for consumers in the State of California, and that it further discloses that the call is from a debt collector and concerns the collection of a debt.[9] The Court shall decide the final terms of the stipulated injunction at the final fairness hearing. (Settlement, Terms, § 2.3(a)-(d).)

    B.    <u>Settlement Factors</u>

In assessing a settlement proposal, the Court must consider a number of factors, including: (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of

---

[7] The parties propose that the recipient of this *cy pres* payment be the National Consumer Law Center, which is a national organization that provides assistance to low-income and vulnerable Americans on, *inter alia*, issues involving consumer fraud, debt collection, consumer finance, energy assistance programs, predatory lending, and sustainable home ownership programs. (Settlement, Terms, § 2.3 (b).)

[8] The parties propose that the recipient of this *cy pres* payment be the Legal Aid Association of California, which is a statewide membership organization of legal services non-profits that serves and strengthens its members through advocacy, training, and support in their efforts to provide critical legal assistance to low-income Californians to ensure equal access to justice. (Settlement, Terms, § 2.3(c).)

[9] If Settlement Class Counsel is required to pursue any action necessary to enforce the terms of the stipulated injunction, they shall be entitled to recover their reasonable fees and costs. (Settlement, Terms, § 2.3(d).)

the class members to the proposed settlement. <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 959 (9th Cir. 2003); <u>Hanlon</u>, 150 F.3d at 1026. "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." <u>Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of S.F.</u>, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation marks omitted).

Plaintiffs contend that the claims asserted in the putative class action complaint have merit and are supported by substantial evidence. However, they also  recognize the risks associated with further litigation, including delay, expense, and uncertainty. More specifically, Plaintiffs recognize that the proposed Settlement Class may encounter problems of proof, opposition to class certification, and defenses to Defendant's allegedly unlawful conduct (<u>see</u> Answer, Docket No. 4). Accordingly, along with experienced counsel, they have determined that the Settlement is in their best interests. (Settlement, Recitals, §§ C-D.)

Defendant denies each and every allegation of wrongdoing asserted by Plaintiffs. Nevertheless, Defendant has concluded that the Settlement is in its best interests because of the risks associated with further litigation, including delay, expense, and uncertainty. Notably, Defendant wishes to carry on its business without the distraction of its executive personnel that would result from their continued participation in this litigation. (Settlement, Recitals, § C.)

The Court finds no evidence that the Settlement was a product of fraud or collusion. All negotiations seem to have occurred at arms length, as the parties contend. (Mot. § 6.02.) After reviewing the significant terms of the Settlement, the Court finds that the terms compare favorably to the uncertainties associated with further litigation. <u>See</u> <u>Nat'l Rural Telecomm. Coop. v. Hughes Commc'ns Galaxy, Inc.</u>, 221 F.R.D. 523, 526 (C.D. Cal. 2004). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." <u>Id.</u> Thus, settlement will likely serve the interests of the Settlement Class members better than litigation in this case.

Accordingly, in light of the <u>Staton</u> factors, the Court concludes preliminarily that the Settlement is fair, reasonable, and adequate. Before final approval, the Court will require competent evidence of Defendant's net worth.

C.     Notice to Class

Rule 23(b)(2) does not require that the Settlement Class members receive notice or an opportunity to opt-out of the Settlement. <u>Stoetzner v. U.S. Steel Corp.</u>, 897 F.2d 115, 119 (3d Cir. 1990) ("A class certified pursuant to [Rule 23(b)(2)] does not require notice."); <u>Dosier v. Miami Valley Broad. Corp.</u>, 656 F.2d 1295, 1299 (9th Cir. 1981) (recognizing that Rule 23(b)(2), unlike Rule 23(b)(3), does not require that unnamed plaintiffs be given an opportunity to opt-out of a proposed settlement). Nevertheless, the parties have agreed to provide notice and opt-out rights for the Settlement Class members' benefit. (<u>See</u> Settlement, Ex. D, Notice Plan.) Under the Settlement, Defendant shall place a summary advertisement notifying the Settlement Class members of the Settlement in one weekday edition of *The Orange County Register*, at least two weeks before the final fairness hearing. Settlement Class members will then have an opportunity to opt-out of, or object to, the Settlement. (<u>Id.</u>) The Court finds this plan, which is not required, to be fair, adequate, and reasonable.

D.     Class Representative Payment and Attorneys' Fees

As the Ninth Circuit observed in <u>Rodriguez v. West Publishing Corporation</u>, 563 F.3d 948 (9th Cir. 2009):

> [i]ncentive *awards* are fairly typical in class action cases. . .[,] are discretionary, and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.

<u>Id.</u> at 958-59 (emphasis in original) (citations omitted). Under the terms of the Settlement, Defendant will pay the Settlement Class representative $2,000 as statutory damages under 15 U.S.C. § 1692k(a)(2)(A) and Cal. Civ. Code § 1788.30(b), as well as an additional $1,000 in recognition for his services to the Settlement Class. The Court finds that a modest incentive compensation award such as the one proposed is appropriate.

The Court may also award reasonable attorneys' fees. The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." <u>Hanlon</u>, 150 F.3d at 1029. "The benchmark percentage should be adjusted, or

replaced with a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." <u>Six (6) Mexican Workers v. Ariz. Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990). Counsel should be advised, however, that "there is a 'strong presumption' that the lodestar figure is reasonable," and that the circumstances warranting adjustment are rare. <u>Perdue v. Kenny A. ex rel. Winn</u>, --- U.S. ---, 130 S. Ct. 1662, 1673 (2010).

Defendant agrees to pay reasonable attorneys' fees and costs as the Court may award for prosecution of a "successful action" under 15 U.S.C. § 1692k and Cal. Civ. Code § 1788.30(c). The parties shall submit a motion for attorneys' fees and expenses, including all supporting evidence, at a later time. (Settlement, Terms, § 2.3(e).)

## IV. <u>Scheduling</u>

The parties should be prepared to propose dates for the schedule outlined below at the hearing on June 18, 2012.

| Deadline for Defendant to Provide Required Information to Claims Administrator | TBD |
|---|---|
| Deadline for Mailing of Settlement Packet | TBD |
| Deadline for Filing of Any Objections to Settlement | TBD |
| Deadline for Filing of Motion for Final Approval and Motion for Attorneys' Fees and Costs | TBD |
| Deadline for Defendant to Exercise Right to Rescind Settlement | TBD |

**IV.**   **<u>Conclusion</u>**

For the foregoing reasons, the motion is GRANTED.

IT IS SO ORDERED.

# EXHIBIT "G"

# Law Office of William F. Horn

188-01B 71st Crescent
Fresh Meadows, New York 11365
Telephone: (718) 785-0543
Facsimile: (866) 596-9003
bill@wfhlegal.com

May 29, 2013

Hon. Jeremiah J. McCarthy, U.S.M.J.
UNITED STATES DISTRICT COURT
Western District of New York
68 Court Street
Buffalo, New York 14202

**Re:**     *Debbie Felix, et al. v. Northstar Location Services, LLC, et al*
*Donnie Jo Harb, et al v. Northstar Location Services, LLC, et al*
W.D.N.Y. Case No.:  1:11-cv-00166- JJM

Dear Judge McCarthy:

We are co-counsel for the Plaintiffs in the referenced consolidated action. We write regarding Your Honor's Decision and Order/Order to Show Cause filed late yesterday afternoon [Doc. 43].

For obvious reasons, we are deeply concerned by, and take very seriously, the Court's Order to Show Cause and we intend to file a response as Your Honor directed. That said, we are very confused by the facts set forth in the Court's Order as it appears the Court's ruling might be based upon a misperception that Plaintiffs' counsel did not notify the Court of the existence of the Second Circuit's decision in *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012), when we did, in fact, alert the Court to its existence. Subsequent to the Court's Order, Plaintiffs' counsel spoke with Defendant's counsel, Paul Sanders, who confirmed that the Court was advised of *Hecht* and its impact on the Parties' initial settlement and motion for class certification.

Accordingly, we respectfully request that Your Honor convene a conference with the Parties so Plaintiffs may obtain clarification regarding the Court's Order to Show Cause and how to respond to it. Defendant's counsel has no objection to the Court convening such a conference.

In the interim, I want to ensure Your Honor that Plaintiffs' counsels have never sought to mislead Your Honor or this Court regarding the Parties' motion for class certification or any other matter, and we look forward to resolving the matter consistent with Your Honor's directives and requested clarification.

Hon. Jeremiah J. McCarthy, U.S.M.J.
*Re:   Felix, et al. v. Northstar Location Services, LLC*
May 29, 2013
Page 2 of 2

We thank Your Honor for his consideration of the Plaintiffs' herein request.

Respectfully submitted,

*William F. Horn*
William F. Horn

*Robert L. Arleo*
Robert L. Arleo

*via facsimile only to (716) 551-1885*
cc:      All counsel of record via e-mail

**From:**      William F. Horn
**Sent:**      Wednesday, May 29, 2013 4:47 PM
**To:**        Andrew T. Thomasson
**Subject:**   FW: Felix v. Northstar,et al 11-cv-166

**HoudiniEventDuration:**   360000
**HoudiniEventGUID:**       44608
**HoudiniInboxGUID:**       99973
**HoudiniMatterGUID:**      195
**HoudiniMatterLabel:**     Northstar - Felix -- 1078-195
**Time?:**                  -1

**From:** Jeremiah_McCarthy@nywd.uscourts.gov [mailto:Jeremiah_McCarthy@nywd.uscourts.gov]
**Sent:** Wednesday, May 29, 2013 4:46 PM
**To:** William F. Horn
**Cc:** r.arleo@; Sanders, Paul A.
**Subject:** Felix v. Northstar,et al 11-cv-166

Thank you for your letter of today. I do not suggest that Hecht was never mentioned at all - my concern is that it was not mentioned in the Consent Motion [42], nor was any attempt made to address its holding which - in my view at least - casts Gravina in a very different light. Your response to the Order to Show Cause should address how your Rule 23(b)(2) arguments are reasonable in light of Hecht and Dukes.



Jeremiah J. McCarthy
United States Magistrate Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, NY 14202
TEL: (716) 551-1880
FAX: (716) 551-1885